CATALINA VERGARA (S.B. #223775)
cvergara@omm.com
KEVIN KRAFT (S.B. #318170)
kkraft@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071-2899
Telephone:   +1 213 430 6000
Facsimile:   +1 213 430 6407

Attorneys for Defendant
NFP Retirement, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MICHELLE MILLS, COY SARELL, CHAD WESTOVER, BRENT ALESHIRE, BARBARA KERSHNER, PAULA SCHAUB, and JENNIFER SILVA, individually and as representatives of a class of participants and beneficiaries on behalf of the Molina Salary Savings Plan, | Case No. 8:22-cv-01813-ODW |
| | **DEFENDANT NFP RETIREMENT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Plaintiffs, | |
| v. | Hearing Date:   October 24, 2022 |
| MOLINA HEALTHCARE, INC., THE BOARD OF DIRECTORS OF MOLINA HEALTHCARE, INC., THE MOLINA SALARY SAVINGS PLAN INVESTMENT COMMITTEE, and NFP RETIREMENT, INC., | Hearing Time:   1:30 pm<br>Judge:   Hon. Otis Wright<br>Courtroom:   5D<br>Action Filed:   May 13, 2022 |
| Defendant. | |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 24, 2022 at 1:30 pm, or as soon thereafter as this matter may be heard before the Honorable Otis Wright in Courtroom 5D of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Defendant NFP Retirement, Inc. ("NFP") will and hereby does move the Court to dismiss with prejudice the claims against NFP alleged in the First Amended Complaint ("FAC"), ECF No. 43, filed by plaintiffs Michelle Mills, Coy Sarell, Chad Westover, Brent Aleshire, Barbara Kershner, Paula Schaub, and Jennifer Silva (collectively, "plaintiffs"). NFP bases its motion to dismiss on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Declaration of Catalina Vergara; the pleadings in this action; and such other materials and evidence as may be presented to the Court. The motion is made following the L.R. 7-3 conference of counsel, which took place on August 5, 2022.

In this action, plaintiffs bring three putative class claims under the Employee Retirement Income Security Act of 1974 ("ERISA") against NFP and other defendants targeting the investments offered to participants in the Molina Salary Savings Plan ("the Plan"). First, plaintiffs allege that defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by retaining the flexPATH Index Target Date Funds ("flexPATH TDFs"). FAC ¶¶ 107–15. Second, plaintiffs allege that defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by offering higher-cost shares of numerous Plan investment options. FAC ¶¶ 116–21. Third, plaintiffs allege that defendants caused, through the Plan's investment in the flexPATH TDFs, transactions involving Plan assets that are prohibited by ERISA under 29 U.S.C. §1106(a)–(b). FAC ¶¶ 128–33.

NFP'S MOTION TO DISMISS
PLAINTIFFS' FAC
8:22-CV-01813-ODW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As explained in greater detail in the accompanying Memorandum of Points and Authorities, this motion is made on the grounds that plaintiffs fail to plausibly allege that NFP breached any fiduciary duties or caused any prohibited transactions, and that ERISA's statute of repose bars plaintiffs' claims.  NFP requests that the Court dismiss with prejudice the claims alleged by plaintiffs in the FAC against NFP.

Dated:  August 23, 2022

By:   */s/ Catalina Vergara*
Catalina Vergara

CATALINA VERGARA
O'MELVENY & MYERS LLP

Attorneys for Defendant
NFP Retirement, Inc.

NFP'S MOTION TO DISMISS
PLAINTIFFS' FAC
8:22-CV-01813-ODW

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 2

        A.    The Molina Plan. ............................................................................ 2

        B.    NFP's Role as a § 3(21) Investment Advisor. ..................................... 3

        C.    The Molina Fiduciaries' Retention of flexPATH as § 3(38)
              Investment Manager. ...................................................................... 4

        D.    flexPATH's Selection of the flexPATH TDFs for Plan
              Investment. .................................................................................... 4

        E.    Plaintiffs' Allegations in the FAC. .................................................... 5

III.    LEGAL STANDARD ................................................................................ 6

IV.     ARGUMENT ............................................................................................ 7

        A.    Plaintiffs' Fiduciary Breach Claims Against NFP Premised on
              the Selection of Plan Investment Options Fail Because NFP Did
              Not Act as a Fiduciary to the Plan With Respect to Those
              Decisions. ...................................................................................... 7

        B.    Plaintiffs Do Not Plausibly Allege that NFP Breached Fiduciary
              Duties in Providing Investment Advice to the Plan. .......................... 9

              1.     The FAC Does Not Allege An Imprudent Process by
                     NFP. ................................................................................... 9

              2.     One Cannot Infer, From the Options Made Available to
                     Plan Participants, that NFP's Advice Was Imprudent. ........... 11

                     a.     Plaintiffs' Inapt Comparisons of the flexPATH
                            TDFs to TDFs with Different Strategies Cannot
                            Sustain an Inference of Imprudence. ........................... 11

                     b.     Plaintiffs' Criticisms of the flexPATH TDFs' Track
                            Records and Investment Styles Likewise Do Not
                            Support an Inference of Imprudence. ........................... 14

                     c.     Plaintiffs' Claims of Imprudence Based On
                            Excessive Fees Also Are Insufficient. .......................... 16

                     d.     Plaintiffs Fail to State a Claim that NFP Breached a
                            Fiduciary Duty to Act in Accordance with the IPS. ...... 17

**TABLE OF CONTENTS**
(continued)

Page

C.  Plaintiffs' Fiduciary Breach Claims Against NFP Regarding the Selection of the flexPATH TDFs Are Barred By ERISA's Statute of Repose. ............................................................. 18

D.  Plaintiffs' Prohibited Transaction Claims Against NFP Fail as a Matter of Law .......................................................... 19

V.  CONCLUSION ........................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,

5

No. 19-CV-04618-LHK, 2022 WL 74002 (N.D. Cal. Jan. 8, 2022)............11, 12

6

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v.*
*Buth*,

7

475 F. Supp. 3d 910 (E.D. Wis. 2020) ..................................................................20

8

*Ashcroft v. Iqbal*,

9

556 U.S. 662 (2009) ...........................................................................................6, 7

10

*Bell Atl. Corp. v. Twombly*,

11

550 U.S. 544 (2007) ................................................................................................7

12

*Braden v. Wal–Mart Stores, Inc.*,

13

588 F.3d 585 (8th Cir. 2009)................................................................................16

14

*Brandt v. Grounds*,

15

687 F.2d 895 (7th Cir. 1982)..................................................................................9

16

*Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,

17

259 F.3d 1036 (9th Cir. 2001)..............................................................................17

18

*Chao v. Merino*,

452 F.3d 174 (2d Cir. 2006) .................................................................................10

19

*David v. Alphin*,

20

704 F.3d 327 (4th Cir. 2013) ...............................................................................19

21

*Davis v. Wash. Univ. in St. Louis*,

22

960 F.3d 478 (8th Cir. 2020)................................................................................12

23

*Depot, Inc. v. Caring for Montanans, Inc.*,

24

915 F.3d 643 (9th Cir. 2019)..................................................................................7

25

*Dorman v. Charles Schwab Corp.*,

26

2019 WL 580785 (N.D. Cal. Feb. 8, 2019)..........................................................14

27

*Fifth Third Bancorp v. Dudenhoeffer*,

28

573 U.S. 409 (2014) ................................................................................................6

1

2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

3

4

*Guenther v. Lockheed Martin Corp.*,
   972 F.3d 1043 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2596 (2021) ................ 18

5

6

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ........................................................................ 9, 16

7

8

*Hughes v. Nw. Univ*,
   142 S. Ct. 737 (2022) ........................................................................................ 10

9

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................ 7

10

11

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
   140 S. Ct. 768 (2020) ........................................................................................ 18

12

13

14

*Lauderdale v. NFP Ret., Inc.*,
   No. SACV21301JVS(KESx), 2022 WL 422831 (C.D. Cal. Feb. 8,
   2022) ................................................................................................................... 9

15

16

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996) .......................................................................................... 20

17

18

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ...................................................................... 11, 12

19

*Miller v. Astellas US LLC*,
   No. 30 C 3882, 2021 WL 1387948 (N.D. Ill. Apr. 13, 2021) ........................... 20

20

21

*Parmer v. Land O'Lakes, Inc.*,
   518 F. Supp.3d 1293 (D. Minn. 2021) ......................................................... 11, 12

22

23

24

*Patterson v. Cap. Grp. Cos.*,
   No. CV 17-4399 DSF (PJWx), 2018 WL 748104 (C.D. Cal. Jan.
   23, 2018) ............................................................................................................ 16

25

26

*Patterson v. Morgan Stanley*,
   No. 16-cv-6568 (RJS), 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ........... 11, 15

27

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) ............................................................................................ 7

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,

4

944 F.2d 509 (9th Cir. 1991) ................................................................. 19

5

*Reetz v. Lowe's Cos., Inc.*,

6

No. 5:18-CV-00075-KDB-DCK, 2021 WL 4771535 (W.D.N.C.
Oct. 12, 2021), *appeal filed*, No. 21-2267 (4th Cir. Nov. 10, 2021) .................. 15

7

*Smith v. CommonSpirit Health*,

8

37 F.4th 1160 (6th Cir. 2022) ............................................................. 11

9

*Sprewell v. Golden State Warriors*,

10

266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*,

11

275 F.3d 1187 (9th Cir. 2001) ............................................................... 7

12

*Tibble v. Edison Int'l*,

13

575 U.S. 523 (2015) ....................................................................... 10

14

*Tibble v. Edison Int'l*,

15

729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds by Tibble v. Edison Int'l*, 575 U.S. 523 (quotation omitted) ............................... 10

16

*White v. Chevron Corp.*,

17

No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017),

18

*aff'd*, 752 F. App'x 453 (9th Cir. 2018) ...................................... 14, 19

19

*White v. Chevron Corp.*,

20

752 F. App'x 453 (9th Cir. 2018) ......................................................... 11

21

*Wildman v. Am. Century Servs., LLC*,

362 F. Supp. 3d 685 (W.D. Mo. 2019) ................................................. 15

22

*Williams v. Centerra Grp., LLC*,

23

No. 20:cv-04220-SAL, 2021 WL 4227384 (D.S.C. Sept. 16, 2021) ................. 20

24

*Wright v. Or. Metallurgical Corp.*,

25

360 F.3d 1090 (9th Cir. 2004) ........................................................ 19, 20

26

*Young v. Gen. Motors Inv. Mgmt. Corp.*,

27

325 F. App'x 31 (2d Cir. 2009) ........................................................ 17

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page(s)**

3

**Statutes**

4

29 U.S.C. § 1002(21)(A) ........................................................................ 7

5

29 U.S.C. § 1002(21)(A)(ii) ................................................................... 3

6

29 U.S.C. § 1104 .................................................................................... 6

7

29 U.S.C. § 1104(a)(1)(A)–(B) .............................................................. 6

8

9

29 U.S.C. § 1105(a) ................................................................................ 9

10

29 U.S.C. § 1106(a)–(b) ......................................................................... 6

11

29 U.S.C. § 1113(1) .......................................................................... 18, 19

12

29 U.S.C. § 1113(1)(A) ........................................................................ 18

13

29 U.S.C. § 1113(2) .............................................................................. 19

14

29 U.SC. § 1102(a)(1) ............................................................................. 2

15

16

**Regulations**

17

12 C.F.R. § 9.18(a)(2) ............................................................................ 4

18

29 C.F.R. § 2509.75-8 ............................................................................ 7

19

29 C.F.R. § 2550.404a-1(b)(2)(i) ......................................................... 14

20

21

22

23

24

25

26

27

28

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

1
**MEMORANDUM OF POINTS AND AUTHORITIES**

2
## I.   INTRODUCTION

3       Plaintiffs bring ERISA claims challenging the investment options made

4 available to participants in the 401(k) Plan sponsored by Molina Healthcare, Inc.

5 ("Molina") for its employees.  Plaintiffs name as defendants both Molina and NFP,

6 which once served as the Plan's § 3(21) investment advisor—meaning that it

7 provided advice to the Plan fiduciaries regarding the Plan's investment options but

8 did not have ultimate decision-making authority over which investment options to

9 offer in the Plan.[1]  As to NFP, plaintiffs' claim fail for four simple reasons.

10      First, NFP was a fiduciary with respect to the *advice* it provided the Plan

11 fiduciaries as § 3(21) investment advisor, but it did not have fiduciary responsibility

12 for the investment *decisions* themselves.  Plaintiffs' effort to infer a fiduciary breach

13 by NFP from the Plan fiduciaries' decisions to add certain funds to the Plan lineup

14 accordingly fails.  Indeed, NFP did not have *any* fiduciary role with respect to the

15 principal object of plaintiffs' complaint: the Plan's investment in the flexPATH

16 TDFs.  The TDFs were selected by the Plan's § 3(38) investment manager, NFP

17 affiliate flexPATH Strategies, LLC ("flexPATH").  As the Plan's agreement with

18 flexPATH explicitly reflects, NFP did not act as a § 3(21) investment advisor with

19 respect to the Plan's engagement of flexPATH to serve as § 3(38) investment

20 manager, and thus did not even have an advisory role with respect to the Plan's

21 investment in the flexPATH TDFs.  Plaintiffs' contention that NFP breached duties

22 in connection with that investment evaporates accordingly.

23      Second, to the extent plaintiffs challenge the advice NFP provided the Plan

24 fiduciaries in connection with the selection of any of the funds at issue in their FAC,

25 they do not plausibly allege facts establishing any deficiency in NFP's process for

26

27 [1] A "§ 3(21) investment advisor" refers to a person that "renders investment advice for a fee"
under 29 U.S.C. § 1002(21)(A)(ii); and a "§ 3(28) investment manager" means a person that

28 provides plan services as described in 29 U.S.C. § 1002(38).

1

generating that advice.  Nor is it plausible to infer from the choices made by the Plan's fiduciaries that NFP's advice to the Plan was imprudent.  Rather, plaintiffs' FAC travels on exactly the kinds of faulty performance comparators and inappropriate hindsight performance evaluations that courts have repeatedly recognized do not sustain an inference of imprudence.

Third, the Plan's investment in the flexPATH TDFs (and the engagement of flexPATH as § 3(38) investment manager) occurred more than six years before the date on which the claims against NFP were deemed filed.  ERISA's statute of repose accordingly bars plaintiffs' fiduciary breach challenges to those decisions.

Finally, plaintiffs' prohibited transaction claims against NFP fail on similar grounds: the claims are time-barred, and NFP was not the fiduciary that caused the transactions plaintiffs challenge, such that plaintiffs have not properly alleged a prohibited transaction claim against NFP at all.

Because plaintiffs have failed to state any claim for relief against NFP, their claims against NFP should be dismissed in their entirety and with prejudice.

## II.   BACKGROUND

### A.   The Molina Plan.

The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34).  FAC ¶ 7.  The Plan is maintained under a written Plan document, which appoints Molina as the Plan administrator and named fiduciary with respect to the management and investment of the assets of the Plan.  *Id*. ¶¶ 7, 19; 29 U.S.C. § 1102(a)(1).  Molina's Board of Directors delegated authority to administer the Plan to the Molina Salary Savings Plan Investment Committee (the "Committee").  FAC ¶¶ 19-20.  The Committee has "the authority to select, monitor and remove Plan investments" and investment

managers.  *Id*. ¶ 21; Declaration of Catalina Vergara ("Vergara Decl.") Ex. C (Committee Charter) at 18.[2]

### B.   NFP's Role as a § 3(21) Investment Advisor.

The Molina fiduciaries hired NFP's predecessor, 401(k) Advisors, Inc., in 2010 to serve as "the Plan's investment consultant or fiduciary investment advisor as defined by 29 U.S.C. § 1002(21)(A)(ii)."  FAC ¶ 23.  NFP's services are provided subject to an Investment Advisory Agreement ("IAA"), in which NFP agreed to "provide research and analysis with regard to investment advice" and to "provide research and analysis that covers the investment products of several qualified retirement plan providers."  Vergara Decl. Ex. B (IAA) § 1.  The IAA provides that NFP is a "fiduciary with respect to the Plan under Section 3(21)(A)(ii) of" ERISA, *id*. § 2, meaning that it is a Plan fiduciary only "to the extent" it "renders investment advice for a fee" to the Plan, 29 U.S.C. § 1002(21)(A)(ii).  NFP's duties do not include the selection of individual investment options to be made available to Plan participants; plaintiffs allege, FAC ¶ 21, and the IAA confirms that the Committee "shall have the responsibility for the investment options selected to be available under the Plan," Vergara Decl. Ex. B (IAA) § 2.  The IAA also states that NFP "may assist [the Committee] with the selection of a 401(k) provider" at the Committee's request. *Id*. § 1.  NFP did not itself select the Plan's service providers; rather, as plaintiffs allege, the Molina fiduciaries retained "full power and full responsibility with respect to the management and administration of the Plan," including over the selection and retention of investment managers.  FAC ¶ 19; Vergara Decl. Ex. C (Committee Charter) at 18.

---

[2] All exhibits are attached to the accompanying Declaration of Catalina Vergara.  Citations of specific pages in the exhibits are to the page number stamped on the bottom-right footer of each consecutively stamped exhibit, pursuant to L.R. 11-5.2.  On a motion to dismiss, the Court may consider plan- and fund-related documents and disclosures outside of the complaint that are central to the plaintiffs' claims and whose authenticity is not in dispute.  *See* Request for Judicial Notice at 2–7.

**C.   The Molina Fiduciaries' Retention of flexPATH as § 3(38) Investment Manager.**

flexPATH is an affiliate of NFP.   FAC ¶ 52.   Through an Investment Management Agreement ("IMA") executed on April 1, 2016, the Molina fiduciaries engaged flexPATH as a § 3(38) investment manager to "provide asset allocation services by choosing investment options for the Plan that can qualify as a qualified default investment alternatives ("Investment Options") under ERISA section 404(c)(5) and related Department of Labor regulations for participant investment." Vergara Decl. Ex. A (IMA) § 1.   The fiduciary decision to engage flexPATH came earlier, in late 2015.   FAC ¶¶ 56, 58.   Under the IMA, flexPATH had "complete authority and discretion in providing the Management Services" described in the agreement.   Vergara Decl. Ex. A (IMA) § 1.   For its § 3(38) investment manager services, flexPATH received a fee of 0.025%, or 2.5 basis points ("bps"), of the total Plan assets.   *Id*. § 2.

The Molina fiduciaries acknowledged in the IMA that they made an "independent decision" to and were "solely responsible for evaluating and deciding whether to engage flexPATH."   *Id*. § 12(E), (J).   Per the agreement, "[n]either flexPATH, nor any affiliate, . . . provided any investment advice or otherwise acted as a fiduciary with respect to the Client's and Plans decision to engage flexPATH to provide Management Services."   *Id*. § 12(K).   Put differently, for this decision specifically, NFP did not act as § 3(21) investment advisor to the Plan.   *Id*. § 12(L).

**D.   flexPATH's Selection of the flexPATH TDFs for Plan Investment.**

The flexPATH TDFs are a series of collective investment trusts[3] maintained by Wilmington Trust, N.A. that are offered to defined contribution retirement plans.

---

[3] Collective investment trusts are investment vehicles maintained by a bank that consist of pooled assets of "retirement, pension, profit sharing, stock bonus or other trusts that are exempt from Federal income tax."   12 C.F.R. § 9.18(a)(2).   "A collective investment trust is similar to a mutual fund or other pooled investment vehicle because it also invests in a variety of securities to create a diversified investment portfolio."   FAC ¶ 40.

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

FAC ¶¶ 40–42, 44.  The flexPATH TDFs employ a "fund of funds" structure, comprising funds managed by unaffiliated investment managers, such as BlackRock. *Id.* ¶ 47.  Each yearly vintage of the flexPATH TDFs offers multiple "glidepaths"[4] (Conservative, Moderate, and Aggressive) to accommodate plan- and participant-specific investment styles and risk tolerances.  *Id.* ¶ 44.

The IMA "authorize[d] flexPATH to use affiliated investment options, including flexPATH CITs," Vergara Decl. Ex. A (IMA) § 1, and provided that flexPATH and its affiliates would not receive any additional compensation by selecting the flexPATH TDFs, *id.* § 2.  flexPATH selected the flexPATH TDFs[5] for inclusion in the Plan's investment lineup through the flexPATH Participation Agreement ("PA") executed on March 31, 2016.  Vergara Decl. Ex. E (PA) at 36, 38–40.  Pursuant to the IMA, flexPATH did not receive additional fees by selecting the flexPATH TDFs as the Plan's target date strategy.  Vergara Decl. Ex. A (IMA) § 2.

In early 2020, the Molina fiduciaries replaced NFP as investment consultant with SageView Advisory Group.  FAC ¶ 72.  In October 2020, the Molina fiduciaries removed the flexPATH TDFs and replaced them with the Fidelity Freedom Index TDFs.  *Id.* ¶¶ 71, 82.

### E.    Plaintiffs' Allegations in the FAC.

Plaintiffs Michelle Mills, Coy Sarell, Chad Westover, Brent Aleshire, Barbara Kershner, Paul Schaub, and Jennifer Silva are participants in the Plan.  FAC ¶¶ 11–17.  Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Plan, bring suit on behalf of the Plan against Defendants Molina,

---

[4] "A glidepath refers to how the fund's target asset allocations among a mix of investments, such as stocks, bonds and cash equivalents, are expected to change over time.  As the participant's target date approaches, the asset allocations transition to a mix of more conservative investments."  FAC ¶ 43.

[5] "Target date funds are designed to provide a single diversified investment vehicle for participants . . . .  Target date funds rebalance their portfolios to become more conservative as the participant gets closer to retirement."  FAC ¶ 39.

the Molina Board of Directors, the Molina Salary Savings Plan Investment Committee (collectively, the "Molina Defendants"), and NFP (together with the Molina Defendants, "defendants").  *Id.* ¶ 1.

The FAC contains four total claims, three of which are brought against NFP. Plaintiffs allege that all defendants, including NFP, breached their fiduciary duties of prudence and loyalty in violation of ERISA § 404(a)(1)(A)–(B) related to (1) the selection and retention of the flexPATH Index TDFs, FAC ¶¶ 107–15 (Count I) and (2) the use of higher-cost versions of Plan investments, *id.* ¶¶ 116–21 (Count II). Plaintiffs also allege that all defendants, including NFP, violated ERISA § 406(b) by "advis[ing]" on the selection of the flexPATH TDFs and ERISA § 406(a) by "caus[ing]" the Plan to invest in the flexPATH TDFs.  FAC ¶¶ 130–31 (Count IV).

## III.   LEGAL STANDARD

ERISA is a federal statute that provides a comprehensive framework for the regulation of employee retirement plans.   29 U.S.C. § 1104.   ERISA obliges retirement plan fiduciaries to discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries," and with the care someone "acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  *Id.* § 1104(a)(1)(A)–(B).   In addition, ERISA § 406 prohibits plan fiduciaries from causing ERISA plans to enter into certain prohibited transactions involving fiduciaries or other parties having an interest in the plan.  *Id.* § 1106(a)–(b).

Motions to dismiss brought under Rule 12(b)(6) are an "important mechanism for weeding out meritless claims" in ERISA cases.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Stating a plausible claim "requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court must accept well-pleaded facts as true, it need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The Court also need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

## IV.   ARGUMENT

### A.   Plaintiffs' Fiduciary Breach Claims Against NFP Premised on the Selection of Plan Investment Options Fail Because NFP Did Not Act as a Fiduciary to the Plan With Respect to Those Decisions.

Under ERISA, an entity is a fiduciary only "*to the extent*" it performs a fiduciary function. 29 U.S.C. § 1002(21)(A) (emphasis added). The Supreme Court and the Ninth Circuit have explained that this textual limitation on fiduciary status precludes an entity's liability for breach of fiduciary duty under ERISA where it does not have fiduciary responsibility. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019); 29 C.F.R. § 2509.75-8 (FR-16A). Here, plaintiffs allege that NFP breached fiduciary duties by "choosing the flexPATH Index target date funds for the Plan," FAC ¶¶ 69, 111 (Count I), and by "select[ing] and retain[ing] higher-cost shares of numerous Plan investment options," *id.* ¶ 119 (Count II). Those claims fail at the threshold because NFP did not have fiduciary responsibility over the selection of any of these investment options for the Plan.

First, as § 3(38) investment manager, flexPATH (not NFP) had the exclusive

fiduciary responsibility for selecting the flexPATH TDFs for the Plan.  The IMA gave flexPATH the authority to "provide asset allocation services by choosing investment options for the Plan that can qualify as a qualified default investment alternatives ('Investment Options') under ERISA section 404(c)(5) and related Department of Labor regulations for participant investment."  Vergara Decl. Ex. A (IMA) § 1.  The Molina fiduciaries explicitly "authorize[d] flexPATH to use affiliated investment options, including flexPATH CITs."  *Id*.  The FAC does not allege that NFP was involved in flexPATH's selection of the flexPATH TDFs.

Nor did NFP have a fiduciary role in advising the Committee to retain flexPATH as § 3(38) manager.  In their IMA with flexPATH, the Molina fiduciaries acknowledged that they "made an independent decision to enter into this Agreement and engage flexPATH to provide Management Services."  *Id*. § 12(J).  The Molina fiduciaries further attested that neither flexPATH *nor any affiliate* (which includes NFP) "provided any investment advice or otherwise acted as a fiduciary" or "recommended, advised, or exercised discretion" with respect to its decision to retain flexPATH to provide Management Services.  *Id*. §§ 12(K), (L).  NFP's agreement with the Plan confirms the limited nature of NFP's fiduciary responsibility: NFP has no directive under the IAA to assist in the selection or monitoring of investment managers.  *See* Vergara Decl. Ex. B (IAA).  The IAA provides only that NFP "may" be engaged to help the Plan evaluate service providers.  *Id*. § 1.  The FAC contains no allegations that NFP offered any advice or recommended retaining flexPATH as § 3(38) investment manager.

Second, with respect to the allegedly higher-cost share classes at issue in plaintiffs' second cause of action, plaintiffs concede that the Committee (not NFP) had "the authority to select, monitor and remove Plan investments, among other duties."  FAC ¶ 21.  An investment advisor like NFP is not a fiduciary with respect to the choice of investments made available to plan participants where, as here, the

plan sponsor retains "final say on which investment options will be included." *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009). NFP lacked decision-making authority over the Plan's investment lineup, and it thus had no fiduciary responsibility beyond the investment advice it provided the Plan fiduciaries for their consideration. *See* Vergara Decl. Ex. B (IAA) §§ 1–2; *see*, *e.g.*, *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir. 1982) (investment adviser's fiduciary duties generally relate only to the performance of "its investment advising functions").

Because NFP had no fiduciary responsibility for the selection of the flexPATH TDFs or the Plan's other investment decisions, plaintiffs' fiduciary breach claims against NFP premised on these decisions fail as a matter of law and must be dismissed.[6]

### B.   Plaintiffs Do Not Plausibly Allege that NFP Breached Fiduciary Duties in Providing Investment Advice to the Plan.

To the extent plaintiffs challenge the *advice* provided by NFP relating to certain investment options (rather than the *decisions* to offer those options to Plan participants over the relevant period), they allege no facts allowing an inference that NFP's process for generating its advice was defective. Nor is it plausible to infer from the options made available to Plan participants that NFP was imprudent in advising the Plan.

### 1.   The FAC Does Not Allege An Imprudent Process by NFP.

Plaintiffs do not allege that NFP employed an imprudent process to advise the

---

[6] For similar reasons, plaintiffs cannot state a claim for co-fiduciary liability against NFP. *See* FAC ¶¶ 115, 121. First, NFP cannot face co-fiduciary liability for actions taken by flexPATH as § 3(38) investment manager, as another court in this district recently concluded in dismissing claims brought against NFP for similar conduct by flexPATH as § 3(38) investment manager. *See Lauderdale v. NFP Ret., Inc.*, No. SACV21301JVS(KESx), 2022 WL 422831, at *6–7, 12 (C.D. Cal. Feb. 8, 2022). Second, ERISA requires that an entity be "a fiduciary . . . [to] be liable for a breach of fiduciary responsibility of another fiduciary," 29 U.S.C. § 1105(a), and NFP was not a fiduciary with respect to the challenged conduct here. Finally, plaintiffs' claims are predicated on non-existent, direct breaches by the Committee and flexPATH, which plaintiffs have failed to plead for the reasons described in this motion and in the Molina Defendants' separate motion to dismiss.

Plan.  To state a claim for breach of NFP's limited fiduciary duty, plaintiffs must plead specific facts showing that NFP did not act "with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use."  *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015) ("*Tibble III*") (quotations omitted).  The Court must assess a fiduciary's prudence according to processes, not outcomes, asking "whether fiduciaries, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure of the investment."  *Tibble v. Edison Int'l* ("*Tibble II*"), 729 F.3d 1110, 1136 (9th Cir. 2013), *vacated on other grounds by Tibble III*, 575 U.S. 523 (quotation omitted).  Fiduciary decision-making "will implicate difficult tradeoffs," and courts evaluating allegations of imprudence "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."  *Hughes v. Nw. Univ*, 142 S. Ct. 737, 742 (2022); *see also Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (noting that the prudent person standard does not require a fiduciary to take "any particular course of action if another approach seems preferable" (quotation omitted)).

NFP's potential fiduciary liability is limited to its advice to the Plan—and only with respect to the funds in the lineup *other* than the flexPATH TDFs, as noted above.  But plaintiffs do not plausibly allege facts demonstrating any deficiency in NFP's process for generating advice.[7]  That should end the inquiry—but plaintiffs ask the Court to infer a defective process from what they characterize as allegedly defective results.  Plaintiffs' allegations do not support that inference as to the fiduciaries who actually made the challenged decisions, much less as to NFP, as explained next.

---

[7] Plaintiffs allege that NFP did not provide the Plan fiduciaries certain information and reporting pertaining to the flexPATH TDFs, FAC ¶¶ 68–70, but they ignore that NFP had no role in those funds' selection or monitoring, given that flexPATH served as a § 3(38) investment manager with respect to the funds.

2. **One Cannot Infer, From the Options Made Available to Plan Participants, that NFP's Advice Was Imprudent.**

   a. **Plaintiffs' Inapt Comparisons of the flexPATH TDFs to TDFs with Different Strategies Cannot Sustain an Inference of Imprudence.**

Plaintiffs' hindsight performance comparisons of the flexPATH TDFs to the Vanguard and Fidelity TDFs, all of which have different investment strategies from the flexPATH TDFs', cannot support an inference of imprudence on NFP's part.

Allegations "show[ing] only that [the defendants] could have chosen different vehicles for investment that performed better during the relevant period" do not raise a plausible inference of imprudence. *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018); *see, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (a "showing of imprudence" does not "come down to simply pointing to a fund with better performance"). Instead, to show that "a prudent fiduciary in like circumstances" would have made a different investment decision "based on the . . . performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (quotation omitted).

To rely on alternative TDFs as a meaningful benchmark, a plaintiff must "explain[] why" the challenged funds and proposed comparators "have similar aims, risks, and rewards," pointing, for example, to "information regarding the investment strategies, glide paths, and fees" for specific funds. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, No. 19-CV-04618-LHK, 2022 WL 74002, at *10 (N.D. Cal. Jan. 8, 2022); *see also, e.g.*, *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306–07 (D. Minn. 2021) (dismissing claims challenging various plan investment options because "[p]laintiffs have not pleaded how their comparators have similar asset allocation or investment strategies"); *Patterson v. Morgan Stanley*, No. 16-cv-6568 (RJS), 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019) (dismissing claim challenging retention of target date fund where plaintiffs made "only a conclusory allegation" that proposed

alternative was "a proper comparator").  Plaintiffs cannot "dodge the requirement for a meaningful benchmark" by finding an "alternative fund or two with some similarity." *Meiners*, 898 F.3d at 823.  Indeed, courts recognize that plaintiffs cannot state a claim by alleging differences in returns while closing their eyes to readily discernable differences among available TDF strategies. *See id.* at 822–23.

Plaintiffs do not allege that their supposed comparator funds—Vanguard Target Retirement TDFs, Vanguard Target Retirement Trust Plus TDFs, and Fidelity Freedom Index TDFs—are "meaningful benchmark[s]" for the flexPATH TDFs. First, plaintiffs' comparators employ different glidepaths and thus maintain different asset allocations and levels of risk over the lifetime of the investment.  They therefore neither have "similar aims, risks, and rewards" as the flexPATH TDFs, *Anderson*, 2022 WL 74002 at *10, nor provide a helpful guide in assessing the flexPATH TDFs' performance, *Parmer*, 518 F. Supp. 3d at 1306–07 (TDFs with "various glide path strategies" are not apt comparators).  Asset allocation differences present materially different investment approaches that lead to varying investment performance. Notably, although asset allocation tends to be the primary driver of performance for any TDF—passive, active, or blend—it is the *only* driver of gross-of-fee performance for an index-fund-based TDF like the flexPATH TDFs because index funds are designed to closely track (rather than beat) the returns of a relevant market index. *See Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478 (8th Cir. 2020).

As shown by publicly available fund disclosures, the flexPATH TDFs offer a materially different investment strategy and risk profile from plaintiffs' comparators. The flexPATH TDFs and plaintiffs' comparators employ significantly different portfolio allocations, especially in portions allocated to equity and to diversifiers.[8]

---

[8] *Compare* Vergara Decl. Ex. F (flexPATH Index Moderate 2025 Fund WFIMBX Fact Sheet) *with* Vergara Decl. Ex. G (Vanguard Target Retirement 2025 Fund VTTVX Fact Sheet March 31, 2022); Vergara Decl. Ex. H (Vanguard Target Retire Trust Plus 2025 Fact Sheet, March 31, 2022); Vergara Decl. Ex. I (Fidelity Freedom Index 2025 Fund Fact Sheet, March 31, 2022).

The flexPATH TDFs also bear less risk than plaintiffs' comparators.  For example, the flexPATH Moderate Index 2025 TDF bears lower risk than the 2025 iterations of the Vanguard and Fidelity TDFs, as reflected in the Morningstar Risk rating.[9]  These differences render plaintiffs' comparisons to other TDFs in the FAC patently unhelpful.

Another difference among TDF strategies is the choice of a "to" approach (which reaches its most conservative asset allocation *at* the target retirement date, like the BlackRock LifePath Index TDFs underlying the Moderate flexPATH TDFs, *see* FAC ¶ 48), versus a "through" approach (which continues to reduce the fund's equity exposure *after* retirement, like plaintiffs' comparators).  Vergara Decl. Ex. J (Morningstar Target-Date Strategy Landscape).  These distinct approaches feature dramatically different equity asset allocations at retirement age, when the impact of asset allocation is the most pronounced.  *Id*. at 37–38 ("[T]he average 'through' series holds 46% in stocks versus just 33% for the average 'to' series.").  As Morningstar notes, the difference in asset allocation between "to" and "through" glide paths "can lead to markedly different performance."  *Id*. at 37–38.

The FAC's performance allegations are flawed in any event.  Plaintiffs allege that the flexPATH TDFs substantially underperformed the Vanguard TDFs, Vanguard Trust Plus TDFs, and Fidelity Freedom Index TDFs from June 30, 2016 to September 30, 2020.  FAC ¶¶ 81, 85.  These performance comparisons are unilluminating because returns over "three to five years" are "still considered relatively short periods of underperformance" and do not raise a plausible inference of imprudent fiduciary oversight.  *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019).  "[T]he common

---

[9] *Compare* Vergara Decl. Ex. F (flexPATH Index Moderate 2025 Fund WFIMBX Fact Sheet) *with* Vergara Decl. Ex. G (Vanguard Target Retirement 2025 Fund VTTVX Fact Sheet March 31, 2022); Vergara Decl. Ex. H (Vanguard Target Retire Trust Plus 2025 Fact Sheet, March 31, 2022); Vergara Decl. Ex. I (Fidelity Freedom Index 2025 Fund Fact Sheet, March 31, 2022).

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

practice of retaining investments through periods of under-performance as part of a long-range investment strategy is plainly permitted." *White v. Chevron Corp.*, No. 16-cv-0793-PJH, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017) ("*Chevron II*"), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

### b. Plaintiffs' Criticisms of the flexPATH TDFs' Track Records and Investment Styles Likewise Do Not Support an Inference of Imprudence.

With no meaningful benchmark comparison, plaintiffs are left alleging that characteristics of the flexPATH TDFs render them inherently unsuitable options for retirement plans, suggesting that NFP acted imprudently in providing advice to the Molina fiduciaries. These allegations fall short, too.

Plaintiffs' criticism of the flexPATH TDFs' multi-glidepath (Conservative, Moderate, and Aggressive) offering is unavailing. This approach offers individual employees the flexibility to select an investment style that matches their personal risk preferences by deciding if their assets will be invested conservatively, moderately, or aggressively. The flexibility better accommodates the unique requirements of every plan and participant-base and moves away from the one-size-fits-all approach of traditional TDFs. These approaches are not new—conservative, moderate, or aggressive glidepaths exist in spades in the marketplace. flexPATH is unique in offering them all as options within one TDF suite.

Plaintiffs do not and cannot plausibly allege that the glidepaths employed by the flexPATH TDFs were unsuited to their purposes. Plan fiduciaries must use "appropriate consideration" in making fiduciary investment decisions, considering, among other things, "the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks." 29 C.F.R. § 2550.404a-1(b)(2)(i). The FAC contains no critique of how the flexPATH Conservative, Moderate, or Aggressive glidepaths

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

allocate assets or risk over the life of the fund, except to point out after-the-fact performance differences in the short term.  As noted, the flexPATH TDFs bear less risk than plaintiffs' comparators, which is a noteworthy factor to consider in investment selection.  *See Reetz v. Lowe's Cos., Inc.*, No. 5:18-CV-00075-KDB-DCK,  2021 WL 4771535, at *56 (W.D.N.C. Oct. 12, 2021) ("ERISA does not require fiduciaries to . . . prioritize raw returns over other considerations, including the higher risk associated with higher expected returns"), *appeal filed*, No. 21-2267 (4th Cir. Nov. 10, 2021).[10]  It follows that plaintiffs have offered no basis to question the fiduciaries' processes for maintaining these funds in the Plan.

Nor can plaintiffs proceed on the allegation that the funds were "untested" at the time of selection.  FAC ¶ 43.  Courts have rejected the notion that new funds without a certain length of performance history are *per se* imprudent for ERISA plans.  *See, e.g.*, *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 705 (W.D. Mo. 2019) (noting plaintiffs "cite no authority holding that the implementation of a fund without a long performance history is *per se* imprudent"); *Patterson*, 2019 WL 4934834, at *14 ("That the 2025 Trust was untested is also insufficient to establish imprudence in the selection and retention of the fund.").  The Department of Labor ("DOL"), which has enforcement responsibility for ERISA, has expressly encouraged large 401(k) plans to consider adopting "custom" TDFs to benefit participants, even though the use of custom funds necessarily requires investment in newly formed vehicles without performance histories of their own.  *See* Vergara

---

[10] The discretion to choose an approach with lower risk is especially important for TDFs because TDFs serve multiple objectives that may warrant different emphasis depending on the particular participant population. Vergara Decl. Ex. K (GAO Report) at 109 ("Differences in the size of the equity component throughout the TDF's glide path may be rooted in different goals and in the treatment of various considerations such as the risk of losing money because of financial market fluctuations—investment risk—and the risk that a participant could outlive his or her assets— longevity risk."); *see* Vergara Decl. Ex. J (Morningstar Target-Date Strategy Landscape) at 77–88 (showing range of equity glide paths).

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

Decl. Ex. L (*Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries*).[11]  In any case, these are not untested funds.  As plaintiffs themselves allege, the flexPATH TDFs are fund-of-fund investment vehicles for which flexPATH selected unaffiliated investment managers.  FAC ¶ 47.  The underlying passively managed BlackRock funds have impressively long track records and they are combined using glidepaths that are well within the mainstream.  *Id*. ¶¶ 48–50; *see* Vergara Decl. Ex. J (Morningstar Target-Date Strategy Landscape) at 64, 71–72.

### c.   Plaintiffs' Claims of Imprudence Based On Excessive Fees Also Are Insufficient.

Plaintiffs next claim that one can infer imprudence by NFP from the expenses borne by the flexPATH TDFs and the share classes used for other Plan investments.  As a threshold matter, price alone does not support an inference of imprudence, as "courts have routinely held that a fiduciary's failure to offer the cheapest investment option is not enough by itself to state a claim for a breach of fiduciary duty." *Patterson v. Cap. Grp. Cos.*, No. CV 17-4399 DSF (PJWx), 2018 WL 748104, at *4– 5 (C.D. Cal. Jan. 23, 2018); *see also Hecker*, 556 F.3d at 586; *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 601 n.7 (8th Cir. 2009).  "[P]laintiffs must plead some other grounds to plausibly suggest wrongdoing." *Patterson*, 2018 WL 748104, at *4–5.  They have failed to do so here.

In Count I, plaintiffs allege that the flexPATH TDFs charged Plan participants 24 bps when initially invested in the I1 share class.  FAC ¶¶ 50, 95.  As reflected in the IMA, this included flexPATH's § 3(38) investment management fees, with any excess charges being returned to the Plan.  Vergara Decl. Ex. A (IMA) § 2.  Plaintiffs have not plausibly alleged that flexPATH's agreed-upon compensation or the net cost to the Plan was excessive for the services provided. *See Young v. Gen. Motors Inv.*

---

[11] Likewise, the DOL suggested that large plans consider separate accounts and hire established managers to run them, despite the fact that separate accounts are newly formed vehicles with no performance history when they are created. *See* Vergara Decl. Ex. M (*Study of 401(k) Plan Fees and Expenses*).

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

1   *Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (Sotomayor, J.).

2       In Count II, plaintiffs allege that defendants also breached their duty of

3   prudence by failing to offer the cheapest available share classes of the flexPATH

4   TDFs and other funds. FAC ¶¶ 86–97, 116–121.   Plaintiffs ignore that revenue from

5   higher-cost share classes may be allocated to other plan expenses, and in any case

6   they themselves allege facts showing the Plan's fiduciaries were attentive to

7   opportunities to reduce investment expenses.   The FAC itself alleges that the Plan

8   moved to lower-cost share classes of Plan investments as they became available

9   during the class period, as when the Plan transitioned to the lower-cost M shares for

10   the flexPATH TDFs. *Id.* ¶¶ 95, 96.   These allegations foreclose plaintiff's suggestion

11   that the process for monitoring plan expenses was defective.

12           **d.       Plaintiffs Fail to State a Claim that NFP Breached a
                         Fiduciary Duty to Act in Accordance with the IPS.**

13       Plaintiffs also cannot sustain a claim that NFP breached a duty to act "in

14   accordance with the documents and instruments governing the plan" consistent with

15   ERISA 404(a)(1)(D).   *See* FAC ¶ 112.   NFP's responsibilities to the Plan were

16   governed by its IAA with the Molina fiduciaries, not the IPS governing the

17   Committee. *See* Vergara Decl. Ex. B (IAA); *see also Cal. Ironworkers Field Pension*

18   *Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1042 (9th Cir. 2001) (explaining use of

19   IPSes only by "[f]iduciaries who are responsible for plan investments").   To the

20   extent NFP provided advisory services at all, they were provided under the IAA.

21       The FAC does not plausibly allege a violation of the IPS in any event.

22   Plaintiffs simply rewrite the document in arguing that the flexPATH TDFs were out

23   of bounds to the Plan's fiduciaries.   *See* Vergara Decl. Ex. D (IPS) at 24–25 (not

24   requiring any fund-specific track record and providing that "long-term performance

25   of an investment manager may be inferred through the performance of another

26   investment with similar style attributes managed by such investment manager.").

27

28

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

C.   **Plaintiffs' Fiduciary Breach Claims Against NFP Regarding the Selection of the flexPATH TDFs Are Barred By ERISA's Statute of Repose.**

Plaintiffs' claims against NFP pertaining to the initial selection of the flexPATH TDFs are also time-barred and fail on that additional ground.  ERISA imposes a six-year statute of repose on fiduciary breach claims. 29 U.S.C. § 1113(1); *see Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020).  A plaintiff must file suit within "six years after . . . the date of the last action which constituted a part of the breach or violation." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1051–52 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2596 (2021) (quoting 29 U.S.C. § 1113(1)(A)).  Plaintiffs thus cannot pursue claims against NFP over conduct occurring before May 13, 2016—six years before their suit against NFP was deemed filed.  *See* Notice Regarding Assumed "Scrivener's" Error, ECF No. 45; Order Am. Mot. for Leave, ECF No. 47.  But both the Committee's selection of flexPATH as § 3(38) investment manager and flexPATH's inclusion of the flexPATH TDFs in the Plan occurred by April 1, 2016—well before May 13, 2016.  *See* Vergara Decl. Ex. A (IMA); Vergara Decl. Ex. E (PA).

As explained above, documents incorporated into the FAC establish that NFP did not advise the Plan with respect to the selection of flexPATH or the flexPATH TDFs.  *See* Vergara Decl. Ex. A (IMA); Vergara Decl. Ex. E (PA).  But even if it did, any such advice would necessarily have been given no later than April 1, 2016, when both the Committee and flexPATH had finalized their respective decisions.  Vergara Decl. Ex. A (IMA) at 4, 10; Vergara Decl. Ex. E (PA) at 36; *accord* FAC at ¶ 53 (alleging that "on or about May 16, 2016, Molina," not NFP, "added the flexPATH Index target date funds to the Plan").  In fact, according to plaintiffs' allegations, any advice would necessarily have been given before the funds came into existence in January 2016.  *See* FAC ¶ 58 ("[w]hen Molina decided to add the flexPATH Index target date funds to the Plan, *and when NFP recommended them for consideration*,

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

those funds did not yet exist" (emphasis added)); *id.* ¶ 56 (alleging flexPATH Index TDFs came into existence in January 2016).   Any claims asserting purported fiduciary breaches by NFP regarding the initial inclusion of the flexPATH TDFs in the Plan are therefore time-barred.

### D.   Plaintiffs' Prohibited Transaction Claims Against NFP Fail as a Matter of Law.

Finally, in Count IV, plaintiffs allege that NFP is liable for alleged prohibited transactions relating to the Plan's investment in the flexPATH TDFs. *Id.* ¶¶ 130–31. These claims are untimely and they are not properly asserted against NFP .

As discussed above, ERISA claims must be brought by the earlier of six years of "the date of the last action which constituted a part of the breach or violation" or within three years of the "earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(1), (2); *see Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir. 1991).   The relevant "transaction" when a fund is added to a lineup is the fiduciaries' selection of the fund for the Plan lineup, and the relevant date of that transaction is the date of the decision—not the date the plan's investment in the fund went live.  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (explaining the relevant transaction for § 406 purposes is the initial investment decision and not "*continu[ing]* to hold" the particular investment); *see also David v. Alphin*, 704 F.3d 327, 341 (4th Cir. 2013); ("The only action that can support an alleged prohibited transaction is the initial selection of the affiliated funds."); *Chevron II*, 2017 WL 2352137, at *22 ("Unlike a claim for breach of fiduciary duty . . . a violation of § 1106 occurs when a fiduciary takes a particular action with respect to a Plan . . . and the Ninth Circuit has opined that there is no such thing as a 'continuing' prohibited transaction") (quotation omitted).   The selection of the flexPATH TDFs occurred no later than April 1, 2016, after both the IMA and PA for flexPATH had been executed.  *See* Vergara Decl. Ex. A (IMA) at 4; Vergara Decl. Ex. E (PA) at 36.  The repose period

against NFP goes back only to May 13, 2016, making prohibited transaction claims regarding the choice of flexPATH untimely.

Moreover, NFP is not a proper defendant to plaintiffs' prohibited transaction claims at all. "[T]o establish liability under § 1106, a party must provide that 'a fiduciary caused the plan to engage in the allegedly unlawful transaction.'" *Wright*, 360 F.3d at 1101 (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)). As explained, NFP did not have the fiduciary authority to cause the Plan to invest in the flexPATH TDFs: the Committee selected flexPATH to serve as § 3(38) advisor, and flexPATH selected the flexPATH TDFs for the Plan. *Supra* at 8. NFP did not act as § 3(21) advisor with respect to the selection of flexPATH, *supra* at 8, but even if it had, it *still* would not have "caused the plan" to engage in the transaction because a § 3(21) advisor does not have that fiduciary decision-making power. Courts have rejected prohibited transactions based on "attenuated theor[ies] of causation," where a different fiduciary directly caused the challenged transaction. *Miller v. Astellas US LLC*, No. 30 C 3882, 2021 WL 1387948, at *10 (N.D. Ill. Apr. 13, 2021); *see Williams v. Centerra Grp., LLC*, No. 20:cv-04220-SAL, 2021 WL 4227384, at *11 (D.S.C. Sept. 16, 2021); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910, 944 (E.D. Wis. 2020) (dismissing prohibited transaction claim where allegations did not show that defendants had "discretionary authority to demand that the transaction take place"). That principle precludes any prohibited transaction claim against NFP here.

## V.   **CONCLUSION**

For the reasons stated above, the Court should dismiss plaintiffs' claims against NFP in the FAC with prejudice.

1

2

3    Dated:  August 23, 2022          By:    _/s/ Catalina Vergara_
                                              Catalina Vergara

4                                     CATALINA VERGARA
                                      O'MELVENY & MYERS LLP
5
                                      Attorneys for Defendant
6                                     NFP RETIREMENT, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW