Jeanne A. Fugate (SBN 236341)
jfugate@kslaw.com
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
Telephone: +1 213 443-4355

David Tetrick, Jr. (*pro hac vice*)
dtetrick@kslaw.com
Darren A. Shuler (*pro hac vice*)
dshuler@kslaw.com
Benjamin B. Watson (*pro hac vice*)
bwatson@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street N.E. Ste. 1600
Atlanta, GA 30309-3521
Telephone:  +1 404 572 4600
Facsimile:   +1 404 572 5100

*Counsel for Defendants Molina Healthcare, Inc., The Board of Directors of Molina Healthcare, Inc., and The Molina Salary Savings Plan Inv. Committee*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# (WESTERN DIVISION)

| | |
|---|---|
| MICHELLE MILLS, COY SARELL, CHAD WESTOVER, BRENT ALESHIRE, BARBARA KERSHNER, PAULA SCHAUB, and JENNIFER SILVA, individually and as representatives of a class of participants and beneficiaries on behalf of the Molina Salary Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>MOLINA HEALTHCARE, INC., THE BOARD OF DIRECTORS OF MOLINA HEALTHCARE, INC., THE MOLINA SALARY SAVINGS PLAN INVESTMENT COMMITTEE, and NFP RETIREMENT, INC.,<br><br>Defendants. | Case No. 2:22-cv-1813-ODW-GJS<br>Hon. Otis D. Wright II, Courtroom 5D<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with Declaration of Darren A. Shuler; and Proposed Order]<br><br>Date: October 24, 2022<br>Time: 1:30 PM<br>Dept.: Courtroom 5D |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT** on October 24, 2022, at 1:30 p.m., in the Courtroom of the Honorable Otis D. Wright II, whether virtually or in Courtroom 5D located in the First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Defendants Molina Healthcare, Inc. ("Molina"), the Board of Directors of Molina Healthcare, Inc., and the Molina Salary Savings Plan Investment Committee (collectively, the "Molina Defendants") will and hereby do move this Court for an order granting their Motion to Dismiss Plaintiffs' First Amended Class Action Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  This motion is made on the grounds that the First Amended Complaint fails to allege sufficient facts required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) to state a claim.  Specifically:

1.     Count I is barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113; is precluded by the Molina Defendants' delegation of discretionary fiduciary authority to non-party flexPATH Strategies, LLC; and otherwise fails to allege facts sufficient to state a claim that the selection and retention of the flexPATH Index target-date funds as an investment option in the Molina Salary Savings Plan (the "Plan") breached the Molina Defendants' fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

2.     Count II fails to allege facts sufficient to state a claim that the Molina Defendants breached their duty of prudence under ERISA by allowing the Plan to include certain investments with allegedly higher-cost shares than were available in the market.

3.     Count III fails to allege facts sufficient to state a claim that Molina and Molina's Board of Directors breached their fiduciary duties under ERISA by failing to monitor the Molina Salary Savings Plan Investment Committee.

4.     Count IV is barred by ERISA's six-year statute of repose, 29 U.S.C. § 1113, and fails to allege facts sufficient to state a claim that that the Molina

Defendants effected a prohibited transaction with Defendant NFP Retirement, Inc.

This Motion is based on this Notice and accompanying Memorandum of Points and Authorities in support thereof, the pleadings and records on file with this Court, and any evidence and argument that may be presented at or before the hearing on this matter.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 2, 2022.  (Declaration of Darren A. Shuler ¶ 2.)

Dated: August 23, 2022                     Respectfully submitted,

/s/ *Jeanne A. Fugate*
Jeanne A. Fugate
*Attorneys for Molina Healthcare, Inc., The Board of Directors of Molina Healthcare, Inc., and The Molina Salary Savings Plan*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................. 1

BACKGROUND .............................................................................................. 2

      A.   The Molina Salary Savings Plan........................................... 2

      B.   NFP .......................................................................................... 4

      C.   Plaintiffs' Claims .................................................................... 4

MOTION TO DISMISS STANDARD ................................................. 6

ARGUMENT ..................................................................................................... 7

I.    COUNT I (FLEXPATH FUNDS) FAILS TO STATE A
      FIDUCIARY PRUDENCE CLAIM. ............................................. 7

      A.   Any Claim Based on Selection of the flexPATH
          Funds Is Time Barred............................................................. 8

      B.   Any Claim Based on Retention of the flexPATH
          Funds Is Precluded by Molina's Agreement with
          flexPATH Strategies. ............................................................. 8

      C.   Plaintiffs' Remaining Allegations Do Not Support
          a Claim of Imprudence........................................................ 10

II.   COUNT II (EXCESSIVE MANAGEMENT FEES)
      FAILS TO STATE A FIDUCIARY PRUDENCE
      CLAIM. .......................................................................................... 14

III.  COUNT III (FAILURE TO MONITOR) FAILS AS A
      MATTER OF LAW. ....................................................................... 16

IV.  COUNT IV (PROHIBITED TRANSACTIONS) FAILS
      TO STATE A CLAIM. ................................................................. 16

      A.   ERISA's Six-Year Statute of Repose Bars Count
          IV............................................................................................. 16

      B.   Count IV Fails to Allege a Prohibited
          Transaction............................................................................. 17

CONCLUSION................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Intel Corp.*,
   No. 3:19-cv-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21,
   2021) ................................................................................................ 13, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 6

*Barchock v. CVS Health Corp.*,
   886 F.3d 43 (1st Cir. 2018) ................................................................. 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 6

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ............................................................. 6

*In re Computer Scis. Corp. Erisa Litig.*,
   635 F. Supp. 2d 1128 (C.D. Cal. 2009) ............................................. 16

*David v. Alphin*,
   704 F.3d 327 (4th Cir. 2013) ............................................................. 17

*Dorman v. Charles Schwab Corp.*,
   No. 4:17-cv-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20,
   2018) .................................................................................................. 12

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) .......................................................................... 2, 6

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ......................................................................... 11

*Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension
   Plans*,
   No. CV 2:20-cv-09194-DMG, 2021 WL 3508534 (C.D. Cal. Aug.
   9, 2021) ............................................................................................ 6, 13

ii

*Kurtz v. Vail Corp.*,
    511 F. Supp. 3d 1185 (D. Colo. 2021) ............................................................... 15

*Lauderdale v. NFP Ret., Inc.*,
    No. 8:21-cv-00301-JVS-KES, 2021 WL 3828646 (C.D. Cal. Aug.
    18, 2021) ................................................................................................................ 17

*Lauderdale v. NFP Ret., Inc.*,
    No. 8:21-cv-00301-JVS-KES, 2022 WL 422831 (C.D. Cal. Feb. 8,
    2022) ........................................................................................................................ 9

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ............................................................................... 12

*Orellana v. Mayorkas*,
    6 F.4th 1034 (9th Cir. 2021) ............................................................................... 14

*Parmer v. Land O'Lakes, Inc.*,
    518 F. Supp. 3d 1293 (D. Minn. 2021) ............................................................... 13

*Patterson v. Cap. Grp. Cos.*,
    No. 2:17-cv-04399-DSF-PJW, 2018 WL 748104 (C.D. Cal. Jan.
    23, 2018) ................................................................................................................ 11

*Patterson v. Morgan Stanley*,
    No. 1:16-cv-06568-RJS, 2019 WL 4934834 (S.D.N.Y. Oct. 7,
    2019) ....................................................................................................................... 11

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011) ................................................................................ 12

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...................................................................... 10, 13

*In re Syncor ERISA Litig.*,
    410 F. Supp. 2d 904 (C.D. Cal. 2006) ................................................................ 16

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ............................................................................... 14

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ................................................................................. 9

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

*Wehner v. Genentech*,
No. 3:20-cv-06894-WHO, 2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ................................................................................................. 7

*White v. Chevron Corp.*,
752 F. App'x 453 (9th Cir. 2018) .............................................................. 7

*White v. Chevron Corp.*,
No. 4:16-cv-00793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ............................................................................................ *passim*

*White v. Chevron Corp.*,
No. 4:16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017) ............................................................................... 12, 16, 17

*Wildman v. Am. Century Servs., LLC*,
362 F. Supp. 3d 685 (W.D. Mo. 2019) ............................................. 10, 11

*Wright v. Ore. Metallurgical Corp.*,
360 F.3d 1090 (9th Cir. 2004) ................................................................ 17

**Statutes and Other Authorities**

29 U.S.C. § 1102(c)(3) ................................................................................. 9

29 U.S.C. § 1104(a)(1)(B) ........................................................................... 6

29 U.S.C. § 1105(d) ................................................................................... 10

29 U.S.C. § 1106 ......................................................................................... 5

29 U.S.C. § 1106(a) ..................................................................................... 6

29 U.S.C. § 1106(a)(1) .............................................................................. 17

29 U.S.C. § 1113 .............................................................................. 1, 2, 8

Federal Rule of Civil Procedure 12 ............................................................ 2

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

## **INTRODUCTION**

This case is one of countless class actions filed under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, that seek, with the benefit of hindsight, to hold retirement plan fiduciaries liable for failing to select supposedly "better" investments.  Plaintiffs are current and former participants in the Molina Salary Savings Plan, a defined contribution plan sponsored by Molina Healthcare, Inc.  They allege that Molina, its Board of Directors, and the committee of employees responsible for administering the Plan (collectively, the "Molina Defendants") violated ERISA by allowing the Plan to include an "untested" suite of target-date funds, the flexPATH Index Target Date Funds, and by failing to negotiate lower fees for other Plan investment options.

None of Plaintiffs' allegations state a plausible claim under ERISA.  To start, any claim based on the selection of the flexPATH Funds is barred by ERISA's six-year statute of repose.  *See* 29 U.S.C. § 1113.  Any claim based on the retention of the flexPATH Funds, meanwhile, is precluded by Molina's delegation of authority to the Funds' investment manager, flexPATH Strategies, LLC.  And even putting that delegation aside, the Amended Complaint does not allege the facts needed to raise a plausible inference that the Molina Defendants failed to monitor the flexPATH Funds in the manner required by ERISA.

Plaintiffs' excessive fee claim does no better.  Despite now having had an opportunity to review Molina's plan committee materials, Plaintiffs' principal factual allegation remains a chart showing limited periods of time when cheaper share classes of Plan investments were allegedly available in the market.  But the short length of these periods—most are less than one year—does not raise a plausible inference of imprudent monitoring by the Molina Defendants.  To the contrary, Plaintiffs' allegations confirm that Defendants monitored Plan investments and made changes that benefited Plan participants.

Plaintiffs' new prohibited transaction claim is also fatally flawed.  To start,

the claim is also barred by ERISA's six-year statute of repose. *See* 29 U.S.C. § 1113. But even if it were not, the claim depends on a misguided theory that Molina's selection of the flexPATH Funds somehow caused a transfer of Plan assets to Defendant NFP Retirement, Inc., the Plan's former investment consultant. The Amended Complaint fails to back this theory up with any factual allegations, instead relying on innuendo about a "conflicted" relationship between NFP and the flexPATH Funds. Judge Selna recently rejected this theory in another case against NFP, and this Court should too.

This case illustrates why Federal Rule of Civil Procedure 12 is such an "important mechanism for weeding out" speculative ERISA claims at the pleading stage. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Plaintiffs' time-barred and misdirected criticisms of the Molina Defendants' reasonable investment decisions are not enough to open the door to the burdensome and costly discovery that ERISA class actions impose. The Amended Complaint fails to state a viable claim against the Molina Defendants and they should be dismissed from this case with prejudice.

## **BACKGROUND**

### A.    The Molina Salary Savings Plan

Molina Healthcare, Inc. provides managed healthcare services under Medicaid and Medicare and through state insurance programs. Plaintiffs' First Amend. Class Action Compl. ("FAC"), Dkt. 43 ¶ 18. Molina sponsors a defined contribution plan for its employees: the Molina Salary Savings Plan. *Id.* ¶ 7. The Plan permits eligible employees to make contributions to individual accounts, and Molina makes certain matching contributions as well. *Id.* ¶ 9. Participants choose from a wide variety of investment options that allows them to build a savings approach to suit their individual needs. Those investment options are managed by the Molina Salary Savings Plan Investment Committee, which acts pursuant to authority delegated by Molina's Board of Directors. *Id.* ¶ 20.

The Plan's investment options include target-date funds. *Id.* ¶ 55. Target-date funds "are designed to provide a single diversified investment vehicle for participants." *Id.* ¶ 39. The main feature of every target-date fund is its "glide path," which is shorthand for the planned progression of the fund's asset allocation (*e.g.*, stocks and bonds) to become more conservative as a target retirement date (*e.g.*, 2050) approaches. Target-date funds often use a "fund of funds" structure, where the manager invests in other underlying funds to achieve a desired glide path. *See id.* ¶ 47.

The Amended Complaint alleges that on or about May 16, 2016, Molina replaced its existing target-date fund option, the Vanguard Target Retirement target-date funds, with the flexPATH Funds. *Id.* ¶ 55. Unlike the Vanguard target-date funds, the flexPATH Funds offered multiple glidepaths for the same target retirement date, thereby allowing participants to customize both retirement date and risk level. *Id.* ¶¶ 43–44. For instance, for the 2035 target retirement date, flexPATH provided three separate funds: flexPATH Index Aggressive 2035 Fund, flexPATH Index Moderate 2035 Fund, and flexPATH Index Conservative 2035 Fund. *Id.* ¶ 44.

The flexPATH Funds used a "fund of funds" structure that allocates assets among various underlying funds. *Id.* ¶ 47. The Amended Complaint alleges that the flexPATH Funds invested in different combinations of target-date funds offered by BlackRock. *Id.* When they were added to the Plan in 2016, the flexPATH Funds had an expense ratio of 0.24%. *Id.* ¶ 84. By December 2018, the Plan transitioned to a cheaper share class and reduced this fee to 0.12%. *Id.* ¶¶ 84, 95. In October 2020, a little over four years after adding them to the Plan, Molina replaced the flexPATH Funds with Fidelity Freedom Index target-date funds. *Id.* ¶ 82.

The flexPATH Funds are collective investment trusts, and Wilmington Trust, N.A. serves as trustee for the Funds. *Id.* ¶ 40. flexPATH Strategies, LLC is the subadvisor for the Funds, and has authority over investing fund assets and developing investment strategies. *Id.* ¶ 41. On April 1, 2016, Molina and flexPATH

Strategies signed an Investment Manager Agreement that designated flexPATH Strategies as an "investment manager" within the meaning of ERISA section 3(38), 29 U.S.C. § 1002(38), for the Plan's qualified default investment alternative ("QDIA"). *See* Shuler Decl., Ex. 1. The agreement gave flexPATH Strategies "complete authority and discretion" to choose the Plan's QDIA, which could include the flexPATH Funds. *See id.* at 2; FAC ¶ 112.

### B.   NFP

From before the start of the putative class period in 2016 until 2020, Defendant NFP Retirement, Inc. served as the Plan's investment consultant. FAC ¶ 23. In this role, NFP advised the Investment Committee on the selection, monitoring, and replacement of investment options, as well as the development and evaluation of the Plan's investment policy statement ("IPS"). *Id.* NFP initially presented the flexPATH Funds to the Investment Committee for consideration as a Plan investment. *Id.* ¶ 51.

Plaintiffs allege that NFP has a conflicted relationship with flexPATH Strategies. *Id.* ¶¶ 52–54. In particular, Plaintiffs allege that NFP's parent company, CEO, and President own flexPATH Strategies and that NFP and flexPATH Strategies have the same officers and operate out of the same building. *Id.* Plaintiffs claim that NFP's "Investment Advisor Representatives," who provide investment advice to clients, "are commonly co-employed by flexPATH." *Id.* ¶ 53. According to Plaintiffs, NFP did not disclose its relationship with flexPATH Strategies. *Id.* ¶ 54.

### C.   Plaintiffs' Claims

Plaintiffs allege that the Molina Defendants breached their ERISA fiduciary duties in three ways: (1) selecting and retaining the flexPATH Funds for the Plan, (2) failing to obtain cheaper share classes for the flexPATH Funds and certain other investments; and (3) failing to monitor other fiduciaries. Plaintiffs further allege that, by allowing the Plan to invest in the flexPATH Funds, the Molina Defendants

engaged in a prohibited transaction under 29 U.S.C. § 1106.

*flexPATH Funds.*   In Count I, Plaintiffs assert that all Defendants were imprudent by selecting and retaining the flexPATH Funds in the Plan.  *Id.* ¶¶ 107–15.  To support this claim, Plaintiffs allege that the flexPATH Funds were created shortly before they were added to the Plan and used a unique multiple glide-path approach, making them "untested" and "novel." *Id.* ¶¶ 44, 45, 58.  Plaintiffs further allege that the flexPATH Funds charged unnecessary fees on top of the BlackRock target-date funds in which flexPATH invested.  *Id.* ¶ 50.  Finally, Plaintiffs allege that the flexPATH Funds underperformed both the Vanguard target-date funds that they replaced and the Fidelity target-date funds that later replaced them.  *Id.* ¶¶ 74–85.

*More expensive management fees*.   In Count II, Plaintiffs assert that all Defendants failed to obtain the cheapest versions of investments—often referred to as "share classes." *Id.* ¶¶ 86–97.  Plaintiffs bring this claim with respect to both the flexPATH Funds and twelve other investments offered in the Plan.  *Id.* ¶ 96.  Plaintiffs' sole support for the imprudence of the twelve other investments is a table that purports to show that, for some portion of the class period, cheaper share classes for those investments were allegedly available.  *Id.*  But apart from the flexPATH Funds, the Amended Complaint contains no factual allegations about how or why Defendants selected, monitored, or changed share classes for investments.

*Failure to monitor other fiduciaries*.   In Count III, Plaintiffs allege that Molina and the Molina Board breached their fiduciary duties by failing to monitor the performance of the Investment Committee.  *Id.* ¶¶ 122–27.  Yet despite bringing this claim, the Amended Complaint contains no factual allegations about how Molina or the Molina Board monitored the Investment Committee.

*Prohibited Transactions*.   In Count IV, Plaintiffs allege that all Defendants engaged in a prohibited transaction under 29 U.S.C. § 1106 by causing the investment of Plan assets in the flexPATH Funds.  With respect to the Molina

Defendants, Plaintiffs allege that NFP was a "party in interest" to the Plan, and that the Molina Defendants knew or should have known that use of the flexPATH Funds constituted either an exchange of property between the Plan and NFP, a furnishing of services between the Plan and NFP, or a transfer of Plan assets to NFP, all in violation of 29 U.S.C. § 1106(a).  FAC ¶¶ 128–33.

Plaintiffs allege a putative class period of March 18, 2016 to the date of judgment.  *Id.* ¶ 78.

## **MOTION TO DISMISS STANDARD**

To survive a motion to dismiss under Rule 12, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Nor does it suffice for Plaintiffs to "offer allegations that are merely consistent with their favored explanation but are also consistent with [an] alternative explanation" that would not result in liability.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotation marks and citation omitted).

ERISA's duty of prudence requires that plan fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . ."  29 U.S.C. § 1104(a)(1)(B).  This requirement "is one of <u>conduct</u>, and not a test of the result of performance of the investment."  *Barchock v. CVS Health Corp.*, 886 F.3d 43, 44–45 (1st Cir. 2018) (internal quotation marks and citation omitted).  The inquiry "will necessarily be context specific," *Dudenhoeffer*, 573 U.S. at 425, and follows the generally accepted principle that a fiduciary's actions are not to be judged "from the vantage point of hindsight."  *Klawonn v. Bd. of Directors for the*

*Motion Picture Indus. Pension Plans*, No. CV 2:20-cv-09194-DMG, 2021 WL 3508534, at *8 (C.D. Cal. Aug. 9, 2021) (citation omitted).

## ARGUMENT

Plaintiffs have not stated a viable claim against the Molina Defendants. First, Plaintiffs' claims regarding the flexPATH Funds are time-barred and misdirected at the Molina Defendants (instead of the investment manager that had "complete authority and discretion" to retain the Funds). Second, the factual allegations meant to support Plaintiffs' claim that the Molina Defendants did not monitor the fees charged by Plan investments demonstrate, if anything, the opposite. Third, in the absence of an underlying fiduciary breach, Plaintiffs' derivative monitoring claim fails as a matter of law. Fourth, and finally, Plaintiffs have not alleged a timely transaction with any party in interest that could support a prohibited transaction claim.

## I.     COUNT I (FLEXPATH FUNDS) FAILS TO STATE A FIDUCIARY PRUDENCE CLAIM.

To state a claim for breach of the duty of prudence, Plaintiffs must allege facts demonstrating the Molina Defendants failed to use "the appropriate methods to investigate and determine the merits of a particular investment." *White v. Chevron Corp.*, No. 4:16-cv-00793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) ("*White I*") (internal quotation marks and citation omitted). Allegations supporting a "mere possibility" of such failure are insufficient. *Wehner v. Genentech*, No. 3:20-cv-06894-WHO, 2021 WL 507599, at *4 (N.D. Cal. Feb. 9, 2021) (citation omitted). Rather, factual allegations must make it "more plausible than not that" a "breach of a fiduciary duty had occurred." *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018).

Count I does not make this step from a "possible" to a "plausible" breach of fiduciary duty. As an initial matter, any claim premised on the Molina Defendants' selection of the flexPATH Funds, which took place in 2015, is time barred. And any

1    claim based on the Molina Defendants' subsequent monitoring is precluded by the
2    Investment Manager Agreement, which vested authority over the Plan's QDIA with
3    flexPATH Strategies.  Finally, even putting these bars to relief aside, the Amended
4    Complaint lacks any plausible factual allegations that the Molina Defendants acted
5    imprudently with respect to the flexPATH Funds.

6    **A.      Any Claim Based on Selection of the flexPATH Funds Is Time**
7    **          Barred.**

8          To the extent Plaintiffs challenge the initial selection of the flexPATH Funds,
9    their claim is barred by ERISA's six-year statute of repose.  *See* 29 U.S.C. § 1113.
10   Plaintiffs filed this action on March 18, 2022, *see* Dkt. #1, meaning they may only
11   pursue claims based on conduct that occurred on or after March 18, 2016.  *See* 29
12   U.S.C. § 1113.  Although Plaintiffs allege that the flexPATH Funds were not added
13   to the Plan's investment menu until May 16, 2016, *see* FAC ¶ 55, they acknowledge
14   that the decision to add the Funds occurred earlier.  In particular, Plaintiffs allege
15   that (1) flexPATH Strategies "completed the launch of the flexPATH Index target
16   dates funds in January 2016" and (2) "[w]hen Molina decided to add the flexPATH
17   Index target dates funds to the Plan . . . they did not yet exist."  FAC ¶¶ 56, 58.

18         The clear (and accurate) inference is that the decision to add the flexPATH
19   Funds was made *before* January 2016—and hence outside ERISA's repose period.
20   The result is that Count I is limited, at most, to claims that it was imprudent to retain
21   the flexPATH Funds—which, as explained below, will not lie against the Molina
22   Defendants for a different reason.

23   **B.      Any Claim Based on Retention of the flexPATH Funds Is**
24   **          Precluded by Molina's Agreement with flexPATH Strategies.**

25         While ERISA's statute of repose precludes any claim for *selecting* the
26   flexPATH Funds, Molina's agreement with flexPATH Strategies separately
27   precludes any claim against the Molina Defendants for *retaining* the flexPATH
28   Funds.  This is because it was flexPATH Strategies—not the Molina Defendants—

who had discretionary authority to retain or remove the flexPATH Funds as the Plan's QDIA.

The Investment Manager Agreement between flexPATH Strategies and Molina makes clear that flexPATH Strategies—not Molina—had "complete authority and discretion" to choose and retain the flexPATH Funds as the Plan's qualified default investment alternative. *See* Shuler Decl., Ex. 2 at 2–3.[1] And the Agreement makes clear that flexPATH Strategies was acting as an "investment manager" within the meaning of ERISA section 3(38), 29 U.S.C. § 1002(38).

Under the plain language of ERISA, the Molina Defendants cannot be liable for discretion exercised by flexPATH Strategies. ERISA permits plan fiduciaries to delegate responsibility for making investment decisions to an investment manager. *See* 29 U.S.C. § 1102(c)(3). And if a plan fiduciary makes such a delegation, they are not liable for the decisions of the investment manager. *See id.* § 1105(d)(1). For this reason, Judge Selna held that a substantively identical arrangement between flexPATH Strategies and another plan fiduciary "precludes claims against [the fiduciary] related to flexPATH's investment in the [flexPATH] target date funds." *Lauderdale v. NFP Ret., Inc.*, No. 8:21-cv-00301-JVS-KES, 2022 WL 422831, at *14 (C.D. Cal. Feb. 8, 2022). Rather, the only claims available to the plaintiffs in that case were those based on breaches that took place *before* flexPATH Strategies became the plan's investment manager. *Id.* at *15.

But such claims are not available here. As explained above, any claim based on selection of the flexPATH Funds is time barred, because Plaintiffs' allegations make clear that took place in 2015, outside ERISA's repose period. This leaves

---

[1] Because the Investment Manager Agreement constitutes the contractual basis for inclusion of the flexPATH Funds in the Plan, it forms the basis of Count I and may be considered on a motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

Plaintiffs with a claim that the Molina Defendants failed to monitor the flexPATH Funds after they were added to the Plan.  But Plaintiffs allege that the flexPATH Funds were only added in May 2016, which was *after* Molina had appointed flexPATH Strategies as investment manager.  *See* FAC ¶ 42; Shuler Decl., Ex. 2 at 7.  In other words, flexPATH Strategies had already assumed discretionary authority to retain or replace the flexPATH Funds before the Funds were made available to participants as an investment option.  A straightforward application of 29 U.S.C. § 1105(d) and the court's reasoning in *Lauderdale* thus precludes liability against the Molina Defendants under Count I (as well as Count II, to the extent it concerns the flexPATH Funds, *see infra*) as a matter of law.

## C.   Plaintiffs' Remaining Allegations Do Not Support a Claim of Imprudence.

In any event, none of Plaintiffs' factual allegations support a plausible claim that the Molina Defendants engaged in an imprudent process with respect to the flexPATH Funds.  Rather, Plaintiffs continue to rely on criticisms of the flexPATH Funds themselves: that they were too new, too expensive, and performed poorly. But as the Sixth Circuit recently noted, ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans."  *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1162 (6th Cir. 2022).  Plaintiffs' criticisms, which are both hindsight-driven and internally inconsistent, amount to nothing more than impermissible second-guessing.

### 1.   Criticisms that the flexPATH Funds Were "Novel" Does Not Support an Imprudent Process.

Plaintiffs' principal criticism of the flexPATH Funds remains that the Funds were "novel" and "untested" at the time of their selection.  FAC ¶ 43.  However, courts have rejected the notion that new funds or funds without a certain length of performance history are *per se* imprudent for ERISA plans.  *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 705 (W.D. Mo. 2019) (noting plaintiffs

1   "cite no authority holding that the implementation of a fund without a long
2   performance history is per se imprudent"); *Patterson v. Morgan Stanley*, No. 1:16-
3   cv-06568-RJS, 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019) ("That the 2025
4   Trust was untested is also insufficient to establish imprudence in the selection and
5   retention of the fund.").  A contrary rule would stifle innovation in the retirement
6   plan industry.

7       Moreover, even if ERISA demanded some established performance history
8   before a fund could be added to the Plan, the Amended Complaint alleges that
9   flexPATH Funds invested in underlying BlackRock target-date funds, which were
10  neither novel nor untested.  *See* FAC ¶ 48.  Plaintiffs' allegation that the flexPATH
11  Funds "did not yet exist" when the Investment Committee selected them, *id.* ¶ 58, is
12  disingenuous.  *See Wildman*, 362 F. Supp. 3d at 705–06 (noting that, although fund
13  was new, performance information "would have been available to the Committee"
14  because two underlying funds "had been in the lineup for some time").

15      2.    Comparison of the flexPATH Funds to Target-Date Funds with
16            Different Strategies Does Not Support an Imprudent Process.

17      Despite alleging that the flexPATH Funds were imprudent because they were
18  "novel," Plaintiffs also allege that the Funds were imprudent because they had higher
19  fees or worse performance than target-date funds offered by BlackRock, Vanguard,
20  and Fidelity.  FAC ¶¶ 50, 74–85.  These comparisons run headlong into the bedrock
21  principle that fiduciaries may make a "range of reasonable judgments" when
22  administering a retirement plan.  *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).

23      First, Plaintiffs' bare allegation that BlackRock, Vanguard, and Fidelity
24  offered target-date funds with lower fees, *see* FAC ¶¶ 50, 79, 84, does not state a
25  claim.  To the contrary, "courts have routinely held that a fiduciary's failure to offer
26  the cheapest investment option is not enough by itself to state a claim for a breach
27  of fiduciary duty." *Patterson v. Cap. Grp. Cos.*, No. 2:17-cv-04399-DSF-PJW, 2018
28  WL 748104, at *4 (C.D. Cal. Jan. 23, 2018).  Rather, "[t]he law is clear that

fiduciaries can value investment features other than price, and indeed are required to do so." *Dorman v. Charles Schwab Corp.*, No. 4:17-cv-00285-CW, 2018 WL 6803738, at *3 (N.D. Cal. Sept. 20, 2018) (internal quotation marks and citation omitted).

Here, Plaintiffs admit that the flexPATH Funds offered investment features that separated them from other target-date funds—namely, multiple glidepaths based on investor risk tolerance—hence making them "new" and "novel."  FAC ¶¶ 56–57.  It was within the Plan fiduciary's reasonable discretion to determine that these additional features warranted marginal additional cost.  *See, e.g.*, *White I*, 2016 WL 4502808, at *14 (complaint must allege "facts from which one could infer that the *same services* were available for less on the market") (emphasis added).

Moreover, the flexPATH Funds' fees—0.24% at their highest—were low by any objective measure, including compared to fees approved by other courts.  *See, e.g.*, *Id.* at *11 (fees between .05% and 1.24% "well within the spectrum that other courts have held to be reasonable as a matter of law"); *Loomis v. Exelon Corp.*, 658 F.3d 667, 669–72 (7th Cir. 2011) ("expense ratios rang[ed] from 0.03% to 0.96%"); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319 (3d Cir. 2011) (expense ratios "ranged from 0.1% to 1.21%").  And the Amended Complaint alleges that the Plan switched to an ever lower share class of the flexPATH Funds in 2018—thus indicating fiduciary attention to cost.  FAC ¶ 95.

Second, Plaintiffs' hindsight comparisons of the flexPATH Funds' performance to Vanguard or Fidelity also fail to create an inference of imprudence.  Like higher fees, "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to conduct an adequate investigation."  *White I*, 2016 WL 4502808, at *17; *see also White v. Chevron Corp.*, No. 4:16-cv-0793-PJH, 2017 WL 2352137, at *21 (N.D. Cal. May 31, 2017) ("*White II*") (rejecting prudence claim based solely on allegations "that the Fund did not perform well").  Plaintiffs instead must plead "some other objective indicia of

imprudence." *White I*, 2016 WL 4502808, at *17.  This means providing a "meaningful benchmark" for measuring performance, which requires more than "simply labeling funds as 'comparable' or 'a peer' . . . ." *Anderson v. Intel Corp.*, No. 3:19-cv-04618-LHK, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021).

Beyond the fact that they were offered in the Plan at different points in time,[2] the Amended Complaint contains no concrete allegations establishing that Vanguard or Fidelity were meaningful benchmarks for evaluating the performance of flexPATH Funds.  Rather, as the Amended Complaint acknowledges, the flexPATH Funds had multiple glide-path strategy and offered risk-based customization that the Vanguard and Fidelity target-date funds simply did not.  *See Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306 (D. Minn. 2021) (TDFs with "various glide path strategies" are not apt comparators).

In short, a prudent fiduciary could reasonably conclude that the additional customization offered by the flexPATH Funds outweighed a risk that they might underperform target-date funds with a different strategy.  *See Klawonn*, 2021 WL 3508534, at *8 ("[A] fiduciary may reasonably select an investment alternative in view of its different risks and features, even if that investment option turns out to yield less than some other option.") (citation omitted).  Plaintiffs' bare allegations of underperformance, without more, only establish the possibility of imprudence; they do not state a plausible claim of imprudence under *Iqbal* and *Twombly*.  *See CommonSpirit*, 37 F.4th at 1167 ("A side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option.").

---

[2] Just because one fund replaced another does not make the two funds meaningful benchmarks. Plan fiduciaries are entitled to change investment strategies, and the merits of the fund selected to implement a different strategy cannot be compared to the merits of the fund previously selected under different circumstances.

3.  <u>Plaintiffs' Remaining Allegations Do Not Support an</u>
<u>Imprudent Process</u>.

Finally, despite having Molina's meeting minutes and materials, Plaintiffs have added scant allegations about the actual process used for evaluating the flexPATH Funds.  Though Plaintiffs focus on the alleged selection criteria contained in the Plan's IPS, *see* FAC ¶¶ 62–64, this does not change that any claim based on the selection of the flexPATH Funds is time barred because it occurred outside ERISA's repose period.  In any event, contrary to Plaintiffs' claims, the IPS does not require a minimum performance history for new funds.  *See* Shuler Decl., Ex. 2 (2012 IPS) at 1, 3.[3]  Even more, Plaintiffs cite no Ninth Circuit authority holding that failure to follow a voluntary IPS is a breach of fiduciary duty, and other courts have declined to reach that conclusion.  *See Tussey v. ABB, Inc.*, 746 F.3d 327, 334 n.5 (8th Cir. 2014).

Plaintiffs' other process allegations must be considered in light of the Molina Defendants' delegation of responsibility for the Plan's QDIA to flexPATH Strategies.  And the Amended Complaint contains no allegations that, after the delegation to flexPATH Strategies, the Molina Defendants failed to meet their limited duties of fiduciary oversight of the Funds.

## II.   COUNT II (EXCESSIVE MANAGEMENT FEES) FAILS TO STATE A FIDUCIARY PRUDENCE CLAIM.

The Amended Complaint's allegations that the flexPATH Funds and other Plan investments had higher management fees than supposedly "identical" investments likewise fail to state a claim under ERISA.  Courts have rejected that "the mere inclusion of a fund with an expense ratio that is higher than that of the lowest share class [of the fund] violates the duty of prudence."  *White I*, 2016 WL

---

[3] Because the Amended Complaint refers to and incorporates the 2012 IPS, this Court may consider its contents at the motion to dismiss stage.  *See, e.g.*, *Orellana v. Mayorkas*, 6 F.4th 1034, 1042–43 (9th Cir. 2021).

4502808, at *11.  But that is all Plaintiffs offer.  Once again, the Amended Complaint lacks any concrete allegations about the Plan fiduciaries' process for monitoring share classes.

Indeed, the Amended Complaint's allegations undercut Plaintiffs' claim of imprudence.  The table in Paragraph 96—Plaintiffs' sole support for the alleged imprudence of the Plan's investments—only suggests that other, less expensive share classes were available during brief windows of time.  That does not create a plausible inference of imprudent conduct.  If anything, these limited time periods suggest that Plan fiduciaries moved to cheaper share classes soon after they became available, indicating that they were in fact monitoring investments and seeking lower fees.  *See White I*, 2016 WL 4502808, at *11 (allegations showing that fiduciaries "changed the investment options from year to year" supports "the inference that the fiduciaries were monitoring the investment options").

This is apparent for the flexPATH Funds.  The Amended Complaint notes that the Plan switched to lower-cost "M shares" of the flexPATH Funds by December 31, 2018 when those shares "were available to the Plan since February 23, 2018." FAC ¶ 95.  In other words, Plaintiffs fault the Plan fiduciaries for switching to a new share class less than one year after it became available.  That is demanding perfection, not prudence.

The Amended Complaint alleges, at most, that *some* of the Plan's investments may have not offered the cheapest share class during brief windows.  That is not enough to state a plausible claim of fiduciary breach.  S*ee Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1199 (D. Colo. 2021) (granting motion to dismiss even though 15 of the 27 options in the lineup allegedly "could have been replaced by identical lower-cost options").[4]

---

[4] Moreover, for the reasons discussed above in Section I.B, any fiduciary liability claim regarding the flexPATH Funds fails to state a claim against the Molina Defendants after Molina appointed flexPATH Strategies as an investment manager on April 1, 2016.

### III.   COUNT III (FAILURE TO MONITOR) FAILS AS A MATTER OF LAW.

Count III alleges that Molina and its Board of Directors breached their duty to monitor the Investment Committee. FAC ¶¶ 122–27. However, a duty-to-monitor claim is derivative of the other fiduciary claims. *See Anderson*, 2021 WL 229235, at *14. Where, as here, Plaintiffs have failed to state an underlying ERISA violation, the derivative failure-to-monitor claim fails as a matter of law. *Id.*; *White II*, 2017 WL 2352137, at *22.

Moreover, "[u]nder ERISA, fiduciaries have a limited duty to monitor and review the performance of their appointed fiduciaries." *In re Computer Scis. Corp. Erisa Litig.*, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009) (quoting *In re Syncor ERISA Litig.*, 410 F. Supp. 2d 904, 912 (C.D. Cal. 2006)). This limited duty requires only to review performance of appointees at "reasonable intervals." *Id.* The Amended Complaint contains no factual allegations that Molina or its Board failed to undertake such a review. Indeed, other than conclusory assertions in Count III itself, *see* FAC ¶ 126, the Amended Complaint contains no such allegations at all.

### IV.   COUNT IV (PROHIBITED TRANSACTIONS) FAILS TO STATE A CLAIM.

Count IV, which alleges that the Molina Defendants caused the Plan to engage in a prohibited transaction in violation of 29 U.S.C. § 1106, also fails for multiple reasons. First, like Plaintiffs' selection claim, it is time barred. Second, although Plaintiffs identify NFP as the relevant "party in interest," the Amended Complaint fails to identify any actual transaction between the Plan and NFP.

#### A.   ERISA's Six-Year Statute of Repose Bars Count IV.

For the same reasons that claims based on the selection of the flexPATH Funds are time barred, so is Plaintiffs' prohibited transaction claim. Plaintiffs allege that the Molina Defendants are liable under 29 U.S.C. § 1106 because they and NFP "caused the Plan to use the flexPATH Funds." FAC ¶ 131. But as noted above, the

Investment Committee decided to add the flexPATH Funds to the Plan more than six years before this lawsuit was filed.  As other courts in this Circuit have noted, ERISA's statute of repose bars such a prohibited transaction claim.  *See White II*, 2017 WL 2352137, at *22 (dismissing as untimely a prohibited transaction claim based on selection of plan recordkeeper more than six years prior to filing of lawsuit).

It is insufficient for Plaintiffs to allege that the flexPATH Funds remained in the Plan until 2020.  Indeed, the Ninth Circuit has made clear that "there is no such thing as a 'continuing' prohibited transaction—as the plain meaning of 'transaction' is that it is a point-in-time event."  *Id.* (citing *Wright v. Ore. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004)).  In other words, in the Ninth Circuit, continuing to hold an investment is not a "transaction" within the meaning of 29 U.S.C. § 1106.  *See Wright*, 360 F.3d at 1101; *accord David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013).

## B.    Count IV Fails to Allege a Prohibited Transaction.

Count IV fails to allege a transaction prohibited by ERISA in any event. Section 1106 bars fiduciaries from causing a plan to engage in certain transactions with a "party in interest," defined to include "a person providing services to [a] plan."  29 U.S.C. § 1106(a)(1).  Here, Plaintiffs allege that the relevant "party in interest" is NFP, and that the Molina Defendants caused the Plan to engage transactions with NFP by selecting the flexPATH Funds.  *See* FAC ¶ 131.

The problem with this claim is that the flexPATH Funds were managed by Wilmington Trust and flexPATH Strategies, not NFP.  *See* FAC ¶¶ 40–41. Plaintiffs' theory thus rests on an assumption that any transfer of property or services to flexPATH Strategies was actually a transfer to NFP, which requires the Court to disregard the corporate distinction between those companies.  Judge Selna recently declined to do this in another ERISA case involving flexPATH Strategies and NFP. *See Lauderdale v. NFP Ret., Inc.*, No. 8:21-cv-00301-JVS-KES, 2021 WL 3828646,

at *9 (C.D. Cal. Aug. 18, 2021).  In *Lauderdale*, the court noted that, while the plaintiffs had alleged "close connections between NFP and flexPATH," they had not alleged "that the two companies were ignoring corporate formalities," such as sharing profits or failing to maintain separate books, or freely transferring assets between them.  *See id.*

The same is true here: although Plaintiffs allege that NFP and flexPATH Strategies had overlapping ownership and employees, they do not assert that the two companies can be treated as one entity.  *See* FAC ¶¶ 52–54.  Thus, the Amended Complaint lacks any plausible allegation that, by causing the Plan to use the flexPATH Funds, the Molina Defendants exchanged property with, furnished services for, or transferred Plan assets to NFP.  This is fatal to Plaintiffs' claim.

## <u>CONCLUSION</u>

For the reasons provided herein, the Court should dismiss the Amended Complaint with prejudice for failure to state a claim.

Dated: August 23, 2022          Respectfully submitted,

/s/ *Jeanne A. Fugate*
Jeanne A. Fugate

*Attorneys for Molina Healthcare, Inc., The Board of Directors of Molina Healthcare, Inc., and The Molina Salary Savings Plan Investment Committee*