CATALINA VERGARA (S.B. #223775)
cvergara@omm.com
MEAGHAN VERGOW (*pro hac vice*)
mvergow@omm.com
PATRICK PLASSIO (*pro hac vice*)
pplassio@omm.com
KEVIN KRAFT (S.B. #318170)
kkraft@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071-2899
Telephone:  +1 213 430 6000
Facsimile:   +1 213 430 6407

Attorneys for Defendants
NFP Retirement, Inc., and flexPATH
Strategies, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MICHELLE MILLS, COY SARELL, CHAD WESTOVER, BRENT ALESHIRE, BARBARA KERSHNER, PAULA SCHAUB, and JENNIFER SILVA, individually and as representatives of a class of participants and beneficiaries on behalf of the Molina Salary Savings Plan,<br><br>              Plaintiffs,<br><br>    v.<br><br>MOLINA HEALTHCARE, INC., THE BOARD OF DIRECTORS OF MOLINA HEALTHCARE, INC., THE MOLINA SALARY SAVINGS PLAN INVESTMENT COMMITTEE, NFP RETIREMENT, INC., and FLEXPATH STRATEGIES, LLC,<br><br>              Defendant. | Case No. 2:22-cv-01813-SB-GJS<br><br>**DEFENDANTS NFP RETIREMENT, INC. AND FLEXPATH STRATEGIES, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  December 2, 2022<br>Hearing Time:  8:30 am<br>Judge:  Hon. Stanley Blumenfeld Jr.<br>Courtroom:  6C<br>SAC Filed:  Sept. 14, 2022 |

1    **<u>NOTICE OF MOTION AND MOTION</u>**

2    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3    **PLEASE TAKE NOTICE** that on December 2, 2022 at 8:30 am, or as soon

4    thereafter as this matter may be heard before the Honorable Stanley Blumenfeld, Jr.,

5    in Courtroom 6C of the above-entitled Court, located at 350 West First Street, Los

6    Angeles, California 90012, defendants NFP Retirement, Inc. ("NFP") and flexPATH

7    Strategies, LLC ("flexPATH") will and hereby do move the Court to dismiss with

8    prejudice the claims against them alleged in the Second Amended Complaint

9    ("SAC"), ECF No. 79, filed by plaintiffs Michelle Mills, Coy Sarell, Chad Westover,

10   Brent Aleshire, Barbara Kershner, Paula Schaub, and Jennifer Silva (collectively,

11   "plaintiffs").

12       Plaintiffs bring three putative class claims under the Employee Retirement

13   Income Security Act of 1974 ("ERISA") against NFP and two ERISA claims against

14   flexPATH, all targeting the investments offered to participants in the Molina Salary

15   Savings Plan (the "Plan"), a 401(k) plan sponsored by Molina Healthcare, Inc.

16   ("Molina") for the benefit of its employees.  First, plaintiffs allege in Count I that

17   NFP and flexPATH breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by

18   offering flexPATH Index Target Date Funds ("flexPATH TDFs") to Plan

19   participants. SAC ¶¶ 128–36. Second, plaintiffs claim in Count II that NFP breached

20   its fiduciary duties under 29 U.S.C. § 1104(a)(1) in connection with Molina's

21   decision to offer higher-cost shares of numerous Plan investment options when

22   lower-cost options were allegedly available.  SAC ¶¶ 137–42.  Third, plaintiffs allege

23   in Count IV that, through the Plan's investment in the flexPATH TDFs, NFP and

24   flexPATH caused prohibited transactions involving Plan assets under 29 U.S.C.

25   § 1106(a)–(b). SAC ¶¶ 154–59.

26       As explained in greater detail in the accompanying Memorandum of Points

27   and Authorities, plaintiffs fail to state a viable claim that NFP and flexPATH

28

NFP AND FLEXPATH'S MOTION TO
DISMISS PLAINTIFFS' SAC
2:22-CV-01813-SB-GJS

breached any fiduciary duties or caused any prohibited transactions.   NFP and flexPATH thus respectfully request that the Court dismiss with prejudice all claims alleged by plaintiffs in the SAC against NFP and flexPATH.

The motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Declaration of Catalina Vergara; the pleadings in this action; and such other materials and evidence as may be presented to the Court.   The parties' L.R. 7-3 conference took place by videoconference on October 5, 2022.

Dated:  October 12, 2022                    By:     */s/ Catalina Vergara*
                                                                          Catalina Vergara

                                                            CATALINA VERGARA
                                                            O'MELVENY & MYERS LLP

                                                            Attorneys for Defendant NFP
                                                            Retirement, Inc., and flexPATH
                                                            Strategies, LLC

NFP AND FLEXPATH'S MOTION TO
DISMISS PLAINTIFFS' SAC
2:22-CV-01813-SB-GJS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEET AND CONFER CERTIFICATION**

Pursuant to L.R. 7-3 and the Court's Standing Order 6(a)(ii), I, Catalina Vergara, certify that the parties met by videoconference on October 5, 2022, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated:  October 12, 2022

By:   */s/ Catalina Vergara*
Catalina Vergara

CATALINA VERGARA
O'MELVENY & MYERS LLP

Attorneys for Defendant NFP
Retirement, Inc., and flexPATH
Strategies, LLC

1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.     INTRODUCTION ............................................................................1

II.    BACKGROUND .............................................................................2

    A.    The Molina Plan...................................................................2

    B.    NFP's Role as the Plan's § 3(21) Investment Advisor. .......................3

    C.    The Molina Fiduciaries' Retention of flexPATH as a § 3(38) Investment Manager to the Plan. .........................................4

    D.    The Plan's Investment in the flexPATH TDFs................................5

    E.    Plaintiffs' Allegations in the SAC. ........................................6

III.    LEGAL STANDARD ...................................................................6

IV.    ARGUMENT ...........................................................................7

    A.    Plaintiffs' Claims Against NFP Must Be Dismissed. ...........................7

        1.    Plaintiffs Fail to State a Breach of Fiduciary Duty Claim Against NFP Regarding Its Investment Advice to the Plan. ......................................................................7

            a.    NFP's Fiduciary Duties to the Plan Are Limited to Its Investment Advice About Investment Options Other Than the FlexPATH TDFs. ...............................8

            b.    Plaintiffs Do Not Plausibly Allege that NFP Breached Fiduciary Duties Through Its Investment Advice to the Plan. ................................9

            c.    The Plan's Choice of Investments Permits No Inference of Imprudence in NFP's Advice. ..................10

            d.    Plaintiffs Fail to State a Claim that NFP Breached a Fiduciary Duty to Act in Accordance with the IPS. ......11

        2.    Plaintiffs Do Not Plausibly Allege that NFP Acted Disloyally Regarding the flexPATH TDFs. ............................12

        3.    ERISA's Statute of Repose Bars Plaintiffs' Fiduciary Breach Claims Against NFP for the Selection of the flexPATH TDFs..............................................................13

**TABLE OF CONTENTS**
(continued)

|  |  |  |  | **Page** |
|---|---|---|---|---|
| | | 4. | Plaintiffs Cannot State a Claim for Co-Fiduciary Liability Against NFP. | 14 |
| | | 5. | Plaintiffs' Prohibited Transaction Claim Against NFP Fails as a Matter of Law. | 14 |
| | B. | | Plaintiffs' Claims Against flexPATH Must Be Dismissed | 16 |
| | | 1. | Plaintiffs Do Not Plausibly Allege that the Selection and Retention of the flexPATH TDFs Was Imprudent. | 16 |
| | | | a. Plaintiffs' Inapt Comparisons Between the flexPATH TDFs and TDFs with Different Strategies Cannot Sustain an Inference of Imprudence. | 16 |
| | | | b. Plaintiffs' Criticisms of the flexPATH TDFs' Track Records and Investment Styles Likewise Do Not Support an Inference of Imprudence. | 19 |
| | | | c. Plaintiffs' Claims of Imprudence Based On Excessive Fees Also Are Insufficient. | 22 |
| | | | d. Plaintiffs Fail to State a Claim that flexPATH Breached a Fiduciary Duty to Act in Accordance with the IPS. | 23 |
| | | 2. | Plaintiffs Do Not Plausibly Allege that flexPATH Acted Disloyally in Selecting or Retaining the flexPATH TDFs. | 23 |
| | | 3. | Plaintiffs' Fiduciary Breach Claims Against flexPATH Regarding the Selection of the flexPATH TDFs Are Barred By ERISA's Statute of Repose. | 24 |
| | | 4. | Plaintiffs' Prohibited Transaction Claim Against flexPATH Fails as a Matter of Law. | 25 |
| V. | | CONCLUSION | | 25 |

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
5
    No. 19-CV-04618-LHK, 2022 WL 74002 (N.D. Cal. Jan. 8, 2022)
    *appeal filed*, No. 22-16268 (9th Cir. Aug. 22, 2022)..........................................18
6

7
*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*,
    475 F. Supp. 3d 910 (E.D. Wis. 2020) ..................................................................16
8

9
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................7, 24
10

11
*Baird v. BlackRock Institutional Tr. Co., N.A.*,
    403 F. Supp. 3d 765 (N.D. Cal. 2019)..................................................................11
12

13
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................7
14

15
*Brandt v. Grounds*,
    687 F.2d 895 (7th Cir. 1982).................................................................................9
16

17
*Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*,
    259 F.3d 1036 (9th Cir. 2001).............................................................................12
18

19
*Chao v. Merino*,
    452 F.3d 174 (2d Cir. 2006)................................................................................10
20
*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013)...............................................................................15
21

22
*Depot, Inc. v. Caring for Montanans, Inc.*,
    915 F.3d 643 (9th Cir. 2019)..................................................................................8
23

24
*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982)................................................................................24
25

26
*Dorman v. Charles Schwab Corp.*,
    No. 17-cv-00285-CW, 2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ...................19

27

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

5

*Dorman v. Charles Schwab Corp.*,
  No. 17-CV-00285-CW, 2018 WL 6803738 (N.D. Cal. Sept. 20,
  2018) ................................................................................................................ 23

6

7

*Dupree v. Prudential Ins. Co. of Am.*,
  No. 99-8337-Civ.-JORDAN, 2007 WL 2263892 (S.D. Fla. Aug.
  10, 2007) .......................................................................................................... 24

8

9

*Ellis v. Fidelity Mgmt. Tr. Co.*,
  883 F.3d 1 (1st Cir. 2018) .............................................................................. 17

10

11

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) .......................................................................................... 7

12

13

*Guenther v. Lockheed Martin Corp.*,
  972 F.3d 1043 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2596 (2021) ............ 13

14

15

*Harris v. Amgen, Inc.*,
  788 F.3d 916 (9th Cir. 2015), *rev'd on other grounds*, 577 U.S. 308
  (2016) ............................................................................................................... 25

16

17

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ............................................................................ 8

18

19

*Hughes v. Nw. Univ*,
  142 S. Ct. 737 (2022) ...................................................................................... 10

20

21

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .......................................................................... 7

22

23

*In re Northrop Grumman Corp. Erisa Litig.*,
  No. CV0606213MMMJCX, 2015 WL 10433713 (JCx) (C.D. Cal.
  Nov. 24, 2015) ........................................................................................... 13, 24

24

25

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
  140 S. Ct. 768 (2020) ...................................................................................... 13

26

27

28

*Lauderdale v. NFP Ret., Inc.*,
  No. SACV21301JVS(KESx), 2022 WL 422831 (C.D. Cal. Feb. 8,
  2022) ............................................................................................................. 9, 14

iv

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996) ...................................................................15

5

6

*Loomis v. Exelon Corp.*,
  658 F.3d 667 (7th Cir. 2011)........................................................20

7

8

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018)........................................................16

9

10

*Meiners v. Wells Fargo & Co.*,
  Civil No. CV 16 3981 (DSD/FLN), 2017 WL 2303968 (D. Minn.
  May 25, 2017) *aff'd*, 898 F.3d 820 (8th Cir. 2018)......................23, 24

11

12

*Miller v. Astellas US LLC*,
  No. No. 30 C 3882, 2021 WL 1387948 (N.D. Ill. Apr. 13, 2021).....................16

13

14

*Moitoso v. FMR LLC*,
  451 F. Supp. 3d 189 (D. Mass. 2020).....................................................23

15

16

*Parmer v. Land O'Lakes, Inc.*,
  518 F. Supp. 3d 1293 (D. Minn. 2021) ...............................................18

17

18

*Patterson v. Cap. Grp. Cos.*,
  No. CV 17-4399 DSF (PJWx), 2018 WL 748104 (C.D. Cal. Jan.
  23, 2018)...........................................................................11, 22

19

20

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) ...................................................................8

21

22

*Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*,
  944 F.2d 509 (9th Cir. 1991).........................................................15

23

24

*Pizarro v. Home Depot, Inc.*,
  No. 1:18-CV-01566-SDG, 2022 WL 4687096 (N.D. Ga. Sept. 30,
  2022)..............................................................................22

25

26

27

*Reetz v. Lowe's Cos., Inc.*,
  No. 5:18-CV-00075-KDB-DCK, 2021 WL 4771535 (W.D.N.C.
  Oct. 12, 2021), *appeal filed*, No. 21-2267 (4th Cir. Nov. 10, 2021)...................17

28

1
2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3
4

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ........................................................................... passim

5
6

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*,
    275 F.3d 1187 (9th Cir. 2001) .............................................................................. 7

7
8

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) ............................................................................................... 9

9
10
11

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds by Tibble
    v. Edison Int'l*, 575 U.S. 523 ......................................................................... 9, 16

12
13

*Turner v. Schneider Elec. Holdings, Inc.*,
    530 F. Supp. 3d 127 (D. Mass. 2021)................................................................. 23

14
15

*White v. Chevron Corp.*,
    No. 16-cv-0793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017),
    *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ..................................................... 15, 19

16
17

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018)....................................................................... 16

18
19
20

*White v. Chevron Corp.*,
    No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29,
    2016).................................................................................................................. 11

21

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019)................................................................ 21

22
23

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ........................................................................... 15

24

**Statutes**

25

29 U.S.C. § 1002(21)(A) .......................................................................................... 8

26
27

29 U.S.C. § 1002(21)(A)(ii) ................................................................................. 1, 3

28

29 U.S.C. § 1002(38).............................................................................................. 1

MEM. OF POINTS & AUTH. ISO NFP'S
MOT. TO DISMISS PLAINTIFFS' FAC
8:22-CV-01813-ODW

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

3    29 U.S.C. § 1102(a)(1) ................................................................................. 3

4    29 U.S.C. § 1104 .......................................................................................... 6

5
     29 U.S.C. § 1104(a)(1)(A)–(B) .................................................................... 6
6

7    29 U.S.C. § 1105(a) .................................................................................... 14

8    29 U.S.C. § 1106(a)–(b) ............................................................................... 7

9    29 U.S.C. § 1108(b)(8) ...............................................................................25

10   29 U.S.C. § 1113(1) ..............................................................................13, 15

11   29 U.S.C. § 1113(1)(A) ..............................................................................13

12
     29 U.S.C. § 1113(2) ....................................................................................15
13

14   **Regulations**

15   12 C.F.R. § 9.18(a)(2) .................................................................................. 5

16   29 C.F.R. § 2509.75-8 .................................................................................. 8

17   29 C.F.R. § 2510.3-21(c)(1)(i) ...................................................................10

18   29 C.F.R. § 2550.404a-1(b)(2)(i) ...............................................................20

19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs bring ERISA claims challenging investment options made available to participants in the 401(k) Plan sponsored by Molina for its employees.  Plaintiffs name as defendants not only Molina and related Molina entities, but also NFP, which served as the Plan's § 3(21) investment advisor until mid-2020, and flexPATH, which served as a § 3(38) investment manager to the Plan until October 2020.  As the § 3(21) investment advisor, NFP's role was limited to providing advice to the Molina fiduciaries; it did not have ultimate decision-making authority over which options to select for the Plan.  *See* 29 U.S.C. § 1002(21)(A)(ii).  flexPATH, on the other hand, was retained by Molina on April 1, 2016 to choose the qualified default investment alternative ("QDIA") for the Plan.  It selected the flexPATH Index Target Date Funds ("flexPATH TDFs") and had fiduciary responsibility with respect to that choice.  *See* 29 U.S.C. § 1002(38).

Plaintiffs' claims against NFP fail for four reasons.

- First, as the § 3(21) investment advisor, NFP's fiduciary obligation to the Plan was limited to providing advice on investment options other than the flexPATH TDFs.  It did not act as a § 3(21) advisor regarding the Plan's engagement of flexPATH as a § 3(38) investment manager of the Plan's QDIA.  Plaintiffs thus do not plausibly allege that NFP breached any duties in connection with the Plan's investment in the flexPATH TDFs.

- Second, plaintiffs do not identify any deficiency in NFP's process for generating and providing investment advice on the Plan's other, non-QDIA investments.  Nor is it plausible to infer from the Plan fiduciaries' ultimate choices that NFP provided imprudent advice.

- Third, the Plan's retention of flexPATH as § 3(38) investment manager and its investment in the flexPATH TDFs occurred more than six years before

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

May 13, 2022, the date on which the claims against NFP were deemed filed. For that reason, even if plaintiffs could state a viable fiduciary breach claim against NFP related to those decisions (and they cannot), ERISA's statute of repose would bar the claim.

- Fourth, plaintiffs' prohibited transaction claims fail because NFP did not cause the challenged transactions and the claims are time-barred.

Plaintiffs' claims against flexPATH must also be dismissed for four reasons.

- First, plaintiffs do not allege any defect in flexPATH's process for selecting the flexPATH TDFs. The Second Amended Complaint ("SAC") is instead premised on faulty, hindsight performance comparisons that cannot sustain an inference of imprudence.

- Second, plaintiffs' disloyalty allegations do not identify any actual disloyal conduct by flexPATH. In particular, plaintiffs do not (and cannot) allege that flexPATH's compensation influenced the selection of the flexPATH TDFs—as the engagement agreement confirms that flexPath's compensation was the same regardless of the chosen investments.

- Third, plaintiffs' fiduciary breach challenges to flexPATH's selection of the flexPATH TDFs are barred by ERISA's statute of repose.

- Finally, plaintiffs' prohibited transaction claims against flexPATH are likewise time-barred, and they also fail because the Plan's investment in the flexPATH TDFs was expressly permitted under 29 U.S.C. § 1108(b)(8).

For these reasons, explained in greater detail below, Plaintiffs' claims against NFP and flexPATH should be dismissed in their entirety.

## II.   BACKGROUND

### A.   The Molina Plan.

The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. § 1002(2)(A) and § 1002(34). SAC ¶ 7. It is maintained

under a written Plan document that appoints Molina as the Plan administrator and named fiduciary for the management and investment of the assets of the Plan. *Id*. ¶¶ 7, 19; 29 U.S.C. § 1102(a)(1).  Molina's Board of Directors has delegated the authority to administer the Plan to the Molina Salary Savings Plan Investment Committee (the "Committee").  SAC ¶¶ 19–20.  The Committee has "the authority to select, monitor and remove Plan investments" and investment managers. *Id*. ¶ 21; Declaration of Catalina Vergara ("Vergara Decl.") Ex. E (Committee Charter) at 20.[1]

## B.   NFP's Role as the Plan's § 3(21) Investment Advisor.

In 2010, the Molina fiduciaries hired NFP's predecessor, 401(k) Advisors, Inc., to serve as "the Plan's investment consultant or fiduciary investment advisor as defined by 29 U.S.C. § 1002(21)(A)(ii)."  SAC ¶ 23.  NFP's services were provided under an Investment Advisory Agreement ("IAA"), in which NFP agreed to "provide research and analysis with regard to investment advice" and to "provide research and analysis that covers the investment products of several qualified retirement plan providers."  Vergara Decl. Ex. B (IAA) § 1.  The IAA states that NFP is a "fiduciary with respect to the Plan under Section 3(21)(A)(ii) of" ERISA, *id*. § 2, meaning that it is a Plan fiduciary only "to the extent" it "renders investment advice for a fee" to the Plan, 29 U.S.C. § 1002(21)(A)(ii).  NFP was not given the power or duty to select individual investment options made available to Plan participants.  As plaintiffs allege and the IAA confirms, the Committee had "the final and conclusive responsibility for the investment options selected to be available under the Plan."  Vergara Decl. Ex. B (IAA) § 2; *see* SAC ¶ 21.  Although the IAA also states that NFP "may assist [the Committee] with the selection of a 401(k) provider" at the

---

[1] All exhibits are attached to the accompanying Vergara Declaration.  Citations of specific pages in the exhibits are to the page number stamped on the bottom-right footer of each consecutively stamped exhibit, pursuant to L.R. 11-5.2.  On a motion to dismiss, the Court may consider plan- and fund-related materials outside of the complaint that are central to the plaintiffs' claims and whose authenticity is not in dispute.  *See* Request for Judicial Notice at 2–7.

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

Committee's request, Vergara Decl. Ex. B (IAA) § 1, NFP did not select the Plan's service providers.  Rather, the Molina fiduciaries retained "complete authority and responsibility to control and manage the operation and administration of the Plan," including over the selection and retention of investment managers.  SAC ¶ 19; Vergara Decl. Ex. E (Committee Charter) at 20.

Under a 2014 addendum to the IAA, NFP received an annualized fee, capped at $188,000, of 20 basis points ("bps") of total Plan assets.  Vergara Decl. Ex. B (IAA) § 14; Vergara Decl. Ex. C (2014 IAA Addendum).  In 2017, NFP's compensation changed to a fixed annual fee of $105,000.  Vergara Decl. Ex. D (2017 IAA Addendum).  In mid-2020, the Molina fiduciaries replaced NFP as the Plan's investment advisor.  SAC ¶ 90.

## C.    The Molina Fiduciaries' Retention of flexPATH as a § 3(38) Investment Manager to the Plan.

In November 2015, after determining that the Vanguard TDFs that were then the Plan's QDIA were no longer a good fit for the Plan, the Molina fiduciaries outsourced control over the selection of QDIA investments to an independent fiduciary.  SAC ¶¶ 64, 66–67, 70.  Through an April 1, 2016 Investment Management Agreement ("IMA"), they retained flexPATH, an affiliate of NFP, as the § 3(38) investment manager to assume fiduciary responsibility for that QDIA choice, and for monitoring the selected products thereafter.  Vergara Decl. Ex. A (IMA) § 1; *see* SAC ¶¶ 24, 64.  The IMA gave flexPATH "complete authority and discretion in providing the Management Services" described in the agreement.  Vergara Decl. Ex. A (IMA) § 1.  It "authoriz[ed] flexPATH to use affiliated investment options, including flexPATH CITs," as the QDIA.  *Id.*  For its § 3(38) investment manager services, flexPATH received a quarterly fee of 2.5 bps of Plan assets.  *Id.* § 2.  The IMA also provided that, in the event "flexPath CITs" were selected, neither flexPATH nor any of its affiliates would receive additional compensation as a result.

1    *Id.*

2         The Molina fiduciaries acknowledged in the IMA that they made an

3    "independent decision" and were "solely responsible for evaluating and deciding

4    whether to engage flexPATH" as a § 3(38) investment manager. *Id*. § 12(E), (J).  Per

5    the IMA, "[n]either flexPATH, nor any affiliate, . . . provided any investment advice

6    or otherwise acted as a fiduciary with respect to the Client's and Plans decision to

7    engage flexPATH to provide Management Services." *Id*. § 12(K).  In other words,

8    NFP did not act as a § 3(21) investment advisor to the Plan in its selection of

9    flexPATH as a § 3(38) investment manager.  *Id*. § 12(L).

10        **D.     The Plan's Investment in the flexPATH TDFs.**

11        The flexPATH TDFs are collective investment trusts ("CITs")[2] maintained by

12   Wilmington Trust, N.A.  SAC ¶¶ 43–45, 47.  flexPATH is the "subadvisor" of the

13   flexPATH TDFs—meaning that it "provides investment advisory services and has

14   authority over investing fund assets and developing the investment strategies for the

15   funds."   *Id*. ¶ 44.   The flexPATH TDFs employ a "fund of funds" structure,

16   comprising funds managed exclusively by unaffiliated investment managers like

17   BlackRock.  *Id*. ¶ 52.  Each yearly vintage of the flexPATH TDFs offers multiple

18   "glidepaths" (Conservative, Moderate, and Aggressive) to accommodate plan- and

19   participant-specific investment styles and risk tolerances.  *Id*. ¶ 47.

20        flexPATH's selection of the flexPATH TDFs for inclusion in the Plan's

21   investment lineup was effectuated through a March 31, 2016 Participation

22   Agreement ("PA").  Vergara Decl. Ex. G (PA) at 38, 40–42; *see* SAC ¶ 64.  The Plan

23   remained invested in the funds until October 2020, when the Molina fiduciaries

24

25   [2] CITs are investment vehicles maintained by banks that consist of pooled assets of

26   "retirement, pension, profit sharing, stock bonus or other trusts that are exempt from

     Federal income tax."  SAC ¶ 43 (quoting 12 C.F.R. § 9.18(a)(2)).  A CIT is "similar

27   to a mutual fund or other pooled investment vehicle because it also invests in a variety

28   of securities to create a diversified investment portfolio."  *Id*.

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

terminated the delegated fiduciary arrangement with flexPATH and elected the Fidelity Freedom Index TDFs as the Plan's QDIA. *Id*. ¶¶ 90, 100.

### E. Plaintiffs' Allegations in the SAC.

Plaintiffs are participants in the Plan. SAC ¶¶ 11–17. Individually and as representatives of a purported class of participants and beneficiaries of the Plan, they bring suit on behalf of the Plan against Defendants Molina, the Molina Board of Directors, the Molina Salary Savings Plan Investment Committee (collectively, the "Molina Defendants"), NFP, and flexPATH. *Id*. ¶ 1.

The SAC contains five total claims, three of which are brought against NFP and two of which are brought against flexPATH. Plaintiffs allege that (1) all defendants breached their fiduciary duties of prudence and/or loyalty in violation of ERISA § 404(a)(1)(A)–(B) related to the selection and retention of the flexPATH Index TDFs, SAC ¶¶ 128–36 (Count I); (2) the Molina Defendants and NFP breached their fiduciary duties under ERISA § 404(a)(1)(A) or (B) by causing the Plan to invest in allegedly higher-cost versions of Plan investments than those available on the market, SAC ¶¶ 137–42 (Count II); and (3) all defendants violated ERISA § 406(a)–(b) by "advis[ing]" on the selection of the flexPATH TDFs and "caus[ing]" the Plan to invest in those funds, SAC ¶¶ 154–59 (Count IV). Plaintiffs also assert two additional claims against the Molina Defendants.

## III.  LEGAL STANDARD

ERISA is a federal statute that regulates employee retirement plans. 29 U.S.C. § 1104. Section 404 obliges retirement plan fiduciaries to discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries," and with the care someone "acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. § 1104(a)(1)(A)–(B). Section 406 prohibits plan fiduciaries from causing ERISA plans to enter into certain transactions involving fiduciaries or other parties having

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

1   an interest in the plan. *Id*. § 1106(a)–(b).

2          Motions to dismiss brought under Rule 12(b)(6) are an "important mechanism

3   for weeding out meritless claims" in ERISA cases. *Fifth Third Bancorp v.*

4   *Dudenhoeffer*, 573 U.S. 409, 425 (2014).   To survive a motion to dismiss,

5   "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

6   to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

7   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Stating a plausible

8   claim "requires more than labels and conclusions, and a formulaic recitation of the

9   elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation

10  omitted).   "A claim has facial plausibility when the plaintiff pleads factual content

11  that allows the court to draw the reasonable inference that the defendant is liable for

12  the misconduct alleged." *Iqbal*, 556 U.S. at 678.   While the Court must accept well-

13  pleaded facts as true, it need not accept "allegations that are merely conclusory,

14  unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec.*

15  *Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).   The Court also need not "accept as true

16  allegations that contradict matters properly subject to judicial notice or by exhibit."

17  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion*

18  *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

19  **IV.   <u>ARGUMENT</u>**

20      **A.   <u>Plaintiffs' Claims Against NFP Must Be Dismissed.</u>**

21              **1.    Plaintiffs Fail to State a Breach of Fiduciary Duty Claim**

22              **Against NFP Regarding Its Investment Advice to the Plan.**

23          Plaintiffs fail to plausibly allege that NFP had fiduciary responsibility over the

24  selection of any of the Plan's investment options or that NFP employed a defective

25  process in providing investment advice to the Plan fiduciaries with respect to options

26  other than the QDIA.   Plaintiffs' theory that NFP breached any duty pertaining to the

27  Plan's Investment Policy Statement ("IPS") also fails as a matter of law, and thus

28

plaintiffs state no viable fiduciary breach claim against NFP.

a.   **NFP's Fiduciary Duties to the Plan Are Limited to Its Investment Advice About Investment Options Other Than the FlexPATH TDFs.**

Under ERISA, an entity is a fiduciary only "to the extent" it performs a fiduciary function. 29 U.S.C. § 1002(21)(A). It cannot be held liable for fiduciary breaches that exceed the scope of its fiduciary responsibility. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir. 2019); 29 C.F.R. § 2509.75-8 (FR-16A).

Here, NFP's fiduciary role was limited to advising the Plan fiduciaries about Plan investment options. It had no power to choose any of the options made available to Plan participants; Molina, as the plan sponsor, retained the "final say on which investment options w[ould] be included." *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009); *see also* SAC ¶ 21 (conceding that Molina "had the authority to select, monitor and remove Plan investments"). Plaintiffs thus cannot state a claim for fiduciary breach against NFP premised on the actual selection of any of the Plan's investment options (as opposed to the advice NFP provided the Plan fiduciaries in making their choices, which is addressed in Section IV.A.1.b below).

Moreover, with respect to the flexPATH TDFs, plaintiffs cannot state a viable fiduciary breach claim against NFP at all, because Molina retained flexPATH to serve as a § 3(38) investment manager with respect to the selection of the Plan's QDIA. NFP had no fiduciary role in advising the Committee to retain flexPATH as § 3(38) investment manager. *See* Vergara Decl. Ex. A (IMA) §§ 12(J)–(L). And by retaining flexPATH in that capacity, the Molina fiduciaries delegated their exclusive fiduciary responsibility for selecting the QDIA for the Plan to flexPATH. SAC ¶ 64; Vergara Decl. Ex. A (IMA) § 1.

Because NFP had no fiduciary responsibility over the selection of any of the Plan's investment options (including the flexPATH TDFs), NFP cannot face

fiduciary liability for alleged breaches premised on those decisions.  *See Lauderdale v. NFP Ret., Inc.*, No. SACV21301JVS(KESx), 2022 WL 422831, at *8 (C.D. Cal. Feb. 8, 2022) (finding that "Plaintiffs have not stated a claim to the extent that it is premised on NFP's direct responsibility for the selection and retention of the flexPATH target date funds" because it served as a § 3(21) investment adviser).  And because NFP provided no investment advice to flexPATH with respect to its selection of the Plan's QDIA, the only plausible claim against NFP relates to its limited fiduciary role in providing investment advice to the Plan fiduciaries about investment options other than the flexPATH TDFs.  *See* Vergara Decl. Ex. B (IAA) §§ 1–2; *see, e.g.*, *Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir. 1982) (investment adviser's fiduciary duties generally relate only to the performance of "its investment advising functions").  Even that claim fails as a matter of law, as explained next.

### b. Plaintiffs Do Not Plausibly Allege that NFP Breached Fiduciary Duties Through Its Investment Advice to the Plan.

To state a claim for breach of NFP's limited fiduciary duty as an investment advisor, plaintiffs must plead specific facts showing that NFP did not act "with the care, skill, prudence, and diligence that a prudent person acting in a like capacity and familiar with such matters would use." *Tibble v. Edison Int'l* ("*Tibble III*"), 575 U.S. 523, 529–30 (2015) (quotations omitted).  The Court must assess a fiduciary's prudence according to processes, not outcomes, asking "whether the fiduciaries, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Tibble v. Edison Int'l* ("*Tibble II*"), 729 F.3d 1110, 1136 (9th Cir. 2013), *vacated on other grounds by Tibble III*, 575 U.S. 523 (quotation omitted).  Fiduciary decision-making "will implicate difficult tradeoffs," and courts evaluating allegations of imprudence "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ*, 142 S. Ct.

737, 742 (2022); *see also Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (noting that the prudent person standard does not require a fiduciary to take "any particular course of action if another approach seems preferable" (quotation omitted)).

NFP's potential fiduciary liability is limited to the investment advice it provided to the Plan—and, as explained, only with respect to the funds in the lineup *other* than the flexPATH TDFs.  But plaintiffs do not plausibly allege any deficiency in NFP's process for generating that advice.  They allege that NFP did not provide the Plan fiduciaries certain information and reporting pertaining to the flexPATH TDFs, SAC ¶¶ 82–84, but ignore that NFP did not serve as a § 3(21) advisor as to those funds.  And despite alleging that "NFP was charged with advising Molina on the use of share classes," plaintiffs do not allege anything concerning the specific advice NFP offered on this subject, much less the process used to formulate it—for instance, there is no allegation that NFP inaccurately summarized the available share classes for Molina's benefit.  *Id*. ¶ 115; *see id*. ¶¶ 107–18.  Plaintiffs' failure to allege any defect in NFP's process for providing Plan-related investment advice defeats plaintiffs' fiduciary breach claims against NFP.

It also bears emphasis that, even had NFP advised Molina in some capacity with regard to the choice of flexPATH as an outsourced fiduciary, that advice would provide no basis for pinning fiduciary status on NFP.  ERISA implementing regulations state that the type of investment advice that confers fiduciary status is that which concerns "the value of securities or other property, . . . or the advisability of investing in, purchasing, or selling securities or other property[.]"  29 C.F.R. § 2510.3-21(c)(1)(i).  Advice concerning the selection of a delegate to handle fiduciary functions (like flexPATH) is removed from advice on specific securities.

### c.    The Plan's Choice of Investments Permits No Inference of Imprudence in NFP's Advice.

Unable to make any allegations pertaining to NFP's process for formulating advice, plaintiffs instead ask the Court to infer a defect in that process based simply

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

on their assertion that the investment options chosen for the Plan by the Molina fiduciaries and flexPATH were themselves "defective." Without any allegations about the specific advice an investment adviser imparted, the adviser cannot be drawn into ERISA fiduciary breach litigation based simply on the principal's discretionary choices. *See Baird v. BlackRock Institutional Tr. Co., N.A.*, 403 F. Supp. 3d 765, 789 (N.D. Cal. 2019) (dismissing claim against investment advisor for failing to plead how advice caused plan sponsor's discretionary investment decision). This pleading failure defeats plaintiffs' fiduciary breach claims.

Even if that were not the case, plaintiffs' claim would still fail, because none of the challenged investment options was *per se* imprudent. Plaintiffs' hindsight attacks on the flexPATH TDFs are insufficient to state a claim, as explained in detail in Section IV.B.1 below. Nor do plaintiffs' allegations regarding the share classes employed by the Plan support an inference of breach. Plaintiffs ignore that revenue from higher-cost share classes may be allocated to other plan expenses—and, in any case, they themselves allege facts showing the Plan's fiduciaries were attentive to investment fees, as the Plan moved to lower-cost share classes of Plan investments as they became available during the class period. *See* SAC ¶¶ 97, 116. These allegations undermine any suggestion of a defective process. *See White v. Chevron Corp.* ("*Chevron I*"), No. 16-CV-0793-PJH, 2016 WL 4502808, at \*17 (N.D. Cal. Aug. 29, 2016) (noting that such changes "create a plausible inference that the Plan fiduciaries were attentively monitoring the fund"); *Patterson v. Cap. Grp. Cos.*, No. CV 17-4399 DSF (PJWx), 2018 WL 748104, at \*4–5 (C.D. Cal. Jan. 23, 2018).

### d.   Plaintiffs Fail to State a Claim that NFP Breached a Fiduciary Duty to Act in Accordance with the IPS.

Plaintiffs also cannot sustain a fiduciary breach claim against NFP under a theory that NFP breached a duty to act "in accordance with the documents and instruments governing the plan" pursuant to ERISA § 404(a)(1)(D). *See* SAC ¶ 133.

NFP's IAA with the Molina fiduciaries defined its fiduciary responsibilities—not the IPS.  *See* Vergara Decl. Ex. B (IAA); *see also Cal. Ironworkers Field Pension Tr. v. Loomis Sayles & Co.*, 259 F.3d 1036, 1042 (9th Cir. 2001) (explaining use of an IPS only by "[f]iduciaries who are responsible for plan investments"); *accord* SAC ¶¶ 75–76 (describing the IPS as guiding the selection of investments by the Committee).  The SAC does not plausibly allege a violation of the IPS, in any event.  Plaintiffs rewrite the IPS to claim that the flexPATH TDFs were off limits to the Plan because they supposedly lacked a performance history, but the IPS requires no particular tenure for funds—much less for funds (like the TDFs) that are constructed exclusively of long-tenured index funds.  *See* Vergara Decl. Ex. F (IPS) at 26–27 (requiring no fund-specific track record and noting circumstances under which "long-term performance of an investment manager may be inferred").  Here, plaintiffs plead themselves out of this claim by alleging that the flexPATH TDFs "merely repackaged" the longstanding BlackRock LifePath funds—funds with a performance history that unquestionably satisfied plaintiffs' own, made-up criteria.  SAC ¶ 54.[3]

### 2. Plaintiffs Do Not Plausibly Allege that NFP Acted Disloyally Regarding the flexPATH TDFs.

Plaintiffs next claim that NFP acted disloyally by "causing the flexPATH [TDFs] to be added and retained in the Plan."  SAC ¶ 132.  The claim fails as a matter of law because NFP was not a fiduciary with respect to the selection of the flexPATH TDFs (or of the delegated fiduciary who chose them), as discussed in Section IV.A.1.a above.  Nor do plaintiffs offer any plausible allegations of actual disloyalty by NFP, notwithstanding the fact that, "in order to prove a violation of the duty of loyalty, the plaintiff must go further and show actual disloyal conduct."  *In re*

---

[3] While plaintiffs correctly acknowledge that the flexPATH TDFs invested in established BlackRock TDF strategies, the unique flexPATH structure allowed participants a choice of conservative, moderate or aggressive glidepaths within a single plan—flexibility that plaintiffs do not allege is available off the shelf from BlackRock.  *See infra* at Section IV.B.1.b.

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

*Northrop Grumman Corp. Erisa Litig.*, No. CV0606213MMMJCX, 2015 WL 10433713 (JCx), at *28 (C.D. Cal. Nov. 24, 2015) (quotations omitted).  To the extent plaintiffs are suggesting disloyalty can be inferred because NFP and flexPATH are affiliated entities, that is insufficient.  Plaintiffs allege, without foundation, that the IMA provides that "[i]ndividual NFP or flexPATH investment advisors receive additional compensation, such as bonuses and other incentives, when clients invest in affiliated products or services" and that the IMA "specified that affiliates (such as NFP) may receive additional compensation from placement of the flexPATH Index target date funds in the Plan."  SAC ¶ 69.  Those bald assertions are contradicted by the actual text of the IMA and should be given no credit.  As the IMA shows, neither flexPATH nor any of its affiliates received additional compensation from the Plan related to the selection of the flexPATH TDFs for the Plan.  Vergara Decl. Ex. A (IMA) § 2.  Plaintiffs' disloyalty claim against NFP thus fails as a matter of law.

### 3.    ERISA's Statute of Repose Bars Plaintiffs' Fiduciary Breach Claims Against NFP for the Selection of the flexPATH TDFs.

Plaintiffs' claims against NFP pertaining to the initial selection of the flexPATH TDFs are also time-barred.  ERISA imposes a six-year statute of repose on fiduciary breach claims.  29 U.S.C. § 1113(1); *see Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 774 (2020).  A plaintiff must file suit within six years "after . . . the date of the last action constituting a part of the breach or violation." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1051–52 (9th Cir. 2020) (quoting 29 U.S.C. § 1113(1)(A), *cert. denied*, 141 S. Ct. 2596 (2021)).  Plaintiffs thus cannot sue NFP for conduct occurring before May 13, 2016—six years before their suit against NFP was deemed filed.  *See* Notice Regarding Assumed Scrivener's Error, ECF No. 45; Order Am. Order Granting Mot. for Leave, ECF No. 47.

Here, even if one could assume that NFP advised the Plan with respect to the selection of flexPATH or the flexPATH TDFs, any advice would have been given no

later than April 1, 2016—when flexPATH became investment manager for the Plan's QDIA.  Vergara Decl. Ex. A (IMA) at 4, 10; *accord* SAC ¶¶ 24, 64, 67.  That was well before May 13, 2016.  Any claims asserting purported fiduciary breaches by NFP regarding the initial inclusion of the flexPATH TDFs in the Plan are therefore time-barred.

### 4.    Plaintiffs Cannot State a Claim for Co-Fiduciary Liability Against NFP.

For reasons similar to those described above, plaintiffs cannot state a claim for co-fiduciary liability against NFP.  *See* SAC ¶¶ 136, 142, 159.  First, NFP cannot face co-fiduciary liability for actions taken by flexPATH as § 3(38) investment manager.  *See Lauderdale*, 2022 WL 422831, at *6–7, 12 (dismissing claims for co-fiduciary liability brought against NFP for similar conduct by flexPATH as § 3(38) investment manager).  Second, ERISA requires that an entity be "a fiduciary . . . [to] be liable for a breach of fiduciary responsibility of another fiduciary," 29 U.S.C. § 1105(a), and NFP was not a fiduciary with respect to the selection of Plan options.  Finally, plaintiffs' claims are predicated on non-existent, direct breaches by the Committee and flexPATH, which plaintiffs have failed to plead for the reasons described in this motion and in the Molina Defendants' motion to dismiss.

### 5.    Plaintiffs' Prohibited Transaction Claim Against NFP Fails as a Matter of Law.

Finally, Plaintiffs' claim that NFP is liable for alleged prohibited transactions relating to the Plan's investment in the flexPATH TDFs is untimely and not properly asserted against NFP.  SAC ¶¶ 156–57.  As discussed, ERISA claims must be brought by the earlier of six years of "the date of the last action which constituted a part of the breach or violation" or within three years of the "earliest date on which the plaintiff had actual knowledge of the breach or violation."  29 U.S.C. § 1113(1), (2); *see Phillips v. Alaska Hotel & Rest. Emps. Pension Fund*, 944 F.2d 509, 520 (9th Cir.

1991).  When a fund is added to a lineup, the relevant "transaction" is the fiduciaries' selection of the fund for the Plan lineup.  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (explaining the relevant transaction for § 406 purposes is the initial investment decision, not "*continu[ing]* to hold" the particular investment); *see also David v. Alphin*, 704 F.3d 327, 341 (4th Cir. 2013); *White v. Chevron Corp.* ("*Chevron II*"), No. 16-cv-0793-PJH, 2017 WL 2352137 at *22 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) ("Unlike a claim for breach of fiduciary duty . . . a violation of § 1106 occurs when a fiduciary takes a particular action with respect to a Plan . . . and the Ninth Circuit has opined that there is no such thing as a 'continuing' prohibited transaction").  The selection of the flexPATH TDFs occurred no later than April 1, 2016, after both the IMA and PA for flexPATH had been executed.  *See* Vergara Decl. Ex. A (IMA) at 4; Vergara Decl. Ex. G (PA) at 38.  And the repose period against NFP goes back only to May 13, 2016.

In any case, NFP is not a proper defendant to plaintiffs' prohibited transaction claims.  "[T]o establish liability under § 1106, a party must prove that 'a fiduciary caused the plan to engage in the allegedly unlawful transaction.'"  *Wright*, 360 F.3d at 1101 (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)).  As explained, NFP did not have fiduciary authority to cause the Plan to invest in the flexPATH TDFs:  the Committee selected flexPATH to serve as § 3(38) advisor, and flexPATH selected the flexPATH TDFs.  Courts have rejected prohibited transaction claims based on "attenuated theor[ies] of causation," where a different fiduciary caused the challenged transaction.  *Miller v. Astellas US LLC*, No. 30 C 3882, 2021 WL 1387948, at *10 (N.D. Ill. Apr. 13, 2021); *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910, 944 (E.D. Wis. 2020) (dismissing prohibited transaction claim absent an allegation that defendants had "discretionary authority to demand that the transaction take place").  That principle precludes a prohibited transaction claim against NFP.

**B.    Plaintiffs' Claims Against flexPATH Must Be Dismissed.**

**1.    Plaintiffs Do Not Plausibly Allege that the Selection and Retention of the flexPATH TDFs Was Imprudent.**

Plaintiffs allege that flexPATH breached its duty of prudence in selecting and retaining the flexPATH TDFs.  SAC ¶ 132.  Lacking direct allegations that flexPATH used a defective process, plaintiffs urge the Court to infer imprudence from the investment choices themselves.  Their allegations are insufficient.

**a.    Plaintiffs' Inapt Comparisons Between the flexPATH TDFs and TDFs with Different Strategies Cannot Sustain an Inference of Imprudence.**

Fiduciary prudence is judged by process, not results.  *Tibble II*, 729 F.3d at 1136.  Allegations "show[ing] only that [the defendants] could have chosen different vehicles for investment that performed better during the relevant period" do not raise a plausible inference of imprudence.  *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018); *see also, e.g.*, *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (a "showing of imprudence" does not "come down to simply pointing to a fund with better performance").  Instead, to show that "a prudent fiduciary in like circumstances" would have made a different investment decision "based on the . . . performance of the selected fund, a plaintiff must provide a sound basis for comparison—a meaningful benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (quotation omitted).

Plaintiffs' hindsight performance comparisons of the flexPATH TDFs to TDFs that employ different investment strategies do not establish that a prudent fiduciary could not have preferred the flexPATH TDFs *ex ante*.  The SAC itself establishes that the comparators plaintiffs cite—the Vanguard Target Retirement TDFs, Vanguard Target Retirement Trust Plus TDFs, and Fidelity Freedom Index TDFs— employed different glidepaths and maintained different asset allocations and levels

of risk over time.  SAC ¶¶ 92–106.[4]  After all, that is why the funds performed differently under the market conditions that prevailed over the relevant period, *id.* ¶¶ 99, 103.  Indeed, for a passively managed TDF like the flexPATH TDFs, where (as here) there is no allegation that the underlying index funds failed to track their benchmarks, asset allocation is the *only* conceivable driver of gross-of-fee performance.  The fact the flexPATH TDFs underperformed comparators with larger allocations to higher-risk investments over a period in which equities enjoyed extraordinary highs does not mean a fiduciary could not have preferred a QDIA investment that gave Plan participants the opportunity to guard against market downturns.  *See*, *e.g.*, *Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 9–12 (1st Cir. 2018) (dismissing claim alleging that stable value fund investment option was "too conservative"); *Reetz v. Lowe's Cos., Inc.*, No. 5:18-CV-00075-KDB-DCK,  2021 WL 4771535, at *56 (W.D.N.C. Oct. 12, 2021) ("ERISA does not require fiduciaries to . . . prioritize raw returns over other considerations, including the higher risk associated with higher expected returns"), *appeal filed*, No. 21-2267 (4th Cir. Nov. 10, 2021).[5]  Precisely because plaintiffs' comparators lack "similar aims, risks, and

---

[4] Publicly available fund disclosures show the different equity allocations in the funds, and the funds' different risk ratings. *Compare*, *e.g.*, Vergara Decl. Ex. H (flexPATH Index Moderate 2025 Fund WFIMBX Fact Sheet, June 30, 2022); Vergara Decl. Ex. I (flexPATH Index Conservative 2025 Fund WFIMBX Fact Sheet, June 30, 2022); Vergara Decl. Ex. J (flexPATH Index Aggressive 2025 Fund WFIMBX Fact Sheet, June 30, 2022) *with* Vergara Decl. Ex. K (Vanguard Target Retirement 2025 Fund VTTVX Fact Sheet June 30, 2022); Vergara Decl. Ex. L (Vanguard Target Retire Trust Plus 2025 Fact Sheet, June 30, 2022); Vergara Decl. Ex. M (Fidelity Freedom Index 2025 Fund Fact Sheet, June 30, 2022).

[5] Predictably, the lower-risk flexPATH TDFs have outperformed plaintiffs' higher-risk comparators over the more challenging equity market conditions of recent months. *Compare* Vergara Decl. Ex. H (flexPATH Index Moderate 2025 Fund WFIMBX Fact Sheet, June 30, 2022); Vergara Decl. Ex. I (flexPATH Index Conservative 2025 Fund WFIMBX Fact Sheet, June 30, 2022) *with* Vergara Decl. Ex. K (Vanguard Target Retirement 2025 Fund VTTVX Fact Sheet June 30, 2022);

rewards" as the flexPATH TDFs, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, No. 19-CV-04618-LHK, 2022 WL 74002, at *10 (N.D. Cal. Jan. 8, 2022) *appeal filed*, No. 22-16268 (9th Cir. Aug. 22, 2022), they do not provide a helpful guide in assessing the flexPATH TDFs' performance. *See, e.g.*, *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1306–07 (D. Minn. 2021) (dismissing claims challenging TDFs based on comparisons to alternatives with "various glide path strategies" because "[p]laintiffs have not pleaded how their comparators have similar asset allocation or investment strategies"). Plaintiffs cannot state a claim by alleging differences in returns among passive TDF strategies while closing their eyes to differences in asset allocations and expected risk levels in those strategies. *Smith*, 37 F.4th at 1167 (upholding dismissal of claim where purported comparators had "distinct goals and distinct strategies, making them inapt comparators").

The funds also differ in their use of a "to" approach to asset allocation (which reaches its most conservative asset allocation *at* the target retirement date, like the flexPATH TDFs) versus a "through" approach (which continues to reduce equity exposure *after* retirement, like plaintiffs' comparators). SAC ¶¶ 48, 104. These distinct approaches inform the equity asset allocations employed across a glidepath, but their differences are particularly significant at retirement age, when a "to" glidepath reaches its terminal, and most conservative, equity allocation. Vergara Decl. Ex. N (Morningstar Target-Date Strategy Landscape) at 105–06 ("[T]he average 'through' series holds 46% in stocks versus just 33% for the average 'to'

---

Vergara Decl. Ex. L (Vanguard Target Retire Trust Plus 2025 Fact Sheet, June 30, 2022); Vergara Decl. Ex. M (Fidelity Freedom Index 2025 Fund Fact Sheet, June 30, 2022). But the "aggressive" flexPATH TDFs have outperformed each of plaintiffs' comparators over the longer, five-year period ending June 30, 2022. *Compare, e.g.*, Vergara Decl. Ex. J (flexPATH Index Aggressive 2025 Fund WFIMBX Fact Sheet, June 30, 2022) *with* Vergara Decl. Ex. K (Vanguard Target Retirement 2025 Fund VTTVX Fact Sheet June 30, 2022); Vergara Decl. Ex. L (Vanguard Target Retire Trust Plus 2025 Fact Sheet, June 30, 2022); Vergara Decl. Ex. M (Fidelity Freedom Index 2025 Fund Fact Sheet, June 30, 2022).

series."); *id.* at 92–104 (graphing % equity difference over the life of TDFs).  As Morningstar notes, differences in asset allocation between "to" and "through" glidepaths "can lead to markedly different performance." *Id*. at 106.  But plaintiffs do not and cannot allege that a prudent fiduciary could not select a "to" glidepath solution for a plan.

The SAC's performance allegations cannot sustain a fiduciary breach claim for yet another reason.  Plaintiffs allege that the flexPATH TDFs underperformed the Vanguard TDFs, Vanguard Trust Plus TDFs, and Fidelity Freedom Index TDFs from June 30, 2016 to September 30, 2020.  SAC ¶¶ 99, 103.  These performance comparisons are unilluminating because returns over "three to five years" are "still considered relatively short periods of underperformance" and do not raise a plausible inference of imprudent fiduciary oversight.  *Dorman v. Charles Schwab Corp.*, No. 17-cv-00285-CW, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019).  "[T]he common practice of retaining investments through periods of under-performance as part of a long-range investment strategy is plainly permitted." *Chevron II*, 2017 WL 2352137, at *20.  In short, a "side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option." *Smith*, 37 F.4th at 1167 (in evaluating funds "over a few years," "disappointing performance by itself does not conclusively point towards deficient decision-making").

### b. Plaintiffs' Criticisms of the flexPATH TDFs' Track Records and Investment Styles Likewise Do Not Support an Inference of Imprudence.

With no meaningful benchmark comparison, plaintiffs are left alleging that characteristics of the flexPATH TDFs render them inherently unsuitable options for retirement plans.  These allegations fall short, too.  Plaintiffs' criticism of the flexPATH TDFs' multi-glidepath offering (Conservative, Moderate, and Aggressive) is unavailing.  A range of glidepaths, from conservative to aggressive,

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS

has always existed in the marketplace.  flexPATH's approach offers individual employees the flexibility to select an investment style that matches their personal risk preferences by deciding if their assets will be invested conservatively, moderately, or aggressively.  This flexibility accommodates the needs of a diverse participant base, where investors may have variable risk tolerances.  Plaintiffs declare that this flexibility had "no value" based on the assertion that most participants defaulted into the "moderate" strategy in 2016, SAC ¶ 86, but ERISA harbors no such hostility to arrangements that allow participants to customize their retirement portfolios according to their personal risk preferences. *Loomis v. Exelon Corp.*, 658 F.3d 667, 673 (7th Cir. 2011) ("Far from reflecting a paternalistic approach, the safe harbor in [ERISA] § 1104(c) encourages sponsors to allow more choice to participants in defined-contribution plans.").  Plaintiffs cannot maintain that offering various options for participants with varying needs is *per se* imprudent.

Plaintiffs also do not and cannot plausibly allege that the glidepaths employed by the flexPATH TDFs were unsuited to their purposes.  Plan fiduciaries must use "appropriate consideration" in making fiduciary investment decisions, considering, *i.e.*, "the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action compared to the opportunity for gain (or other return) associated with reasonably available alternatives with similar risks."  29 C.F.R. § 2550.404a-1(b)(2)(i).  The SAC contains no critique of how the flexPATH Conservative, Moderate, or Aggressive glidepaths allocate assets or risk over the life of the fund, and in particular does not allege that the funds took risks out of proportion with their potential for investment gains, or failed to afford the opportunity to grow retirement savings over the lifecycle of each fund.  Plaintiffs' invocation of after-the-fact, short-term performance differences do not do the trick.  *Smith*, 37 F.4th at 1167 (explaining that an "after-the-fact performance gap" is insufficient to state a claim, "especially if the different performance rates between the funds may be explained by

a different investment strategy." (quotation omitted)).[6]

Nor can plaintiffs proceed on the allegation that the funds were "untested." SAC ¶ 46.  Courts have rejected the notion that new funds without a certain length of performance history are *per se* imprudent for ERISA plans.  *See*, *e.g.*, *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 705 (W.D. Mo. 2019) (noting plaintiffs "cite no authority holding that the implementation of a fund without a long performance history is *per se* imprudent").  The Department of Labor, which has enforcement responsibility for ERISA, has encouraged large 401(k) plans to offer "custom" TDFs to benefit participants, even though the use of custom funds necessarily uses newly formed vehicles without performance histories.  *See* Vergara Decl. Ex. P (*Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries*).[7]  In any case, these are not untested funds.  As plaintiffs allege, the flexPATH TDFs are fund-of-fund investment vehicles for which flexPATH selected unaffiliated investment managers.  SAC ¶ 52.  The underlying passively managed BlackRock TDFs have long track records and use mainstream glidepaths.  *Id*. ¶¶ 53–55; *see* Vergara Decl. Ex. N (Morningstar Target-Date Strategy Landscape) at 81, 88–89.

Plaintiffs' suggestion that the BlackRock TDFs underlying the flexPATH TDFs "were inferior to available target date funds in the marketplace" is also implausible.  SAC ¶ 56.  The BlackRock TDFs are one of the most popular TDF

---

[6] The discretion to choose an approach with lower risk is critical for TDFs because they serve multiple objectives.  *See* Vergara Decl. Ex. O (GAO Report) at 126 ("Differences in the size of the equity component throughout the TDF's glide path may be rooted in different goals and in the treatment of various considerations such as the risk of losing money because of financial market fluctuations—investment risk—and the risk that a participant could outlive his or her assets—longevity risk."); Vergara Decl. Ex. N (Morningstar Target-Date Strategy Landscape) at 92–104 (showing range of equity glide paths).

[7] Likewise, the Department of Labor suggests that large plans consider separate accounts and hire established managers to run them, even though separate accounts have no performance history when they are created.  *See* Vergara Decl. Ex. Q (*Study of 401(k) Plan Fees and Expenses*).

suites on the market and regularly earn a "Gold" Morningstar Analyst Rating—the highest analyst rating Morningstar gives.  Vergara Decl. Ex. N (Morningstar Target-Date Strategy Landscape) at 81, 88–89; *see also Pizarro v. Home Depot, Inc.*, No. 1:18-CV-01566-SDG, 2022 WL 4687096, at *24–25 (N.D. Ga. Sept. 30, 2022) (granting summary judgment for defendant on fiduciary breach claim regarding the selection of the BlackRock TDFs after finding that investing in the BlackRock TDFs was substantively prudent).  The allegation that investing in these underlying vehicles is imprudent fails the plausibility standard of Rule 12(b)(6).

### c. Plaintiffs' Claims of Imprudence Based On Excessive Fees Also Are Insufficient.

Plaintiffs next claim that imprudence can be inferred from the expenses borne by the flexPATH TDFs.  SAC ¶¶ 97, 102.  Not so.  Cost alone cannot support an inference of imprudence—plaintiffs must allege something more, as "a fiduciary's failure to offer the cheapest investment option is not enough by itself to state a claim for a breach of fiduciary duty." *Patterson*, 2018 WL 748104, at *4–5.

Here, plaintiffs allege that the flexPATH TDFs charged Plan participants 24 bps when initially invested in the I1 share class.  SAC ¶¶ 59, 97, 102.  As reflected in the IMA, this included flexPATH's § 3(38) investment management fees, which were the only Plan-related compensation flexPATH received.  Vergara Decl. Ex. A (IMA) § 2.  Plaintiffs have not plausibly alleged that flexPATH's agreed-upon compensation or the net cost to the Plan was excessive for the services provided, including the in-Plan flexibility for participants to choose their own retirement glidepath. *See Smith*, 37 F.4th at 1169 (dismissing claim of excessive fees for failing "to allege that fees were excessive compared to services rendered") (citation omitted).  Without more, their claims of imprudence against flexPATH based on allegedly excessive fees fail.

1
2

d.     **Plaintiffs Fail to State a Claim that flexPATH Breached a Fiduciary Duty to Act in Accordance with the IPS.**

3      Plaintiffs allege that flexPATH's selection of the flexPATH TDFs also

4    violated the IPS because the funds' limited performance history did not provide

5    returns comparable to similar investment options or performance that was

6    competitive with an appropriate benchmark or peer group.  SAC ¶ 133.  As explained

7    in Section IV.A.1.d above, plaintiffs misinterpret the IPS in arguing that the

8    flexPATH TDFs were out of bounds.  *See* Vergara Decl. Ex. F (IPS).  The IPS does

9    not require any particular fund-specific track record, and the return and risk criteria

10   to which plaintiffs point can be evaluated under the terms of the IPS by looking to

11   the underlying BlackRock TDFs.  *See id*.  Plaintiffs' attempt to limit the consideration

12   of long-term performance is undermined by their own concession that the flexPATH

13   TDFs are "fund of funds" structures solely comprising BlackRock TDFs, which have

14   an extensive track record and established place in the market.  SAC ¶¶ 52–55.

15
16

2.     **Plaintiffs Do Not Plausibly Allege that flexPATH Acted Disloyally in Selecting or Retaining the flexPATH TDFs.**

17     Plaintiffs next allege that flexPATH breached its duty of loyalty because it had

18   a conflict of interest in selecting its own funds for the Plan.  SAC ¶ 63.  But "[i]t is

19   not enough for a plaintiff to identify a potential conflict of interest from the

20   defendant's investment in its own proprietary funds."  *Moitoso v. FMR LLC*, 451 F.

21   Supp. 3d 189, 204 (D. Mass. 2020); *see also, e.g.*, *Dorman v. Charles Schwab Corp.*,

22   No. 17-CV-00285-CW, 2018 WL 6803738, at *3 (N.D. Cal. Sept. 20, 2018).  Instead,

23   plaintiffs "must plead additional facts showing that the fiduciary's decision was

24   based on financial interest rather than a legitimate consideration."  *Meiners v. Wells*

25   *Fargo & Co.*, Civil No. CV 16 3981 (DSD/FLN), 2017 WL 2303968, at *3 (D. Minn.

26   May 25, 2017) *aff'd*, 898 F.3d 820 (8th Cir. 2018); *see Turner v. Schneider Elec.*

27   *Holdings, Inc.*, 530 F. Supp. 3d 127, 136 (D. Mass. 2021) (dismissing loyalty claim

28

regarding selection of proprietary funds for failing to provide "specific factual allegations regarding [defendant's] self-serving motive"); *In re Northrop Grumman Corp. Erisa Litig.*, 2015 WL 10433713, at *28.

Here, plaintiffs have not pleaded any actual disloyal conduct by flexPATH. The IMA expressly contemplated that flexPATH could select the flexPATH TDFs. Vergara Decl. Ex. A (IMA) § 1.  And under the IMA, flexPATH did not receive any additional compensation from the selection of the flexPATH TDFs, rebutting any suggestion that flexPATH acted in its own financial self-interest by selecting those funds.  *Id.* § 2.  Plaintiffs' naked assertion that the IMA provides for additional compensation to "[i]ndividual NFP or flexPATH investment advisors received additional compensation, such as bonuses and other incentives, when clients invest in affiliated products or services," SAC ¶ 69, should be given no weight as it is belied by the IMA itself, which says no such thing.  *See* Vergara Decl. Ex. A (IMA) § 2.

Fiduciaries may offer proprietary products for many legitimate reasons, including familiarity with the investment managers and confidence in "their abilities and responsiveness."  *Dupree v. Prudential Ins. Co. of Am.*, No. 99-8337-Civ.-JORDAN, 2007 WL 2263892, at *10 (S.D. Fla. Aug. 10, 2007); *see Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (an "incidental[] benefit[]" to the company does not preclude a "reasonabl[e] conclu[sion]" that a decision serves participants' best interests).  Here, the "obvious alternative explanation" for the retention of flexPATH is the Committee's and flexPATH's judgment that flexPATH was a suitable investment manager and that its multi-glidepath approach benefitted participants. *Iqbal*, 556 U.S. at 682 (quotation omitted); *see, e.g.*, *Meiners*, 2017 WL 2303968, at *3.  Plaintiffs allege no facts to support a plausible claim for disloyalty.

### 3. Plaintiffs' Fiduciary Breach Claims Against flexPATH Regarding the Selection of the flexPATH TDFs Are Barred By ERISA's Statute of Repose.

Plaintiffs' claim that flexPATH breached its fiduciary duties in selecting the

flexPATH TDFs is also untimely under ERISA's six-year statute of repose for the reasons explained in Section IV.A.3 above.

### 4.    Plaintiffs' Prohibited Transaction Claim Against flexPATH Fails as a Matter of Law.

Finally, plaintiffs' prohibited transaction claim against flexPATH, *see* SAC ¶¶ 156–57, fails on multiple levels.  First, it is time-barred: flexPATH's selection of the TDFs occurred no later than April 1, 2016, as noted above.  *See supra* Section IV.A.3.  Second, plaintiffs do not plausibly allege a violation of § 1106(b) at all: when flexPATH selected the flexPATH TDFs for the Plan, it did not receive any additional compensation, and thus did not deal with Plan assets in its own interest or have interests opposed to the Plan's, as would be necessary for plaintiffs to state a self-dealing violation.  And third, statutory exemptions permit the Plan's investment in the flexPATH TDFs, precluding plaintiffs' prohibited transaction claims altogether.  ERISA § 1108(b)(8) permits the "sale or purchase of an interest" in a collective trust maintained by a party in interest so long as (i) the transaction is expressly permitted by the plan document or by a fiduciary other than the collective trust sponsor, and (ii) the manager "receives not more than reasonable compensation." 29 U.S.C. § 1108(b)(8).  Here, the IMA expressly permits the investment in the flexPATH CITs, Vergara Decl. Ex. A (IMA) § 1, and it is plainly reasonable to receive *no* compensation for the investment.  Because the application of the exemption here is "clearly indicated" and "appear[s] on the face of the pleading," the Court may dismiss the prohibited transaction claims on that basis.  *See Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2015), *rev'd on other grounds*, 577 U.S. 308 (2016) (quotation omitted).

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court should dismiss plaintiffs' claims against NFP and flexPATH in their entirety.

1

2

3

Dated:  October 12, 2022

By:    _/s/ Catalina Vergara_
              Catalina Vergara

4

5

CATALINA VERGARA
O'MELVENY & MYERS LLP

6

7

Attorneys for Defendants
NFP Retirement, Inc., and flexPATH
Strategies, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. OF POINTS & AUTH. ISO NFP'S
AND FLEXPATH'S MTD PLTFS.' SAC
2:22-CV-01813-SB-GJS