UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MICHELLE MILLS et al.,

      Plaintiffs,

v.

MOLINA HEALTHCARE, INC. et al.,

      Defendants.

Case No. 2:22-cv-01813-SB-GJS

ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS SECOND AMENDED COMPLAINT [DKT. NOS. 94, 96] AND GRANTING MOTION TO STRIKE PLAINTIFFS' JURY TRIAL DEMAND [DKT. NO. 92]

     Plaintiffs are former employees of Defendant Molina Healthcare, Inc. (Molina) and its related entities who participated in an employee pension plan. Plaintiffs allege that Defendants—five fiduciaries of the plan—violated their obligations under the Employee Retirement Income Security Act (ERISA) by selecting untested, inferior, and expensive funds to offer to plan participants. Defendants move to dismiss Plaintiffs' Second Amended Complaint (SAC) for failure to state a claim and to strike Plaintiffs' jury demand. Dkt. Nos. 92, 94, 96. The Court held oral argument on November 18, 2022, and now concludes that the motion to strike should be granted and the motions to dismiss should be granted in part and denied in part.

## I.    <u>BACKGROUND</u>

     The Molina Salary Savings Plan (the Plan) is a defined-contribution, individual account, employee pension benefit plan. Dkt. No. 79 (SAC) ¶ 7. At the end of 2015, the Plan had more than $300 million in assets and more than 13,300 participants. *Id.* ¶ 10. By the end of 2020, the Plan's assets had grown to more than $740 million, and it had more than 15,600 participants. *Id.* Among the

participants during the relevant time are Plaintiffs Michelle Mills, Coy Sarell, Chad Westover, Brent Aleshire, Barbara Kershner, Paula Schaub, and Jennifer Silva, all of whom were formerly employed by Molina or one of its affiliates.  *Id*. ¶¶ 11–17. Like other participants, each Plaintiff had an individual account and directed contributions into one or more investment alternatives from a selection of options chosen by the Plan's fiduciaries.  *Id*. ¶ 35.

Molina is the sponsor and administrator of the Plan.  *Id*. ¶ 19.  Defendant The Board of Directors of Molina Healthcare Inc. (the Board) established Defendant The Molina Salary Savings Plan Investment Committee (the Committee) and delegated to the Committee the authority to select and monitor investment options and investment managers, administer the Plan, and establish an Investment Policy Statement (IPS) for the Plan.  *Id*. ¶ 20.  Molina, the Board, and the Committee (collectively, the Molina Defendants)[1] therefore acted as fiduciaries for purposes of ERISA.  *Id*. ¶¶ 19–21.

In 2010, the Molina Defendants appointed Defendant NFP Retirement, Inc. (NFP) as the Plan's investment advisor.  *Id*. ¶ 23.  Effective April 1, 2016, the Molina Defendants appointed Defendant flexPATH Strategies, LLC (flexPATH) as the Plan's discretionary investment manager with authority to select the Plan's Qualified Default Investment Alternative (QDIA).  *Id*. ¶ 24.

Plaintiffs' allegations largely focus on the flexPATH Index target date funds (the flexPATH Funds) offered by the Plan beginning in 2016.  A target date fund is a diversified investment vehicle that automatically rebalances the portfolio over time to become more conservative as the participant gets closer to a target retirement date.  *Id*. ¶ 42.  The flexPATH Funds are collective investment trusts maintained by Wilmington Trust, N.A., a bank that serves as trustee.  *Id*. ¶ 43. flexPATH is the subadvisor for the funds, providing investment advisory services and exercising authority over the investment strategies for the funds.  *Id*. ¶ 44.

The flexPATH Funds offered a combination of features that Plaintiffs allege "had never been used in any target date fund solution offered in the marketplace"—namely, the provision of three separate glidepaths varying by risk

---

[1] Plaintiffs generally group the Molina Defendants together without distinguishing among them.  The Molina Defendants do not challenge this grouping, and the Court assumes for purposes of these motions that the Molina Defendants acted together.

tolerance for each target retirement date. *Id*. ¶¶ 46–47. Thus, for example, flexPATH offered three separate target date funds for the 2035 target retirement date: aggressive, moderate, and conservative. *Id*. ¶ 47. Plaintiffs allege that providing the three options increased complexity without adding value, as evidenced by the fact that 99% of the Plan's funds in the flexPATH Funds in 2016 were invested in the moderate series, and by 2019 that figure was still 97%. *Id*. ¶¶ 47, 86. Plaintiffs also allege that the flexPATH Funds were flawed because unlike the common practice of offering target funds in 5-year intervals, they were divided into 10-year intervals, leaving significant gaps. *Id*. ¶ 49. The flexPATH Funds were "off-the-shelf" funds that were not customized in any way to the Plan. *Id*. ¶ 50. Moreover, flexPATH invested the flexPATH Funds in existing BlackRock LifePath Index funds; according to Plaintiffs, "flexPATH merely repackaged BlackRock's existing product and sold it to investors under its own name but at a higher fee." *Id*. ¶ 54.

NFP is closely affiliated with flexPATH. NFP's parent corporation, CEO, and president collectively own flexPATH, and flexPATH and NFP are headquartered in the same office and operated by the same corporate officers. *Id*. ¶ 61. The flexPATH Funds are proprietary investment products of NFP and flexPATH. *Id*. The flexPATH Funds were first launched in December 2015 and January 2016. *Id*. ¶ 45. At that time, flexPATH's experience managing assets was very limited; it had only registered as an investment advisor in February 2015 and begun managing assets in June 2015. *Id*. Adding the flexPATH Funds to the Plan benefitted both NFP and flexPATH by immediately transferring more than $200 million into their funds, substantially increasing NFP and flexPATH's assets and enhancing the marketability of the new funds. *Id*. ¶ 68. Plaintiffs allege that individual NFP and flexPATH advisors also received additional compensation, including bonuses and other incentives, from the investment in the flexPATH Funds. *Id*. ¶ 69.

At some point before the flexPATH Funds existed (i.e. before January 2016), NFP advised the Molina Defendants to add them to the Plan's options, and the Molina Defendants approved. *Id*. ¶¶ 64, 70. The Molina Defendants hired flexPATH as the Plan's discretionary investment manager in April 2016, and the flexPATH Funds were added to the Plan on May 16, 2016. *Id*. ¶¶ 24, 64. The new flexPATH Funds replaced the Vanguard Target Retirement funds, which were established and well-performing target date funds. *Id*. ¶ 66. More than $210 million—nearly half the Plan's assets—were transferred to the flexPATH Funds in 2016, and by the end of 2019, that number had risen to more than $360 million, representing 57% of the Plan's assets. *Id*.

When recommending the flexPATH Funds to the Molina Defendants, NFP did not disclose that the flexPATH Funds were invested in underlying BlackRock funds or that flexPATH charged additional fees on top of those charged by the underlying BlackRock funds. *Id.* ¶¶ 55, 60.

Plaintiffs allege that Defendants' adoption of the flexPATH Funds was imprudent because (1) the funds used a "novel and untested management style," (2) flexPATH lacked experience or an established record as an investment manager, (3) the funds did not even have a full quarter of actual performance history, while prudent fiduciaries require at least five years of actual performance, (4) Defendants did not conduct an adequate investigation, (5) including the flexPATH Funds in the Plan violated the IPS, which required the Committee to compare selected investments to other comparable options, and (6) the Vanguard funds that were replaced by the flexPATH Funds consistently outperformed their comparators, and the Molina Defendants had not expressed any loss of confidence in the Vanguard funds. *Id.* ¶¶ 67, 71, 73–81, 87.  Plaintiffs also allege that the flexPATH Funds performed poorly, but Defendants did not remove them from the Plan until October 2020, when the Molina Defendants terminated their relationship with flexPATH and hired a new consultant to replace NFP. *Id.* ¶¶ 89–90.  During the time the Plan used the flexPATH Funds, other comparable target date funds, including those offered by Vanguard and Fidelity, performed better and charged lower fees. *Id.* ¶¶ 95–103.

Plaintiffs also allege that the Molina Defendants and NFP failed to take advantage of lower-cost shares of various offered funds that would have been available to the Plan as a large investor. *Id.* ¶¶ 107–117.  For example, Defendants did not transition to lower-cost M shares for the flexPATH Funds until December 2018 even though those shares were available beginning in February 2018. *Id.* ¶ 116.  Plaintiffs provide other examples of higher-cost shares of mutual funds that the Plan maintained during times when lower-cost options were available, and they allege that the Plan's use of the higher-cost share classes caused participants to lose more than $1 million. *Id.* ¶¶ 117–18.

On March 18, 2022, Plaintiffs filed this putative class action against Molina. Dkt. No. 1.  On July 21, after Molina moved to dismiss the complaint, Plaintiffs filed a First Amended Complaint (FAC) that added claims against the other Molina Defendants and NFP.  Dkt. No. 43.  Defendants moved to dismiss the FAC, and on September 9, Plaintiffs filed the SAC, adding claims against flexPATH.  Dkt. No. 79.  The SAC alleges the following claims:  (1) against all Defendants, breach of

fiduciary duties related to the flexPATH Funds; (2) against the Molina Defendants and NFP, breach of fiduciary duties related to the use of higher-cost versions of Plan investments, (3) against Molina and the Board, failure to monitor fiduciaries, (4) against all Defendants, prohibited transactions related to the flexPATH Funds, and (5) against the Molina Defendants, breach of fiduciary duties related to the selection of flexPATH. *Id*. Defendants again move to dismiss all of Plaintiffs' claims against them. Dkt. Nos. 94, 96.

## II.   MOTION FOR LEAVE TO PARTICIPATE AS AMICUS

The U.S. Chamber of Commerce filed a motion to participate as an amicus curie, together with a proposed amicus brief in support of the motions to dismiss. Dkt. No. 98. The Court initially indicated that it was inclined to consider the brief. Dkt. No. 99. Plaintiffs then filed an opposition strenuously objecting to the Court's consideration of the Chamber's brief, Dkt. No. 102, and the Court deferred deciding whether the brief would be helpful, Dkt. No. 103 at 1 ("[T]he Court defers ruling on whether to consider the Chamber's amicus brief. If the Court does consider the brief, it will do so only to the extent it finds the Chamber's arguments relevant and helpful.").

District courts have broad discretion to allow amicus participation and may do so when the amicus shows that its views are useful or otherwise desirable to the court. *WildEarth Guardians v. Haaland*, 561 F. Supp. 3d 890, 905 (C.D. Cal. 2021). The Court has reviewed the Chamber's proposed brief, which warns of the harm to participants and beneficiaries caused by a recent surge in ERISA litigation and urges the Court to apply the pleading standard required by Supreme Court precedent. The Court endeavors to follow binding precedent irrespective of the policy arguments raised by the Chamber. Because the Court has reviewed the Chamber's brief but has not altered its analysis as a result, whether it grants the Chamber leave to participate as an amicus has little practical impact. Nevertheless, because the Court does not find the Chamber's arguments useful, the motion is DENIED.

## III.   REQUESTS FOR JUDICIAL NOTICE

In support of their motions, Defendants filed separate requests for the Court to take judicial notice of various exhibits (RJNs). The Molina Defendants ask the Court to consider two documents—the April 1, 2016 Investment Manager Agreement (IMA) between Molina and flexPATH and the 2012 IPS. Dkt. No. 95. NFP and flexPATH's request is much broader. They ask the Court to take judicial

notice of 17 documents totaling nearly 300 pages.  Dkt. No. 96-1.  These exhibits include Plan-related documents (including the IMA and IPS that are the subject of the Molina Defendants' RJN), financial information about the flexPATH funds and other target date funds, and government publications.  Plaintiffs object to the Court's consideration of many of these documents and to its acceptance of the truth of their underlying facts to contradict Plaintiffs' allegations.  Dkt. No. 109.

Courts generally may not consider material outside the complaint when adjudicating a Rule 12(b)(6) challenge to the adequacy of the pleadings.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  There are two exceptions that allow courts to consider additional materials:  the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201.  *Id.*  The two doctrines operate differently and for different reasons.  *Id.*  Defendants invoke both doctrines in their "request for judicial notice" without always distinguishing them clearly.

Incorporation by reference is "a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Id.* at 1002.  It allows courts to consider documents that are attached to the complaint, that the complaint references extensively, or that "form[] the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  This "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja*, 899 F.3d at 1002.  The mere mention of a document in the pleadings is generally insufficient to allow incorporation by reference.  *Id.*  On the other hand, in very rare occasions, the doctrine may allow consideration of materials that are not referenced in the complaint but that are necessarily a part of the complaint.  *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005), and explaining that consideration of photos and captions surrounding allegedly defamatory content was permitted because defamation claim necessarily depended on context).  But the Ninth Circuit has cautioned against considering documents that "merely create[] a defense to the well-pled allegations in the complaint," observing that such submissions unfairly preclude the plaintiff from responding to the defendant's version of the facts.  *Id.* at 1002–03.

Judicial notice, unlike incorporation by reference, is established by rule.  It allows the Court to "judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Although courts do not always carefully police the use of these two doctrines, some have noted troubling trends in their abuse by defendants.   For example, Judge Guilford observed in 2016:

> Nowadays, it seems more and more common to come across Rule 12(b)(6) motions to dismiss filed with hundreds of pages of attachments, authenticated through attorney declarations.  These declarations will be coupled with a request for judicial notice.  That judicial notice will often conflate judicial notice and incorporation by reference.  Too often, these mountainous motions make arguments more appropriate for a motion for summary judgment or some other later stage of the case.  Nonetheless, with little to lose, too many defense attorneys are tempted by the puncher's chance offered by such a motion.  At worst, they lose a generally inexpensive motion. But at best, they can knock their opponent out cold, right at the beginning of round one.

*Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016). The Ninth Circuit in *Khoja* expressed similar concerns about "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine," which "can lead to unintended and harmful results":

> Defendants face an alluring temptation to pile on numerous documents to their motions to dismiss to undermine the complaint, and hopefully dismiss the case at an early stage.  Yet the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery.

899 F.3d at 998.  Applying its more rigorous standard, the Ninth Circuit held that the district court had abused its discretion by considering several exhibits that were not properly incorporated by reference or subject to judicial notice.  *Id.* at 1004–07.

Of the 17 documents that NFP and flexPATH ask the Court to consider, only three appear to be expressly referenced in the SAC:  the IMA, the IPS, and the Investment Committee Charter, which are attached as Exhibits A, E, and F to NFP's RJN.   Dkt. Nos. 96-3, 96-7, 96-8.  Plaintiffs allege at length that Defendants violated various provisions of the IPS, which the SAC quotes, and these alleged violations are central to some of their claims.  *E.g.*, Dkt. No. 79

7

¶¶ 75–79, 133.  The IPS is therefore properly considered part of the pleadings under the incorporation-by-reference doctrine.  The IMA between Molina and flexPATH is less prominent—it is mentioned only twice and not quoted in the SAC—but it provides the basis for Plaintiffs' claims against flexPATH (which is why Plaintiffs did not sue flexPATH until learning of the IMA) and also effectuates the selection of flexPATH by Molina that Plaintiffs' challenge in Count V.  *Id*. ¶¶ 27, 69.  Thus, the IMA appears to be properly incorporated into the pleadings by reference.

Plaintiffs only briefly mention the Charter and do not quote any part of it in the SAC; they merely allege that the Board established the Committee through the Charter and delegated authority to the Committee "[i]n accordance with the Charter."  *Id*. ¶ 20.  Plaintiffs do not allege any breach of the Charter, and Defendants have not explained how the Charter is integral to Plaintiffs' claim or otherwise shown that the incorporation-by-reference doctrine applies to the Charter.

Exhibits B, C, and D to the RJN are agreements between Molina and NFP.  Dkt. Nos. 96-4, 96-5, 96-6.  Exhibit G is the agreement that effectuated the Plan's investment in the flexPATH Funds.  Dkt. No. 96-9.  While all of these documents are relevant to Plaintiffs' claims, they are not specifically referenced or quoted in the SAC.  Relevance, of course, is not enough.  Defendants have not shown that any of these exhibits are so integral to Plaintiffs' claims that they should be considered part of the pleadings, rather than evidence that may be considered on summary judgment or at trial, when Plaintiffs will have an opportunity to produce their own evidence in response.  *See Khoja*, 899 F.3d at 1003 ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit:  unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.").

Exhibit N to the RJN is a 2022 Target-Date Strategy Landscape apparently published by Morningstar.  Dkt. No. 96-16.  Defendants suggest that this document may be considered because the SAC cites other Morningstar publications and "courts routinely consider documents like this that are referenced in the complaint and that form the basis of the plaintiff's claims."  Dkt. No. 96-1 at 7.  But the 2022 publication is *not* referenced in the SAC, and Defendants provide no explanation for why it forms the basis of Plaintiffs' claims.  There is no apparent basis for

considering Exhibit N to be part of the pleadings under the incorporation-by-reference doctrine.

Defendants do not contend that the remaining exhibits in the RJN should be incorporated by reference. Instead, they argue that the exhibits—publicly available financial and government documents—are subject to judicial notice. But judicial notice applies to *facts*, not to exhibits. Fed. R. Evid. 201(b). As Plaintiffs correctly argue, the RJN asks to Court to consider hundreds of pages of exhibits without identifying any particular facts that are properly subject to judicial notice. *See Khoja*, 899 F.3d at 999 (observing that courts cannot take judicial notice of disputed facts contained in public records and that a court must "consider—and identify—which fact or facts it is noticing" from a document that is susceptible to judicial notice). Defendants argue in their reply that even though their RJN does not identify specific facts for which they seek judicial notice, their motion to dismiss does. Dkt. No. 112 at 3. But the Court declines Defendants' invitation to sift through dozens of pages of briefing on their motion to dismiss to attempt to determine the scope of each of Defendants' requests for judicial notice. Defendants will have the opportunity on summary judgment or at trial to produce evidence in support of their arguments. They have not shown at this stage any basis for the Court to consider their hundreds of pages of exhibits in its Rule 12(b)(6) analysis.

Defendants' RJNs are GRANTED as to the IPS and the IMA, which are properly deemed incorporated by reference as part of the SAC. The RJNs are otherwise DENIED.

## IV.   **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at

555).  Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

## V.    ANALYSIS

### A.    Count One

Plaintiffs allege in Count One that all Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by adding and retaining the flexPATH Funds in the Plan.  Dkt. No. 79 ¶¶ 128–36.  Defendants do not dispute that they are fiduciaries for purposes of ERISA.  ERISA requires that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> (A)    for the exclusive purpose of:
>
> > (i)    providing benefits to participants and their beneficiaries; and
> >
> > (ii)    defraying reasonable expenses of administering the plan;
>
> (B)    with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> . . . and
>
> (D)    in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a)(1).  Plaintiffs allege that all Defendants violated their duty of prudence under § 1104(a)(1)(B) and their duty to comply the IPS's requirements for the selection of Plan investments under § 1104(a)(1)(D).  Plaintiffs also allege that NFP and flexPATH violated their duty of loyalty under § 1104(a)(1)(A).

     1.     Molina Defendants

     a.     Statute of Repose

The Molina Defendants first argue that any claim against them for selecting the flexPATH Funds is time-barred by ERISA's statute of repose, which generally requires claims to be brought within "six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation." 29 U.S.C. § 1113(1).[2]  Both sides focus only on the timing of the "last action which constituted a part of the breach or violation," with Defendants arguing that Molina engaged in no relevant acts during the repose period and Plaintiffs arguing that "the last act which constituted a breach or violation occurred on May 16, 2016." Dkt. Nos. 94 at 9, 107 at 7.

Plaintiffs filed this suit against Molina on March 18, 2022, so their claim is timely only if it accrued after March 18, 2016.  Because the SAC alleges that the Molina Defendants approved the flexPATH Funds before the funds existed, Dkt. No. 79 ¶ 70, and that the flexPATH Funds were launched in January 2016, id. ¶ 68, Plaintiffs necessarily allege that the Molina Defendants selected the flexPATH Funds no later than January 2016, outside the repose period.  Plaintiffs do not dispute this but argue that the "last action which constituted a part of the breach or violation," 29 U.S.C. § 1113(1), was the actual addition of the flexPATH Funds to the Plan in May 2016, within the repose period.

The Molina Defendants are correct that if they were uninvolved in the addition of the flexPATH Funds and took no relevant action after January 2016, the claims against them are untimely regardless of actions taken by flexPATH to add the flexPATH Funds in May 2016.  *Tussey v. ABB, Inc.*, on which Plaintiffs rely, is not to the contrary; in that case, the defendant who made the decision to remove funds outside the repose period was also the actor who removed the funds within the repose period.  746 F.3d 327, 337 (8th Cir. 2014).  Plaintiffs cite no authority suggesting that a fiduciary whose relevant acts are all outside the statute

---

[2] The statute requires plaintiffs to bring suit within three years of learning of a breach (if sooner than the six-year repose period) and creates exceptions for fraud and concealment, but the parties do not suggest that any of those provisions are relevant here.

of repose can nevertheless be liable because another party acted within the repose period.

The Molina Defendants' correct interpretation of the law does not entitle them to dismissal, however, because their argument relies on a faulty factual premise. It is not clear on the face of the pleadings, as they suggest, that the Molina Defendants did not act within the repose period to add the flexPATH Funds. To the contrary, Plaintiffs repeatedly allege in the SAC that the Molina Defendants added the funds—not just that they made the decision to do so. *E.g.*, Dkt. No. 79 ¶¶ 66 ("In adding the flexPATH Index target date funds to the Plan, Molina and flexPATH replaced the Vanguard Target Retirement target date funds . . . ."), 67 ("Molina and flexPATH added the flexPATH Index target date funds to the Plan . . . ." and "Molina and flexPATH placed flexPATH's target date funds in the Plan on or about May 16, 2016."). Defendants' disagreement with these allegations is not a proper basis for dismissal under Rule 12(b)(6). Defendants argued at the hearing that Plaintiffs' allegations of Molina's involvement in the addition of the flexPATH Funds are conclusory and contradicted by the allegations about their delegation of responsibilities to flexPATH, but they neither cite any authority precluding a plan administrator from involving itself in decisions it has delegated to an advisor nor any allegations in the SAC indicating that Molina gave up its ability to add funds to the Plan when it contracted with flexPATH. Moreover, the delegation of duties to a co-fiduciary does not insulate a fiduciary from liability for acts in which it directly participated. *See* 29 U.S.C. § 1105(a)(1) (providing that fiduciary is liable for another fiduciary's breach of duty "if he participates knowingly in . . . an act or omission of such other fiduciary, knowing such act or omission is a breach"); *id.* § 1105(c)(2)(B) (providing that allocation of fiduciary duties to others does not shield named fiduciary from liability "to the extent . . . the named fiduciary would otherwise be liable in accordance with subsection (a)"). At this pleading stage, Molina has not shown that the Court should disregard or construe as false Plaintiffs' allegation that Molina added the flexPATH Funds to the Plan in May 2016.

Because the Court must accept the well-pleaded allegations in the SAC as true and view them in the light most favorable to the Plaintiffs, it cannot conclude at this stage that Plaintiffs' claim against the Molina Defendants in Count One is time-barred.

b.     29 U.S.C. § 1105(d)

The Molina Defendants next argue that they cannot be held liable for retaining the flexPATH Funds because they delegated discretionary authority for that decision to flexPATH, and ERISA shields them from liability.[3]  *See* 29 U.S.C. § 1105(d)(1).  Section 1105(d)(1) provides:  "If an investment manager or managers have been appointed under section 1102(c)(3) of this title, then . . . *no trustee* shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager."  *Id*. (emphasis added).

Plaintiffs respond that § 1105(d)(1) provides no protection for the Molina Defendants because they were not trustees.  The SAC alleges that Wilmington Trust is the trustee of the funds, Dkt. No. 79 ¶ 43, and it is undisputed that none of the Molina Defendants was a trustee.  The Molina Defendants argue that § 1105(d)(1) should be interpreted to extend protection to other named fiduciaries beyond trustees.  A few district court decisions have read the statute in that way, finding it "logical" and consistent with legislative history to extend protection to fiduciaries who are not trustees.  *Lauderdale v. NFP Ret., Inc. (Lauderdale II)*, No. SA CV 21-301 JVS (KESx), 2022 WL 422831, at *7 (C.D. Cal. Feb. 8, 2022); *Perez v. WPN Corp.*, No. CV 14-1494, 2017 WL 2461452, at *7–10 (W.D. Pa. June 7, 2017); *Harris Tr. & Sav. Bank v. Salomon Bros.*, 832 F. Supp. 1169, 1178 (N.D. Ill. 1993).  These cases also relied on language in *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987), but "[b]ecause there was an actual named trustee in [*Lowen*] who appointed . . . the investment manager, the *Lowen* Court did not directly address the question of whether a named fiduciary who was not a trustee is protected by the safe harbor provision."  *Perez*, 2017 WL 2461452, at *8.

---

[3] To support this argument, the Molina Defendants quote from the IMA.  Even if the Court did not consider the IMA, the SAC itself alleges that "[e]ffective April 1, 2016, Molina appointed flexPATH as the Plan's discretionary investment manager under 29 U.S.C. §1002(38) and delegated to flexPATH the authority to select the Plan's [QDIA]" and that "flexPATH assumed the role of the Plan's discretionary investment manager and made the decision to include its proprietary flexPATH funds in the Plan."  Dkt. No. 79 ¶¶ 24, 44.  Thus, it is evident from the face of the pleadings that flexPATH was an investment manager for the Plan, and Plaintiffs do not suggest otherwise.

The Court is unpersuaded by these non-binding decisions.  ERISA defines fiduciaries more broadly than trustees, 29 U.S.C. § 1002(14)(a) (defining "fiduciary" as "including, but not limited to, any administrator, officer, trustee, or custodian"), and distinguishes between trustees and fiduciaries and their duties, including in § 1105 itself, *see, e.g.*, § 1105(c)(1) ("The instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan.").  Section 1105(d)(1), however, provides a shield from liability only for "trustees."  This language is unambiguous—especially in light of the distinctions between trustees and fiduciaries elsewhere in the statute—and none of the authorities extending its protections to non-trustee fiduciaries provides a plausible reading of "trustees" that encompasses other fiduciaries.  While the cases raise conceivable arguments that such extensions would be logical and consistent with congressional intent, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).  Accordingly, the Court is unpersuaded that § 1105(d)(1)'s safe harbor for "trustees" requires dismissal of the claims against the Molina Defendants, who were not trustees.

c.      Plausibility of Allegations

The Molina Defendants further argue that Plaintiffs have not plausibly alleged that the Molina Defendants imprudently monitored or retained the flexPATH Funds.  But this argument does not address Plaintiffs' allegations in Count One that the Molina Defendants imprudently selected the flexPATH Funds (which the Molina Defendants simply contend are time-barred) or failed to comply with the terms of the ISP in violation of § 1104(a)(1)(d).  Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim." *Franklin v. Midwest Recovery Sys., LLC*, No. 8:18-CV-02085-JLS-DFM, 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (collecting cases).  Thus, even if the Molina Defendants are correct about the implausibility of some of Plaintiffs' allegations, they are not entitled to dismissal of Count One.  The Court therefore declines to determine whether portions of Count One would state a claim if alleged independently.

2.    NFP

NFP argues that the claim against it in Count One should be dismissed for a several reasons, including that it is time-barred.  Plaintiffs allege that NFP advised the Molina Defendants to add the flexPATH Funds to the Plan, in violation of its duties of loyalty and prudence.  As discussed above, the decision to add the flexPATH Funds is alleged to have occurred no later than January 2016, outside the six-year repose period.  Unlike the Molina Defendants, however, NFP is not alleged to have been involved in the actual addition of the flexPATH Funds within the repose period.  Nor does the SAC allege any other actions taken by NFP within the repose period related to the flexPATH Funds.  Because the "last action" alleged to have been taken by NFP "which constituted a part of [its] breach or violation" occurred more than six years before Plaintiffs filed suit in March 2022 (and even longer before Plaintiffs added claims against NFP), Plaintiffs' claim against NFP in Count One is time-barred.  29 U.S.C. § 1113(1).[4]  Nor have Plaintiffs alleged any non-conclusory facts plausibly showing that NFP engaged in acts within the statute of repose that could make it liable under § 1105(a) for its co-fiduciaries' breaches.  Count One is therefore dismissed against NFP.

3.    flexPATH

a.    Statute of Repose

In a single sentence, flexPATH argues that Plaintiffs' claim against it for selection of the flexPATH Funds is untimely for the same reasons argued by NFP.  Dkt. No. 96 at 24–25.  But the timeliness analysis as to flexPATH is more complicated.

First, it is not immediately obvious which date constitutes "commence[ment]" of the action for purposes of the six-year repose period in § 1113(1).  Plaintiffs filed their original complaint against Molina on March 18, 2022.  Dkt. No. 1.  They filed their FAC on July 21, 2022, but stipulated that it was deemed filed on May 13.  Dkt. Nos. 33, 42, 43, 47.  Plaintiffs did not allege claims against flexPATH until they filed their SAC on September 9.  Dkt. No. 79.  In their

---

[4] Plaintiffs again rely on *Tussey*, 746 F.3d 327, but as observed above, neither that case nor any other identified by Plaintiffs holds that an action by a different defendant within the repose period can render a claim timely against a defendant whose last violative act occurred outside the repose period.

opposition, Plaintiffs argue that the claims against flexPATH relate back to May 13, 2022, when the FAC was deemed filed.  Dkt. No. 108 at 18.  In its reply, flexPATH disagrees but also argues that even if Plaintiffs' claims relate back to May 13, they would still be untimely because a Participation Agreement dated March 31, 2016 implemented the selection of the flexPATH Funds.  Dkt. No. 111 at 14.

A defense that a claim is time-barred generally may only be raised in a Rule 12(b)(6) motion if it is evident from the face of the complaint.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also CFTC v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) ("[D]ismissal based on an affirmative defense is permitted when the *complaint* establishes the defense.").  The Court has determined that the Participation Agreement on which flexPATH relies is not properly incorporated by reference or subject to judicial notice, and the SAC alleges that flexPATH added the flexPATH Funds to the Plan on May 16, 2016.  Dkt. No. 79 ¶ 67.  Thus, if the claims relate back to the initial filing of the FAC on May 13, 2022, they are timely.

It is not clear on the face of the pleadings that Plaintiffs' claims against flexPATH do not relate back to the FAC.  For an amended complaint to relate back under Rule 15(c)(1)(C), "(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; [and] (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it."  *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1202 (9th Cir. 2014).  flexPATH baldly asserts that it did not have notice of the suit on May 13 and that it and NFP operate as separate corporate entities, but it does not cite to the pleadings or to anything else in the record to support these assertions.  The allegations that NFP and flexPATH are closely related and share the same officers and headquarters, *id*. ¶ 61, make it plausible that flexPATH had notice of the claims against NFP.  And the SAC explains that flexPATH was not named in the FAC because Molina initially represented to Plaintiffs that it had no agreement with flexPATH for discretionary investment manager services.  *Id*. ¶ 27.  Thus, it is not clear from the SAC that Plaintiffs' claim against flexPATH is time-barred in whole or in part.

      b.    Plausibility

flexPATH also challenges the sufficiency of Count One on the merits, arguing that Plaintiffs have not plausibly alleged that flexPATH violated either its

duty of prudence or its duty of loyalty.  ERISA fiduciaries must act for the exclusive benefit of plan beneficiaries and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(A), (B); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).  The duty of prudence is necessarily "context specific" because it depends on the "circumstances . . . prevailing." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  To evaluate both the duty of prudence and the duty of loyalty, courts must consider not only the merits of the transactions, but also "the thoroughness of the investigation into the merits of the transaction." *Howard*, 100 F.3d at 1488. "[E]ven in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options" and to remove imprudent investments within a reasonable time. *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022).  The duty of loyalty creates a heavier burden when a fiduciary engages in a self-dealing transaction:  "When it is possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries." *Howard*, 100 F.3d at 1488– 89 (cleaned up).

flexPATH, relying in part on exhibits outside the pleadings, raises a variety of challenges to the sufficiency of various allegations of imprudent or disloyal conduct, arguing that each allegation is insufficient to demonstrate a fiduciary breach.  Regardless of whether those individual allegations plausibly establish fiduciary breaches in isolation, the Court concludes that Plaintiffs' allegations as a whole adequately state a claim for breach of flexPATH's duties of prudence and loyalty.  The SAC alleges that flexPATH replaced high-performing Vanguard funds offered in the Plan with its own worse-performing and more expensive funds (which in turn simply repackaged poorly performing BlackRock funds for a higher price) and that the new funds lacked adequate history for flexPATH to evaluate their suitability according to the requirements of the IPS.  Plaintiffs also allege that flexPATH had a conflict of interest when presenting its own funds for use in the Plan, and that the transfer of hundreds of millions of dollars into flexPATH's funds boosted their marketability and increased compensation to individual investment managers.  Similar allegations—including allegations specifically challenging flexPATH's adoption of its own funds to replace Vanguard funds in a similar plan—have been found sufficient to survive dismissal. *Lauderdale v. NFP Ret., Inc.* (*Lauderdale I*), No. SA CV 21-301 JVS (KESx), 2021 WL 3828646, at *3–5

(C.D. Cal. Aug. 18, 2021); *Lauderdale II*, 2022 WL 422831, at *12–14.  This Court likewise finds that Plaintiffs have plausibly alleged that flexPATH breached its duties of prudence and loyalty when adding and retaining its own funds. flexPATH has not shown that it is entitled to dismissal of Count One.

## B.    Count Two

Plaintiffs allege in Count Two that the Molina Defendants and NFP breached their duty of prudence by selecting and retaining higher-cost shares of numerous Plan investment options while lower-cost versions were readily available to the Plan based on its size.  Dkt. No. 79 ¶¶ 137–42.  Plaintiffs specifically identify a dozen examples of such funds in addition to the flexPATH Funds, for which the Plan retained a higher-cost share class from February through December of 2018 while lower-cost shares were available.  *Id.* ¶¶ 116–17.

### 1.    Molina Defendants

The Molina Defendants argue that Plaintiffs' allegations amount only to a claim that less expensive share classes for some investments were available for short windows of time, suggesting that the Molina Defendants did actively monitor the funds and switch to cheaper share classes within a reasonable time after they became available.[5]

In the last decade, the Supreme Court and the Ninth Circuit have clarified that failure to select the cheapest available share classes may constitute a breach of the fiduciary duty of prudence under ERISA.  "Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan."  *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015). ERISA fiduciaries' duty of prudence includes a continuing duty to monitor investments and remove imprudent ones, which requires them to consider their ability "to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected."  *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016) (en banc).  But "the mere inclusion of a fund with an expense ratio that is higher than

---

[5] The Molina Defendants also again invoke § 1105(d)(1) to argue that they have no liability for any acts after Molina appointed flexPATH as an investment manager on April 1, 2016.  As explained above, because the Molina Defendants were not trustees, § 1105(d)(1) is inapposite.

that of the lowest share class" is not enough, standing alone, to state a claim for breach of the duty of prudence. *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *11 (N.D. Cal. Aug. 29, 2016). In a recent case involving similar claims (brought by Plaintiffs' counsel) challenging a plan's investments in flexPATH funds, the court explained that a viable claim requires not only the availability of substantially identical lower-cost investments, but also an imprudent process:

> [T]o survive a motion to dismiss, there are two criteria that a plaintiff must satisfy. First, alleging lower-cost alternatives alone is insufficient – the alternatives must be "substantially identical." Second, because of the myriad distinctions between financial products and the numerous reasons why a fiduciary may choose to include one investment vehicle instead of another, there must be some allegation of an imprudent process.

*Lauderdale II*, 2022 WL 422831, at *17.

In *Lauderdale*, the court initially dismissed the plaintiffs' claim for inclusion of higher-cost shares in the plan because "[p]laintiffs must do more than allege that there are some funds that could have been replaced by lower-cost options," and the mere allegation that lower-cost shares were available was not enough to create a reasonable inference that the fiduciaries' process for reviewing the funds was deficient. *Lauderdale I*, 2021 WL 3828646, at *8–9 (reviewing cases). But the court found the plaintiffs' amended pleadings sufficient after they added "numerous specific allegations of an imprudent process," including meeting records that indicated the plan administrators "did not inquire about investing directly with the underlying managers, nor did they consider investing in the lower-cost shares." *Lauderdale II*, 2022 WL 422831, at *17.

As in *Lauderdale*, Plaintiffs adequately allege that—at least at some relevant times—there were available lower-cost versions of essentially identical investment options included in the Plan that Defendants could have taken advantage of. But Plaintiffs do not identify any allegations of specific deficiencies in the Molina Defendants' review process nor any facts from which the Court can plausibly infer such deficiencies, instead arguing that the existence of the lower-cost options is sufficient. As explained above, it is not. *Lauderdale II*, 2022 WL 422831, at *17; *see also White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017) ("[W]hat is still missing from the FAC are factual allegations sufficient to create a plausible inference that defendants' process of

selecting funds and their monitoring of the funds was imprudent"), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).[6] Accordingly, Plaintiffs' claim against the Molina Defendants in Count Two is dismissed.

    2.    NFP

    NFP also argues that Plaintiffs have failed to plausibly allege any deficiency in their process for providing advice about the investment options in the Plan. Plaintiffs respond that the Plan's use of higher-cost share options is sufficient to state a claim.  But in the absence of any allegations showing deficiencies in NFP's process or specific advice given to the Plan—or any specific allegations that NFP even advised the Plan to select the higher-cost options identified in the SAC—Plaintiffs have not plausibly alleged that NFP breached its duty of prudence in connection with the Plan's selection of higher-cost share classes.

    Plaintiffs also summarily argue that NFP is liable as a co-fiduciary for the Molina Defendants' breach, relying on *Lauderdale II*, 2022 WL 422831, at *18 (holding that plaintiffs stated a claim against NFP based on co-fiduciary liability even though they "have not stated a claim to the extent that it is premised on NFP's direct responsibility for the selection and retention of the higher cost investment options.").  But unlike in *Lauderdale II*, Plaintiffs here have not alleged a plausible claim against the Molina Defendants in Count Two.  Thus, their reliance on co-fiduciary liability is unavailing.  Count Two is dismissed.

---

[6] In a recent unpublished memorandum decision, which neither side addresses in connection with the Molina Defendants' motion, the Ninth Circuit reversed dismissal of a claim for breach of fiduciary duty where the defendant's choice of more expensive retail share classes resulted in more than $30 million in extra fees. *Kong v. Trader Joe's Co.*, No. 20-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022).  The court did not address whether the plaintiffs alleged—or needed to allege—deficiencies in the decision-making process, nor did it discuss or distinguish the Ninth Circuit's decision affirming dismissal in *White*.  Moreover, the scale of the loss in *Kong* may provide a factual distinction; Plaintiffs here allege only $1 million in losses as a result of the offering of more expensive share classes.

## C.    Count Three

Plaintiffs allege in Count Three that Molina and the Board violated their fiduciary obligation to monitor the other fiduciaries to whom they delegated authority to make decisions for the Plan.  Dkt. No. 79 ¶¶ 143–53.  It is undisputed that such claims are derivative and require an underlying violation.  The Molina Defendants first argue that the claim for failure to monitor fails because Plaintiffs have failed to state an underlying ERISA violation.  This argument is unavailing because the Court has found that some of the underlying claims survive dismissal.

Some courts have determined that the mere existence of a viable underlying claim is sufficient to deny dismissal of a claim for failure to monitor.  *See Munro v. Univ. of S. California*, No. 2:16-CV-06191-VAP-EX, 2019 WL 4543115, at \*4 (C.D. Cal. Aug. 27, 2019) ("The parties agree that Plaintiffs' seventh claim is derivative of Plaintiffs' claims for breach of fiduciary duty.  As Plaintiffs' claims for breach of the duty of prudence have survived the Motion to Dismiss, the Court DENIES Defendants' Motion as to Plaintiff's seventh claim.") (citation omitted).  The Molina Defendants persuasively argue that more is needed because the duty to monitor is narrower than the appointed fiduciaries' underlying obligations.  *See In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128, 1144 (C.D. Cal. 2009) ("Under ERISA, fiduciaries have a limited duty to monitor and review the performance of their appointed fiduciaries.  In particular, appointing fiduciaries should review the performance of their appointees at reasonable intervals and in such a manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan' and statutory standards." (cleaned up)), *aff'd*, 623 F.3d 870 (9th Cir. 2010), *abrogated on other grounds by Fifth Third Bancorp*, 573 U.S. 409.

The SAC contains allegations regarding the Molina Defendants' failure to monitor NFP and flexPATH that, while somewhat conclusory, provide Defendants with notice of the nature of Plaintiffs' monitoring claim.  For example, Plaintiffs allege that the Molina Defendants "fail[ed] to monitor their appointees and delegees, to evaluate their performance, or to have a system in place for doing so, and st[ood] idly by as the Plan suffered enormous losses as a result of their appointees' imprudent actions and omissions."  Dkt. No. 79 ¶ 149.  Such allegations, in conjunction with a plausible underlying claim for a fiduciary breach, have been found sufficient to state a claim for inadequate monitoring.  *See Marshall v. Northrop Grumman Corp.*, No. CV 16-06794 AB (JCX), 2017 WL 2930839, at \*11 (C.D. Cal. Jan. 30, 2017) (finding nearly identical allegations sufficiently stated a claim).  Viewing the allegations in the light most favorable to

the Plaintiffs, Molina and the Board have not shown that they are entitled to dismissal of Count Three.

## D.    Count Four

In Count Four, Plaintiffs allege that the selection of the flexPATH Funds for the Plan was a prohibited transaction in violation of 29 U.S.C. § 1106(a) and (b). Dkt. No. 79 ¶¶ 154–59.  Subsection (a) prohibits certain types of transactions between a plan and a party in interest, three of which Plaintiffs claim are relevant here:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
>
> (A)    sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> . . .
>
> (C)    furnishing of goods, services, or facilities between the plan and a party in interest; [or]
>
> (D)    transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]

29 U.S.C. § 1106(a)(1).  Plaintiffs allege that all Defendants violated these provisions.

Subsection (b) prohibits three types of transactions between a plan and a fiduciary, all of which Plaintiffs allege are relevant:

> A fiduciary with respect to a plan shall not--
>
> (1)    deal with the assets of the plan in his own interest or for his own account,
>
> (2)    in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3)     receive any consideration for his own personal account from
        any party dealing with such plan in connection with a
        transaction involving the assets of the plan.

*Id*. § 1106(b).  Plaintiffs allege that NFP and flexPATH violated these provisions
when selecting funds that benefited them.

### 1.     Molina Defendants

The Molina Defendants, against whom Plaintiffs allege only violations of
§ 1106(a), first argue that the claim is barred by ERISA's six-year statute of
repose.  Their argument assumes that their only relevant act was their decision to
select the flexPATH Funds no later than January 2016.  As discussed above in
connection with Count One, this argument ignores the SAC's allegations that
"Molina and flexPATH placed flexPATH's target date funds in the Plan on or
about May 16, 2016," within the repose period.  Dkt. No. 79 ¶ 67.  Thus, the
Molina Defendants have not shown that Count Four is time-barred.

The Molina Defendants next challenge the existence of a prohibited
transaction.  It appears to be undisputed that NFP and flexPATH were parties in
interest within the meaning of § 1106(a) because they were fiduciaries and
provided services to the Plan.  *See* 29 U.S.C. § 1002(14) ("The term 'party in
interest' means, as to an employee benefit plan—(A) any fiduciary . . . of such
employee benefit plan [or] (B) a person providing services to such plan . . . .").
However, Plaintiffs have not plausibly alleged that any Plan property or assets
were transferred to NFP, and in their opposition, Plaintiffs no longer urge a
prohibited transaction claim based on any transfer of assets to NFP.

As for flexPATH, the Molina Defendants argue that there were no transfers
of Plan assets to flexPATH because the trustee of the flexPATH Funds was
Wilmington Trust—not flexPATH—and the IMA "makes clear that flexPATH
Strategies would not receive additional revenue from investment in the flexPATH
Funds, and that its only compensation would be what was provided under the
Agreement."  Dkt. No. 94 at 21.  Although the IMA provides that flexPATH would
not receive additional fees from the Plan if it selected the flexPATH Funds, Dkt.
No. 94-2 at 3 of 9, the SAC alleges that Defendants' adoption of the flexPATH
Funds led to an immediate transfer of more than $200 million to those funds,
which provided seed money and enhanced their marketability, and that individual
flexPATH investment advisors received additional compensation from this money.
Dkt. No. 79 ¶¶ 68–69.  Thus, it is not implausible that the investment of Plan assets

in the flexPATH Funds provided tangible benefits to flexPATH.  The fact that the funds were held by Wilmington Trust and not directly by flexPATH does not defeat the prohibited transaction claim.  "So long as the transfers are 'for the benefit of a party in interest,' even if the transfers are not made directly to the party in interest, there is still a prohibited transaction under § 1106(a)(1)(D)." *Lauderdale I*, 2021 WL 3828646, at *10 (rejecting identical argument and holding that plaintiffs adequately alleged the flexPATH received benefit from funds held by Wilmington Trust).

Finally, the Molina Defendants argue that some courts outside the Ninth Circuit require that the defendant intended to benefit the party in interest when transferring assets, citing *Sweda v. Univ. of Pa.*, 923 F.3d 320, 340 (3d Cir. 2019).  They cite no authority within the Ninth Circuit applying an intent requirement, and, like the court in *Lauderdale*, this Court "is not inclined to impose an intent requirement that is not in the text of the statute."  *Lauderdale II*, 2022 WL 422831, at *20 (rejecting defendant's invocation of *Sweda*).

Because Plaintiffs have adequately alleged a prohibited "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan" in violation of § 1106(a)(1)(D), the Molina Defendants have not shown that Count Four should be dismissed.

2.    NFP

NFP raises a variety of challenges to Plaintiffs' prohibited transaction claim.  It is unnecessary to address most of them because the SAC does not allege any acts taken by NFP within the statute of repose that could give rise to liability for a prohibited transaction under § 1106.  Thus, like Plaintiffs' claim in Count One, Plaintiffs' claim against NFP in Count Four is dismissed as time-barred.

3.    flexPATH

In a single paragraph of its motion to dismiss, flexPATH raises three arguments for dismissal of Count Four.  First, it summarily argues that the claim is time-barred because flexPATH's selection of the flexPATH Funds occurred no later than April 1, 2016.  This argument fails because, as discussed above, Plaintiffs allege that flexPATH added the flexPATH Funds to the Plan on May 16, 2016.  It is therefore not evident from the face of the pleadings that "the last action which constituted a part of the breach or violation" occurred more than six years before Plaintiffs filed the FAC, 29 U.S.C. § 1113(1), or that Plaintiffs' claims

24

against flexPATH do not relate back to the FAC (which the parties do not separately discuss in connection with this claim).

Second, flexPATH conclusorily argues that Plaintiffs have not plausibly alleged a violation of § 1106(b) because flexPATH did not receive any additional compensation for selecting the flexPATH Funds for the Plan. The factual basis for this argument, which does not reference the allegations in the pleadings or cite any other document in the record, is not clear. In any event, even if Plaintiffs did not plausibly allege a violation of § 1106(b), flexPATH would not be entitled to dismissal of Count Four because Count Four plausibly alleges a prohibited transaction in violation of § 1106(a)(1)(D).

Finally, flexPATH argues that the transaction falls into the statutory exclusion in § 1108(b)(8), which allows certain transactions that are "expressly permitted by the instrument under which the plan is maintained" and for which "the bank, trust company, or insurance company receives not more than reasonable compensation." But "the statutory exemptions established by § 1108 are defenses which must be proven by the defendant," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 (8th Cir. 2009), and the parties dispute whether the fees charged for the flexPATH Funds were reasonable. It is not clear on the face of the complaint that the statutory exemption applies. Accordingly, flexPATH has not shown that it is entitled to dismissal of Count Four.

## E.     Count Five

Plaintiffs' final claim alleges that the Molina Defendants breached their duty of prudence under § 1104(a)(1)(B) by selecting flexPATH as the Plan's discretionary investment manager with authority over the QDIA. Dkt. No. 79 ¶¶ 160–67. Plaintiffs allege that flexPATH had no meaningful experience and that the Molina Defendants "failed to a make a reasoned decision that the selection of flexPATH was in the best interest of Plan participants or prudent" and "failed to determine whether participants would be better served by another discretionary investment manager available to the Plan after considering all relevant factors." *Id.* ¶ 163.

The Molina Defendants contend that Count Five is effectively an attempt to immunize Plaintiffs' challenge to the selection of the flexPATH Funds from the statute of repose, arguing that the relevant decision was the Investment Committee's 2015 decision to select the flexPATH Funds. To be sure, Count Five

25

alleges a causal chain suggesting that the decision to hire flexPATH followed inevitably from the selection of the flexPATH Funds:

> The Molina Defendants decided to add the flexPATH Index target date funds to the Plan, *thereby causing the Plan to hire flexPATH* as the Plan's discretionary investment manager over the selection of the Plan's QDIA, and subsequently authorized flexPATH to select its own proprietary investments.  The Molina Defendants therefore caused the Plan to invest in the flexPATH Index target date funds, thereby causing the Plan and participants to incur significant losses.

*Id*. ¶ 164 (emphasis added).

But the fact that two decisions are related does not necessarily mean that they cannot be separately challenged.  Plaintiffs allege that the Molina Defendants hired flexPATH on April 1, 2016, within the repose period.  *Id*. ¶ 24.  The Molina Defendants cite no authority precluding Plaintiffs from alleging a separate claim for the alleged breach of the duty of prudence in selecting flexPATH, assuming they can establish all the elements of a claim.  Thus, the Molina Defendants have not shown that Count Five is time-barred.

Their next argument, however, is more persuasive.  As the Molina Defendants correctly point out, Plaintiffs have not plausibly alleged any losses caused by the selection of flexPATH as an investment advisor, separate from the losses allegedly caused by the selection of the flexPATH Funds.  Paragraph 164 of the SAC, quoted in full above, alleges that the Molina Defendants' decision to add the flexPATH Funds to the Plan predated—and indeed caused—their decision to hire flexPATH, and that the Plan and its participants incurred losses from the subsequent "invest[ment] in the flexPATH Index target date funds."  Thus, the only losses alleged in Count Five are the losses caused by the selection of the flexPATH Funds—the subject of Plaintiffs' separate claim in Count One.  In the absence of any identified losses independently caused by the hiring of flexPATH, Plaintiffs have not alleged a plausible claim to recover separately for that breach. *See* 29 U.S.C. § 1109(a) (fiduciary who breaches duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach"). Count Five is therefore dismissed.

## F.    Leave to Amend

Plaintiffs have already amended their pleadings twice, both times in response to motions to dismiss for failure to state a claim.  They have not sought leave in either of their oppositions—or at the hearing—to replead in the event that some or all of their claims are dismissed, nor have they identified additional facts they could allege that would remedy the deficiencies in the claims that the Court has found lacking.  Moreover, this action has been pending for eight months, and fewer than four months remain for fact discovery.  Dkt. No. 89.  Under these circumstances, the Court declines to give Plaintiffs an additional opportunity to amend their pleadings.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment" among reasons for disallowing leave to amend).

## VI.    <u>MOTION TO STRIKE JURY DEMAND</u>

Defendants move to strike Plaintiffs' jury demand.  Dkt. No. 92.  When a plaintiff demands a jury, trial must be by jury unless the court finds that there is no federal right to a jury trial.  Fed. R. Civ. P. 39(a)(2).  The Seventh Amendment provides that "the right of trial by jury shall be preserved" in "Suits at common law."  U.S. Const. Amend. VII.  This right extends to "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided by English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).  To determine whether the jury trial right extends to a particular suit, courts "examine both the nature of the issues involved and the remedy sought."  *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).  First, courts consider whether the action would have been legal or equitable in the English courts before the merger of the courts of law and equity.  *Id*.  Second, courts consider "the remedy sought and determine whether it is legal or equitable in nature."  *Id*.  The second stage of the analysis is more important.  *Granfinanciera*, 492 U.S. at 42.

Plaintiffs concede that "actions for breach of trust and fiduciary duties historically are equitable in nature," Dkt. No. 104 at 5–6, but they contend under the second factor that they seek compensatory money damages, which are legal in nature.  This argument has been repeatedly rejected—apparently by every court within the Ninth Circuit that has considered it—and Plaintiffs candidly admitted at the September 16 scheduling conference that their counsel regularly lose on this issue in ERISA cases.  *See Munro v. Univ. of S. California*, No. 2:16-CV-06191-

VAP-EX, 2019 WL 4543115, at *5 (C.D. Cal. Aug. 27, 2019) ("Central District Courts regularly strike jury demands [in ERISA actions under § 1132] due to 'the overwhelming weight of authority' holding such actions to be equitable in nature.").

Nor does this Court find Plaintiffs' arguments persuasive. The Ninth Circuit, like many other circuits, has squarely held that "the remedies available to a participant or beneficiary under ERISA are equitable in nature and the Seventh Amendment does not require that a jury trial be afforded for claims made by participants or beneficiaries." *Thomas v. Oregon Fruit Prod. Co.*, 228 F.3d 991, 997 (9th Cir. 2000). Plaintiffs seek several forms of relief, including accounting, removal of the fiduciaries, an injunction against Defendants prohibiting them from committing future ERISA violations, surcharge against Defendants equivalent to the amounts involved in transactions that violate ERISA, and restoration to the financial position that they would have been in but for the fiduciary breaches alleged. Dkt. No. 79 at 53–54. Plaintiffs do not dispute that most of these remedies are equitable, but they contend that their request for Defendants to be held personally liable for making the Plan whole is legal in nature.

As the Supreme Court has explained, the fact that relief against a plan fiduciary "takes the form of a money payment does not remove it from the category of traditionally equitable relief" because equity courts had power to provide monetary "'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011). Plaintiffs rely on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) and *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993), to argue that a suit for money damages under ERISA is legal, but the Court in *Amara* distinguished those cases, pointing out that they both involved claims against non-fiduciaries. *Amara*, 563 U.S. at 439–42. Where an ERISA claim is brought against a fiduciary, "insofar as an award of make-whole relief is concerned, the fact that the defendant . . . is analogous to a trustee makes a critical difference," because such a claim against a trustee is equitable. *Id*. at 442.[7]

---

[7] The Supreme Court's subsequent decision in *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016), on which Plaintiffs also rely, does not undermine *Amara*. Like *Great-West* and *Mertens*, *Montanile* considered ERISA claims against non-fiduciaries.

Accordingly, consistent with *Amara*'s conclusion that make-whole monetary relief against a fiduciary is equitable and the abundant authority rejecting a right to a jury trial in ERISA suits against fiduciaries, the Court concludes that Plaintiffs' jury demand should be stricken.

Plaintiffs alternatively request an advisory jury under Rule 39(c)(1), suggesting that it would be useful to help the Court make credibility assessments. The Court is capable of making credibility assessments and finds no justification for complicating the proceedings or unnecessarily burdening jurors and the judicial system by empaneling an advisory jury. *See Kingsbury v. U.S. Greenfiber, LLC*, No. CV 08-151 DSF (AGRx), 2013 WL 12121540, at *1 (C.D. Cal. Nov. 4, 2013) (striking jury demand and rejecting similar request where "an advisory jury would add unnecessary expense, time and complexity to a case that has no special factors or extraordinary circumstances present."). Plaintiffs' request is denied.

## VII.   CONCLUSION

Defendants' motion to strike Plaintiffs' jury demand is GRANTED. Defendants' motions to dismiss are GRANTED IN PART as follows: Plaintiffs' claims against Defendant NFP in Counts One and Four are DISMISSED as time-barred, and Plaintiffs' claims against the Molina Defendants and NFP in Count Two and against the Molina Defendants in Count Five are dismissed for failure to state a claim. The motions are otherwise DENIED. Remaining for further adjudication are Plaintiffs' claims against the Molina Defendants and flexPATH in Counts One and Four and their claim against Molina and the Board in Count Three.

Date: December 8, 2022

_____
Stanley Blumenfeld, Jr.
United States District Judge

29