1  Jeanne A. Fugate (SBN 236341)
   jfugate@kslaw.com
2  KING & SPALDING LLP
   633 West Fifth Street, Suite 1600
3  Los Angeles, CA 90071
   Telephone: +1 213 443-4355
4
5  David Tetrick, Jr. (*pro hac vice*)
   dtetrick@kslaw.com
6  Darren A. Shuler (*pro hac vice*)
   dshuler@kslaw.com
7  Benjamin B. Watson (*pro hac vice*)
   bwatson@kslaw.com
8  KING & SPALDING LLP
   1180 Peachtree Street N.E. Ste. 1600
9  Atlanta, GA 30309-3521
   Telephone:  +1 404 572 4600
10 Facsimile:  +1 404 572 5100
11
12 *Counsel for Defendants Molina Healthcare, Inc., The Board of Directors of*
   *Molina Healthcare, Inc., and The Molina Salary Savings Plan Inv. Committee*
13
   *Additional counsel listed on the following pages.*
14

## IN THE UNITED STATES DISTRICT COURT
15
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
16
### (WESTERN DIVISION)

| | |
|---|---|
| 17  MICHELLE MILLS, ET AL. | Case No. 2:22-cv-1813-SB-GJS |
| 18         Plaintiffs, | Hon. Stanley Blumenfeld, Jr., |
| 19      v. | Courtroom 6 |
| 20  THE MOLINA SALARY SAVINGS PLAN INVESTMENT COMMITTEE, | **MOLINA DEFENDANTS'** |
| 21  ET AL. | **SUPPLEMENTAL BRIEF IN** |
|  |  **SUPPORT OF MOTION FOR** |
| 22         Defendants. | **SUMMARY JUDGMENT** |
| 23  | Date: July 21, 2023 |
| 24  | Time: 8:30 AM |
|  | Dept.: Courtroom 6C |
| 25  | |
| 26  | |
| 27  | |
| 28  | |

The Molina Defendants[1] submit this supplemental memorandum in further support of Defendants' Joint Motions for Summary Judgment (Dkt. 153).

## I.   There Is No Genuine Dispute of Fact on Count I.[2]

Plaintiffs have failed to demonstrate any genuine dispute of material fact precluding summary judgment for the Molina Defendants on Count I.  Any selection claim against the Molina Defendants is time barred.  Plaintiffs' monitoring claim, meanwhile, ignores that it was flexPATH—not Molina—who had responsibility to monitor the flexPATH TDFs.

### A.   Plaintiffs' Fund Selection Claim Is Untimely.

It is undisputed that the Investment Committee selected the flexPATH TDFs in November 2015, four months outside the six-year repose period that started on March 18, 2016.  *See* JAF 101–103; 29 U.S.C. § 1113.  Accordingly, the Court previously held that, to sustain their selection claim against the Molina Defendants, Plaintiffs must identify a "relevant action" the Molina Defendants took, within the repose period, to add the flexPATH TDFs to the Plan.  *See* Dkt. 123 at 11.  Plaintiffs identify just three actions by the Molina Defendants within the repose period: (1) signing the Participation Agreement on March 31, 2016; (2) signing a letter of direction to Fidelity, the Plan's recordkeeper, on April 5, 2016; and (3) failing to stop the addition of the flexPATH TDFs on May 16, 2016.  *See* Joint Br. at 23–24.

None are *relevant* to the Molina Defendants' liability, because on March 31, 2016, Molina also signed the IMA (effective April 1, 2016) appointing flexPATH as a 3(38) investment manager with "complete authority and discretion" over the selection and monitoring of the Plan's target-date funds.  *See* JAF ¶¶ 111–113.

---

[1] Capitalized terms and abbreviations in this Supplemental Brief shall have the same meaning as assigned in the Parties' Joint Brief (Dkt. 153-1).

[2] The Molina Defendants also join in the arguments made by flexPATH in its supplemental brief concerning Count I, which likewise support summary judgment for the Molina Defendants on Counts I and III.

1    Consequently, by the time the flexPATH TDFs were added to the Plan on May 16,

2    2016, flexPATH—not Molina—was the decisionmaker.  *See* JAF 119.  Because the

3    alleged losses in this case all flow from a decision—the addition of the flexPATH

4    TDFs to the Plan—over which the Molina Defendants had no control, their prior

5    actions cannot have proximately caused any losses, and Count I against the Molina

6    Defendants fails.

7                  1.    The Participation Agreement Was Not a "Relevant Action."

8         The Participation Agreement does not, as Plaintiffs assert, "direct[]"

9    Wilmington Trust to invest in the flexPATH TDFs.  *See* Joint Br. at 23; JAF 490.

10   By its terms, the Participation Agreement permitted—but did not require—Plan

11   assets to be invested in the flexPATH TDFs maintained by Wilmington Trust in its

12   collective investment trust.  *See* JAF 119–21.  The Participation Agreement worked

13   in tandem with the IMA (signed the same day) by (1) providing that, "[f]rom time

14   to time, the [Molina] Plan may specifically authorize in writing parties who may

15   communicate directions, instructions or other notices on its behalf to" Wilmington

16   Trust and (2) authorizing Wilmington Trust "to act and rely upon any directions,

17   instructions or certifications received from any such authorized person unless and

18   until the Trustee has been notified in writing of a change in such authorized person."

19   JAE Ex. 54 at 1.  Accordingly, as flexPATH explained in the Joint Brief, it made the

20   "ultimate decision to select the flexPATH TDFs for inclusion in the Plan[] . . . as

21   permitted by" the Participation Agreement.  Joint Br. at 9.  There is no evidence,

22   however, that Molina's execution of the Participation Agreement had the effect of,

23   or even compelled, the eventual investment of Plan assets in the flexPATH TDFs.

24   *See* JAF ¶¶ 120–22.

25        Plaintiffs' assertion that, by signing the Participation Agreement (and the

26   letter of direction), Molina did *more* within the repose period than the plan

27   fiduciaries in *Lauderdale v. NFP Retirement, Inc.* fails to acknowledge that those

28   fiduciaries also executed an identical Participation Agreement with Wilmington

1    Trust within their repose period.  *See Lauderdale v. NFP Retirement, Inc.,* 8:21-cv-
2    301-JVS-KES, Dkt. 197-43 (C.D. Cal. Aug. 29, 2022).  Yet Judge Selna held that
3    flexPATH's appointment as a 3(38) investment manager meant the plan fiduciaries
4    could not have proximately caused the addition of the flexPATH TDFs to their plan.
5    *See* 2022 WL 17260510, *16 (C.D. Cal. Nov. 17, 2022).  Plaintiffs' attempts to
6    distinguish *Lauderdale* are unavailing. First, *Lauderdale* "did not address a
7    limitations issue," Joint Br. at 24, because, there, the plan fiduciaries made the
8    decision to add the flexPATH funds *and* signed a 3(38) agreement with flexPATH
9    within the repose period.  *Id.*  Yet the court still held that the "post-selection
10   delegation of authority" to flexPATH as the 3(38) investment manager broke the
11   chain of causation.  *Id.*

12        Second, Plaintiffs' arguments invite this Court to conclude that both
13   *Lauderdale* and its own motion-to-dismiss order were wrongly decided.  *See* Joint
14   Br. at 24–25.  In short, Plaintiffs contend that, because the addition of the flexPATH
15   TDFs was a foreseeable consequence of flexPATH's being hired as a 3(38)
16   investment manager, the Molina Defendants' signing of the Investment Management
17   Agreement on March 31, 2016 should not break causation.  *See id.*  This is a
18   repackaged version of the argument this Court rejected when it dismissed Count V,
19   wherein Plaintiffs claimed that, because the Molina Defendants selected flexPATH
20   as a 3(38) investment manager, they were also liable for any funds that flexPATH
21   added to the Plan.  *See* Dkt. 123 at 26.  Plaintiffs have cited not a single authority
22   that does what they ask of this Court—ignore the intervening appointment of a 3(38)
23   and hold plan fiduciaries liable for funds selected by the 3(38).  *Tussey v. ABB, Inc.*
24   certainly does not help Plaintiffs, as it involved a conflicted defendant who both
25   selected an investment outside the repose period *and* then added that investment
26   within the repose period.  746 F.3d 327, 336–37 (8th Cir. 2014); *see also* Dkt. 123
27   at 11–12 (rejecting Plaintiffs' reliance on *Tussey* at the motion-to-dismiss stage).

28

## 2.    The Letter of Direction Was Not a "Relevant Action"

Nor is the April 5, 2016 letter of direction to Fidelity evidence of Molina "involving itself" in flexPATH's fiduciary decisions after it was appointed as investment manager.  Joint Br. at 24.  Plan sponsors—like Molina—communicate with the Plan's service providers—like the trustee (Wilmington Trust) and the recordkeeper (Fidelity)—about anticipated changes in the Plan's investments to carry out their administrative and compliance obligations, and not doing so risks shirking plan sponsor responsibilities.  Fulfilling those duties as a plan *sponsor* cannot create liability for Molina as plan *fiduciary*.  *See, e.g.*, *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) (plan sponsor actions cannot create fiduciary liability).

The letter of direction expressly reflects that Molina made the direction in its capacity as Plan sponsor and that it did so to allow the investment decisions of flexPATH to be implemented.  Not only does the letter identify Molina as the "Sponsor," but Molina acknowledges that it (and not Fidelity) is responsible for "comply[ing] with the terms of its Investment Manager Agreements (IMAs) for all plan-sponsor-directed cash flows."  JAE Ex. 55 at 1; JAF 494.  Molina's actions as a plan sponsor to allow another fiduciary's decision to replace the Plan's target-date funds cannot form the basis of a fiduciary breach claim against the Molina Defendants related to selection of the flexPATH TDFs.

## 3.    Not Stopping flexPATH Was Not a "Relevant Action"

Plaintiffs' last-ditch argument—that the Molina Defendants took a relevant action by failing to stop the addition of the flexPATH TDFs—also fails.  To the extent Plaintiffs contend that the Molina Defendants should have taken action before appointing flexPATH as 3(38) investment manager, their theory runs into the same causation issues present in *Lauderdale* and discussed above.  And to the extent that Plaintiffs contend that the Molina Defendants should have acted *after* the appointment of flexPATH, their argument ignores the plain language of the IMA,

4

which ceded complete authority and discretion over the Plan's target-date funds to flexPATH as 3(38).  JAF 113.

In sum, Molina's ministerial actions during the repose period were necessary steps that allowed flexPATH to exercise the "complete authority and discretion" over the Plan's target-date funds granted to it under the IMA.  None would allow a reasonable finder of fact to ignore the April 1, 2016 delegation to flexPATH and hold the Molina Defendants liable for a fiduciary act—adding the flexPATH TDFs to the Plan—they did not commit, nor can they create liability for the Molina Defendants' time-barred November 2015 decision to select the flexPATH TDFs.

**B.    No Evidence Supports Plaintiffs' Fund Monitoring Claim.**

1.    Molina Delegated Authority to flexPATH.

Contrary to Plaintiffs' claims, *see* Joint Br. at 26–27, there is no genuine dispute that Molina "did, in fact, delegate" to flexPATH "complete authority and discretion" over the Plan's target-date funds.  This is what the plain language of the IMA says, JAF ¶ 113, and is also what both signatories to the IMA—Molina and flexPATH—understand it to say.  *See* Joint Br. at 9; JAF ¶¶ 119, 124, 127.  And it was flexPATH who exercised that discretion to add the flexPATH TDFs to the Plan in May 2016.  JAF 119.  That some former Investment Committee members could not recall details about flexPATH at their depositions in 2023 is not evidence that Molina did not understand *in 2016* that flexPATH would have authority over the Plan's target-date funds.  *See* Joint. Br. at 26–27.

Nor have Plaintiffs provided any evidence that Molina took actions inconsistent with a delegation of authority to flexPATH.  Although Plaintiffs make a conclusory assertion that "the record shows that Molina continued to exercise authority or discretion over the Plan's TDF option" following the IMA, *id.* at 27, the only action Plaintiffs identify to back this up is the ministerial act of signing the letter of direction to Fidelity on April 5, 2016.  *See id.* at 26.  But, the letter of direction itself makes clear that Molina was acting as a plan sponsor to allow its

1  3(38) investment manager—flexPATH—to exercise  discretion over the Plan's

2  target-date funds.  *See supra* at 4.  This is a far cry from Plaintiffs' cited case, which

3  held that a benefits administrator acted in a fiduciary capacity because it was

4  contractually obligated to make benefits determinations (a classic fiduciary act).  *See*

5  *Hartsfield, Titus & Donnelly LLC v. Loomis Co.*, Civ. No. 08-3329 (WJM), 2010

6  WL 596466, at *2 (D.N.J. Feb. 17, 2010).

7          2.   <u>The Delegation to flexPATH Precludes a Monitoring Claim.</u>

8       As even Plaintiffs' own expert admitted, the Molina Defendants' delegation

9  of authority to flexPATH necessarily changed their responsibilities with respect to

10  the flexPATH TDFs.  *See JAF 553.*  If it did not, the delegation would serve no

11  purpose.  Plaintiffs' arguments to the contrary misread 29 U.S.C. § 1105.  *See* Joint

12  Br. at 27.  Section 1105's recognition that an appointing fiduciary may still be liable

13  under other sections, *see* 29 U.S.C. § 1105(a), does not mean that it also remains

14  liable for failing to carry out the specific duties that it delegated.  Under the plain

15  language of Section 1105(c)(2), once a valid allocation or delegation has occurred,

16  then the appointing fiduciary "*shall not be liable* for an act or omission of [its

17  delegate or appointee] in carrying out such responsibility" except to the extent the

18  appointing fiduciary violated its own duties with respect to the "allocation or

19  designation" or subsequent monitoring of the appointee, or knowingly participated

20  in the breach.  *Id.* § 1105(c)(2) (emphasis added).

21       Here, under Section 1105(c)(2)(A), the Molina Defendants cannot be liable

22  for failing to perform the exact duties that they delegated to flexPATH.  Plaintiffs'

23  assertion that *Lauderdale* "does not support Molina's view that a delegating

24  fiduciary's liability is restricted to § 1105(a) violations," Joint Br. at 27–28, ignores

25  the same central holding that Plaintiffs insist was wrongly decided in *Lauderdale*:

26  that the appointment of flexPATH as a 3(38) fiduciary with "complete authority and

27  discretion" over the Plan's target-date funds cuts off the appointing fiduciaries'

28  liability for flexPATH's selection and monitoring of the flexPATH TDFs.  *See supra*

1  at 3.

2  **II.    The Molina Defendants Prudently Monitored flexPATH (Count III).**

3       With respect to the Molina Defendants' monitoring of flexPATH as a 3(38)

4  investment manager, the undisputed evidence shows that: (1) the Investment

5  Committee received regular quarterly updates from flexPATH; (2) the Committee

6  received objective performance data on the funds underlying the investments that

7  flexPATH managed; and (3) the Committee undertook an RFP process within four

8  years of hiring flexPATH as an investment manager that culminated in its removal

9  from that role.  JAF 8, 71–72, 269–71, 284, 306.  In light of this evidence, there can

10  be no genuine dispute that the Molina Defendants discharged their "limited" duty to

11  monitor flexPATH as a 3(38) fiduciary to the Plan.  *In re Calpine Corp. ERISA*

12  *Litig.*, No. 4:03-cv-01685-SBA, 2005 WL 1431506, at *6 (N.D. Cal. Mar. 31, 2005).

13       Plaintiffs' arguments to the contrary are based on the false premise that the

14  Molina Defendants had a *heightened* duty to monitor flexPATH because it was (1)

15  inexperienced and (2) conflicted.  *See* Joint Br. at 62–63.  flexPATH's supposed

16  inexperience as a 3(38) investment manager, however, is unsupported, except by

17  Plaintiffs' assertions.  It is undisputed that flexPATH's key employees had decades

18  of experience in the financial services industry, including with investment

19  management services.  *See* JAF 12–13; *see also* JAF 481.  It is also undisputed that

20  flexPATH hired BlackRock—the world's largest asset manager—to oversee the

21  glidepath of the flexPATH TDFs.  *See* JAF 50–53.

22       Nor do Plaintiffs demonstrate how flexPATH's "conflicting loyalties," Joint

23  Br. at 61–62, caused any breach by the Molina Defendants.  Quite the opposite: the

24  operative Complaint specifically distinguishes between the Molina Defendants'

25  fiduciary actions (which it only alleges were imprudent) and NFP's and flexPATH's

26  fiduciary actions (which it alleges were both imprudent and disloyal).  *See* Second

27  Amend. Compl., Dkt. 79, ¶ 132.  In any event, Plaintiffs offer scant support for their

28  position that alleged disloyalty by other parties somehow required the Molina

1    Defendants to do more to monitor flexPATH than the undisputed record
2    demonstrates.   Plaintiffs' lone case—*Leigh v. Engle*—involved a much starker
3    conflict, where the monitored plan fiduciaries had an incentive to *suppress* the value
4    of plan investments (to the direct harm of beneficiaries) as part of a corporate control
5    contest.   727 F.2d 113, 128, 135 (7th Cir. 1984).   There is no similar evidence of
6    directly opposing interests here.

7          Moreover, this Court need only reach the Molina Defendants' monitoring of
8    flexPATH if the Plaintiffs first show that (1) the flexPATH TDFs were unreasonable
9    investments for the Molina Plan and (2) flexPATH breached its own fiduciaries
10   duties as a 3(38) investment manager.   *See, e.g.*, *Anderson v. Intel Corp.*, No. 3:19-
11   cv-04618-LHK, 2021 WL 229235, at *14 (N.D. Cal. Jan. 21, 2021) (monitoring
12   claim derivative of underlying breach).   For the reasons detailed in flexPATH's
13   supplemental brief, Plaintiffs have failed to show either and their derivative
14   monitoring claim against the Molina Defendants fails.

15         Plaintiffs' other arguments fare no better.   The alleged absence of a written
16   record documenting Molina's decision to *hire* flexPATH is a moot point given the
17   Court's dismissal of Count V—and it certainly is not evidence that there is no written
18   record of how Molina *monitored* flexPATH, which is the focus of Count III.   Joint
19   Br. at 62.   Similarly, and as discussed above, former Investment Committee
20   members' inability to recall details about flexPATH during depositions taken seven
21   years after flexPATH's appointment is not evidence of imprudent monitoring in real
22   time.   Faded memories do nothing to negate the contemporaneous records that
23   demonstrate the Committee's diligent monitoring of flexPATH.   *See id*.

24         Even Plaintiffs' assertion that the Investment Committee "failed to monitor
25   performance for the first 10 months," *id.*, overstates the evidence:   The flexPATH
26   TDFs were added to the Plan mid-way through Q2 2016 and the Investment
27   Committee received performance data on the underlying flexPATH funds at its
28   meeting to review Q4 2016 performance (and thereafter every quarter until the end

of the Class Period).  *See* JAF 557.  Thus, Plaintiffs seek to have a trial over whether the Investment Committee should have also received a performance report for Q3 2016.  Finally, Plaintiffs' well-worn refrain that the Committee "never received a Scorecard on the flexPATH TDFs or the underlying BlackRock TDFs" is likewise a critique about how the Committee should have monitored flexPATH, not evidence that it failed to do so.  Joint Br. at 62.

## III.   The Molina Defendants Did Not Cause a Prohibited Transaction Within the Repose Period (Count IV).

ERISA Section 406 is concerned with fiduciary acts that "cause" a plan to engage in certain transactions.  29 U.S.C. § 1106(a).  As the Molina Defendants explained in the Joint Brief, multiple courts have held that a plan fiduciary does not "cause" the addition of a fund to a retirement plan by appointing a 3(38) investment manager who then selects the fund.  *See* Joint Br. at 64 (citing *Williams v. Centerra Grp. LLC*, No. 1:20-cv-4220-SAL, 2021 WL 4227384, at *11 (D.S.C. Sept. 16, 2021); *Miller v. Astellas US LLC*, No. 20-cv-03882, 2021 WL 1387948, at *10 (N.D. Ill. Apr. 13, 2021)).  In their one-paragraph retort to the Molina Defendants' arguments about Count IV, Plaintiffs do not engage with this authority, except to assert without citation that "delegation apparently was undisputed" in the cited cases. *See* Joint Br. 71.  Here, any dispute over delegation is the product of legal argument since the parties that actually signed the IMA agree that Molina delegated to flexPATH "complete authority and discretion" over the Plan's target-date funds and that flexPATH exercised that discretion to cause the flexPATH TDFs to be added to the Plan.  *See* JAF 110–113, 119.

Plaintiffs also suggest, in their response to flexPATH's arguments on Count IV, that their prohibited transaction claims could be timely so long as *any* party completes the transaction within the repose period.  *See* Joint Br. at 72.  The Court already rejected this argument in its ruling on Defendants' motion to dismiss.  *See* Dkt. 123 at 11–12.  This argument also rests on a misreading of 29 U.S.C. § 1113.

Plaintiffs note that Section 1113 refers only to "the last action which constituted a part of the breach or violation," and posit that, because the statute does not specify "action *by the defendant*," a third party can render an otherwise untimely breach actionable.   *See* Joint Br. at 72; 29 U.S.C. § 1113.   This reading ignores the antecedent clause in the first line of the statute that, "No action may be commenced . . . with respect to *a fiduciary's breach* of any responsibility, duty, or obligation . . . ."   29 U.S.C. § 1113 (emphasis added).   The statute would be rendered nonsensical if the last action of "a fiduciary's breach" could be an action taken by someone else.   Plaintiffs' reading of 29 U.S.C. § 1113 would create an unlimited chain of fiduciary liability for plan fiduciaries based on acts taken by others well outside ERISA's six-year repose period.   This is antithetical to the purpose of a statute of repose, which is "to grant complete peace to defendants." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, U.S. 497, 510 (2017).

## CONCLUSION

Plaintiffs have failed to establish a genuine issue of material fact on any of the remaining claims against the Molina Defendants and the Molina Defendants are entitled to judgment as a matter of law.   This Court should grant summary judgment in favor of the Molina Defendants and dismiss them from this action.

Dated: June 23, 2023          Respectfully submitted,

/s/ *Jeanne A. Fugate*
JEANNE A. FUGATE
KING & SPALDING LLP

*Counsel for Molina Healthcare, Inc., The Board of Directors of Molina Healthcare, Inc., and The Molina Salary Savings Plan Investment Committee*