Nathan D. Stump (admitted *pro hac vice*)
nstump@uselaws.com
Jerome J. Schlichter (SBN 054513)
jschlichter@uselaws.com
Sean E. Soyars (admitted *pro hac vice*)
ssoyars@uselaws.com
Kurt C. Struckhoff (admitted *pro hac vice*)
kstruckhoff@uselaws.com
Troy A. Doles (admitted *pro hac vice*)
tdoles@uselaws.com
Heather Lea (admitted *pro hac vice*)
hlea@uselaws.com
SCHLICHTER BOGARD LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934

*Counsel for Plaintiffs*

William H. Edmonson (SBN 243445)
will@whelawfirm.com
LAW OFFICE OF WILL EDMONSON
9157 Sunset Boulevard, Suite 213
West Hollywood, CA 90069
Telephone: (424) 248-9581

*Local Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (Western Division)

| | |
|---|---|
| MICHELLE MILLS, et al., | Case No. 2:22-cv-01813-SB-GJS |
| Plaintiffs, | Judge: Hon. Stanley Blumenfeld, Jr. |
| v. | **PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| MOLINA HEALTHCARE, INC., et al., | |
| Defendants. | Pre-Trial Conference: October 27, 2023 |
| | Trial Date: TDB |

# Table of Contents

LR 16-4.1(a) Plaintiffs' claims ..................................................................... 1

LR 16-4.1(b) Elements of Plaintiffs' claims ............................................... 2

LR 16-4.1(c) Brief description of key evidence in support of Plaintiffs'
claims ........................................................................................ 8

LR 16-4.1(d) Defendants' affirmative defenses ....................................... 14

LR 16-4.1(e) Elements of Defendants' affirmative defenses................... 14

LR 16-4.1(f) Key evidence relied on in opposition to each affirmative
defense ...................................................................................... 16

LR 16-4.1(h) Identification of anticipated evidentiary issues................. 17

LR 16-4.1(i) Identification of issues of law ............................................ 17

LR 16-4.3 Bifurcation of the issues......................................................... 18

LR 16-4.4 Jury Trial ................................................................................ 18

LR 16-4.5 Plaintiffs' claim to attorney fees ........................................... 18

LR 16-4.6 Abandonment of Issues .......................................................... 20

# Table of Authorities

**CASES**

*Agredano v. Mutual of Omaha Cos.*,
 75 F.3d 541 (9th Cir. 1996).................................................................20

*Central Soya Co. v. Geo. A. Hormel & Co.*,
 723 F.2d 1573 (Fed. Cir. 1983).........................................................20

*Davis v. City of San Francisco*,
 976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*,
 984 F.2d 345 (9th Cir. 1993)..............................................................19

*Davis v. Macon County*,
 927 F.2d 1473 (9th Cir. 1991)...........................................................20

*Grove v. Wells Fargo Fin. Cal., Inc.*,
 606 F.3d 577 (9th Cir. 2010).......................................................19, 20

*Hardt v. Reliance Standard Life Ins. Co.*,
 560 U.S. 242 (2010) ...........................................................................18

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ...........................................................................19

*Hummell v. S.E. Rykoff & Co.*,
 634 F.2d 446 (9th Cir. 1980)..............................................................18

*Kayes v. Pac. Lumber Co.*,
 51 F.3d 1449 (9th Cir. 1995)........................................................18, 19

*McElwaine v. US West, Inc.*,
 176 F.3d 1167 (9th Cir. 1999)............................................................18

*Schwarz v. Sec'y of HHS*,
 73 F.3d 895 (9th Cir. 1995)................................................................19

*Simonia v. Glendale Nissan/Infiniti Disability Plan*,
 608 F.3d 1118 (9th Cir. 2010)............................................................18

*Smith v. CMTA-IAM Pension Trust*,
 746 F.2d 587 (9th Cir. 1984)........................................................18, 19

**STATUTES**

29 U.S.C. §1104(a)(1) .......................................................................3, 4

29 U.S.C. §1104(a)(1)(B) ......................................................................5

29 U.S.C. §1105(a) ....................................................................3, 4, 6, 7

29 U.S.C. §1106(a) .................................................................................6

29 U.S.C. §1106(a)(1) ............................................................................6

29 U.S.C. §1106(b) .................................................................................7

29 U.S.C. §1108(a)–(b) ........................................................................15

29 U.S.C. §1109(a) .................................................................................5

29 U.S.C. §1113.....................................................................................15

29 U.S.C. §1132(g)(1) ..........................................................................18

**LR 16-4.1(a) Plaintiffs' claims**

On December 8, 2022, the Court granted in part and denied in part the Molina Defendants'[1] and flexPATH Strategies, LLC's ("flexPATH") motions to dismiss the Second Amended Complaint. Dkt. 123. The Molina Defendants and flexPATH are collectively referred to herein as "Defendants."

The Court granted the Molina Defendants' motion to dismiss Count II asserting claims under 29 U.S.C. §1104(a) related to the Molina Salary Savings Plan's ("Plan") use of higher-cost versions of the Plan's investments and Count V asserting claims under 29 U.S.C. §1104(a) related to the selection of flexPATH for failure to state a claim. *Id.* at 29. The Court granted NFP Retirement, Inc.'s ("NFP") motion to dismiss Count I asserting claims under 29 U.S.C. §1104(a) related to the selection, monitoring, and retention of the flexPATH Index target date funds ("flexPATH TDFs") and Count IV asserting claims under 29 U.S.C. §1106 related to the flexPATH TDFs as time-barred. *Id.* No other claims were asserted against NFP. The Court otherwise denied the Molina Defendants' and flexPATH's motions to dismiss.

On September 27, 2023, the Court granted in part and denied in part Defendants' motions for summary judgment. Dkt. 189. The Court granted flexPATH's motions as to Plaintiffs' prohibited transaction claims under 29 U.S.C. §1106(a)(1)(A), (a)(1)(C), and 1106(b)(3) in connection with the flexPATH TDFs. The Court otherwise denied Defendants' motions.

In light of these orders, and reserving their right to appeal, Plaintiffs intend to pursue the following claims at trial:

---

[1] The Molina Defendants refer to Molina Healthcare, Inc. ("Molina"), the Board of Directors of Molina Healthcare, Inc. ("Molina Board"), and the Molina Salary Savings Plan Investment Committee ("Molina Committee"). By stipulation, Molina shall assume any liability the Court may find against any current or former member of the Molina Committee or director of the Molina Board. Dkt. 128.

**Claim 1 (29 U.S.C. §1104(a)(1) against the Molina Committee and flexPATH as Co-Fiduciary):** The Molina Committee breached its fiduciary duties under 29 U.S.C. §1104(a)(1) in connection with the Molina Salary Savings Plan ("Plan") investment in the flexPATH TDFs. (Count I)

**Claim 2 (29 U.S.C. §1104(a)(1) against flexPATH and the Molina Committee as Co-Fiduciary):** flexPATH breached its fiduciary duties under 29 U.S.C. §1104(a)(1) in connection with the Plan's investment in the flexPATH TDFs. (Count I)

**Claim 3 (29 U.S.C. §1104(a)(1)(B) against Molina and the Molina Board):** Molina and the Molina Board breached their fiduciary duties under 29 U.S.C. §1104(a)(1) by failing to monitor Plan fiduciaries. (Count III)

**Claim 4 (29 U.S.C. §1104(a)(1) against the Molina Committee):** The Molina Committee breached its fiduciary duty under 29 U.S.C. §1104(a)(1) by failing to monitor Plan fiduciaries. (Count III)

**Claim 5 (29 U.S.C. §1106(a)(1) against the Molina Committee and flexPATH as Co-Fiduciary):** The Molina Committee violated 29 U.S.C §1106(a)(1) when it caused the Plan to invest in the flexPATH TDFs. (Count IV)

**Claim 6 (29 U.S.C. §1106(a)(1)(D) against flexPATH and the Molina Committee as Co-Fiduciary):** flexPATH violated 29 U.S.C §1106(a)(1)(D) when it caused the Plan to invest in the flexPATH TDFs. (Count IV)

**Claim 7 (29 U.S.C. §1106(b)(1)–(2) against flexPATH and the Molina Committee as Co-Fiduciary):** flexPATH violated 29 U.S.C §1106(b)(1)–(2) when it caused the Plan to invest in the flexPATH TDFs. (Count IV)

**LR 16-4.1(b) Elements of Plaintiffs' claims**

The elements required to establish Plaintiffs' claims are as follows:

**Claim 1 (29 U.S.C. §1104(a)(1) against the Molina Committee and flexPATH as Co-Fiduciary):**

1.  The Molina Committee is a fiduciary to the Plan in connection with the Plan's investment in the flexPATH TDFs;

2.  The Molina Committee failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and —

> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

> (D) in accordance with the documents and instruments governing the plan.

29 U.S.C. §1104(a)(1);

3.  The Molina Committee's failures caused a loss to the Plan. 29 U.S.C. §1109(a); and

4.  flexPATH is also liable as a co-fiduciary because it:

> (1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a breach;

> (2) by failing to comply with §1104(a)(1) in the administration of its specific responsibilities which gave rise to its status as a fiduciary, enabled such other fiduciary to commit a breach; or

> (3) had knowledge of a breach by such other fiduciary and did not make reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §1105(a).

**Claim 2 (29 U.S.C. §1104(a)(1) against flexPATH and the Molina Committee as Co-Fiduciary):**

1.  flexPATH is a fiduciary to the Plan in connection with the Plan's investment in the flexPATH TDFs;

2.  flexPATH failed to discharge its duties with respect to the Plan solely in the interest of the participants and beneficiaries and —

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

(D) in accordance with the documents and instruments governing the plan.

29 U.S.C. §1104(a)(1);

3.  flexPATH's failures caused a loss to the Plan. 29 U.S.C. §1109(a); and

4.  The Molina Committee is also liable as a co-fiduciary because it:

(1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a breach;

(2) by failing to comply with §1104(a)(1) in the administration of its specific responsibilities which gave rise to its status as a fiduciary, enabled such other fiduciary to commit a breach; or

(3) had knowledge of a breach by such other fiduciary and did not make reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §1105(a).

**Claim 3 (29 U.S.C. §1104(a)(1)(B) against Molina and the Molina Board):**

1.  Molina, acting through its Board, is a fiduciary to the Plan;

2.  Molina and its Board have a duty to act with prudence in supervising or monitoring the performance of and compliance with any delegation to others to ensure such persons were fulfilling their responsibility and acting in conformance with the governing plan document;

3. Molina and its Board failed to prudently monitor the Molina Committee at reasonable intervals. In doing so, Molina and its Board failed to discharge their duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. §1104(a)(1)(B); and

4. Such breach caused a loss to the Plan. 29 U.S.C. §1109(a).

**Claim 4 (29 U.S.C. §1104(a)(1) against the Molina Committee):**

1. The Molina Committee is a fiduciary to the Plan;

2. The Molina Committee has a duty to act with prudence in supervising or monitoring the performance of and compliance with any delegation to others to ensure such persons were fulfilling their responsibility and acting in conformance with the governing plan document;

3. The Molina Committee failed to prudently monitor flexPATH at reasonable intervals. In doing so, the Molina Committee failed to discharge its duties with respect to the Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. §1104(a)(1)(B); and

4. Such breach caused a loss to the Plan. 29 U.S.C. §1109(a).

**Claim 5 (29 U.S.C. §1106(a)(1) against the Molina Committee and flexPATH as Co-Fiduciary):**

1. The Molina Committee is a fiduciary to the Plan in connection with the Plan's investment in the flexPATH TDFs;

2. The Molina Committee caused the Plan to engage in a transaction that it knew (or should have known) constituted a direct or indirect:

(C) furnishing of goods, services, or facilities between the Plan and a party-in-interest; or

(D) transfer to, or use by or for the benefit of a party-in-interest, of any assets of the Plan. 29 U.S.C. §1106(a)(1); and

3. flexPATH is also liable as a co-fiduciary because it:

(1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a breach;

(2) by failing to comply with §1104(a)(1) in the administration of its specific responsibilities which gave rise to its status as a fiduciary, enabled such other fiduciary to commit a breach; or

(3) had knowledge of a breach by such other fiduciary and did not make reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. §1105(a).

**Claim 6 (29 U.S.C. §1106(a)(1)(D) against flexPATH and the Molina Committee as Co-Fiduciary):**

1. flexPATH is a fiduciary to the Plan in connection with the Plan's investment in the flexPATH TDFs;

2. flexPATH caused the Plan to engage in a transaction that it knew (or should have known) constituted a direct or indirect:

(D) transfer to, or use by or for the benefit of a party-in-interest, of any assets of the Plan; 29 U.S.C. §1106(a); and

3. The Molina Committee is also liable as a co-fiduciary because it:

(1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a prohibited transaction;

(2) by failing to comply with §1104(a)(1) in the administration of its specific responsibilities which gave rise to its status as a fiduciary, enabled such other fiduciary to commit a prohibited transaction; or

(3) had knowledge of a prohibited transaction by such other fiduciary and did not make reasonable efforts under the circumstances to remedy the prohibited transaction.

29 U.S.C. §1105(a).

**Claim 7 (29 U.S.C. §1106(b)(1)–(2) against flexPATH and the Molina Committee as Co-Fiduciary):**

1. flexPATH is a fiduciary to the Plan in connection with the Plan's investment in the flexPATH TDFs;

2. flexPATH:

(1) dealt with the assets of the Plan in its own interest or for its own account, or

(2) in its individual or in any other capacity acted in a transaction involving the Plan on behalf of a party whose interests are adverse to the interests of the Plan or the interests of its participants or beneficiaries,

29 U.S.C. §1106(b); and

3. The Molina Committee is also liable as a co-fiduciary because it:

(1) participated knowingly in, or knowingly undertook to conceal, an act or omission of another fiduciary, knowing such act or omission was a prohibited transaction;

(2) by failing to comply with §1104(a)(1) in the administration of its specific responsibilities which gave rise to its status as a fiduciary, enabled such other fiduciary to commit a prohibited transaction; or

(3) had knowledge of a prohibited transaction by such other fiduciary and did not make reasonable efforts under the circumstances to remedy the prohibited transaction.

29 U.S.C. §1105(a).

**LR 16-4.1(c) Brief description of key evidence in support of Plaintiffs' claims**

**Claim 1 (29 U.S.C. §1104(a)(1) against the Molina Committee and**

**flexPATH as Co-Fiduciary):**

- The Molina Committee's fiduciary responsibility for the Plan's investments is not contested. Dkt. 153-1 at 21; Dkt. 155-5 at 3–4. To the extent necessary, the Charter for the Molina Committee and the Plan's Investment Policy Statement ("IPS") will be used to establish the Molina Committee's fiduciary status and scope of responsibilities.

- The Molina Committee's meeting minutes and materials and witness testimony will also be used to establish the Committee's role, scope of fiduciary responsibilities, considerations, and decisions.

- The parties dispute the scope of fiduciary responsibility delegated to flexPATH pursuant to an Investment Management Agreement signed after the selection of the flexPATH TDFs but prior to their placement in the Plan. Claims 2, 4, and 6–7 address flexPATH's fiduciary liability for the flexPATH TDFs (as well as flexPATH's liability as co-fiduciary for Claims 1 and 5).

- Expert testimony to establish the industry standard process and considerations for fiduciaries when selecting and monitoring investment options for a defined contribution plan.

- Documents and testimony reflecting the Molina Committee's decision and implementation of the decision to remove the Vanguard target date funds and add the flexPATH TDFs to the Plan, including the Participation Agreement with Wilmington Trust, the letter directing the Plan's recordkeeper to move Plan assets from the current Vanguard investments to the flexPATH TDFs, and documents showing the transfer was scheduled for and occurred on May 16, 2016.

- Communications sent to participants explaining the fiduciary decision to

replace certain funds in the Plan with the flexPATH TDFs.

- The Focus List used by the Plan's consultant and flexPATH that contains the funds in which they had the highest conviction and confidence.

- Documents and testimony establishing the conflict of interest of the Molina Committee's advisors and, in particular, the advisors' personal interest in the Molina Committee causing the Plan to invest in the flexPATH TDFs, including the flexPATH ADVs, the flexPATH TDFs' financial statements and auditor's reports, flexPATH ownership interests, and incentive compensation paid to advisors.

- Testimony of expert witnesses who used the transactional data of the Plan and its participants to calculate the losses sustained by the Plan.

- Documents and witness testimony that establish the considerations and decisions of the flexPATH Investment Committee ("flexPATH Committee"), including meeting minutes, summaries, and materials considered.

- Documents available to flexPATH but not considered by the flexPATH Committee, including relevant scorecards.

**Claim 2 (29 U.S.C. §1104(a)(1) against flexPATH and the Molina Committee as Co-Fiduciary):**

- Documents and witness testimony that establish flexPATH's role as a fiduciary based on its responsibilities relative to the flexPATH TDFs and/or the Plan, including the Investment Management Agreement, Sub-Advisory Agreement, the flexPATH Committee's IPS (which governed flexPATH's role relative to the flexPATH TDFs), and payments made by the Plan to flexPATH.

- Documents and testimony that establish the benefits received by flexPATH based on the Plan's investment in the flexPATH TDFs, including the Master Services Agreement with BlackRock, commissions paid to flexPATH

Committee members that are based on Plan assets invested in the flexPATH TDFs, and sales incentives provided to consultants.

- Documents that reflect flexPATH's and its affiliate's conflict of interest, including ADVs and internal policies.

- Expert testimony establishing industry standard practices and protocols for the selection and oversight of defined contribution investments, including the use of proprietary investments and avoidance of conflicts of interest.

- The Plan's IPS setting forth the standards for Plan investment options and the process required for their oversight.

- Documents and witness testimony that establish the considerations and decisions of the flexPATH Committee, including meeting minutes, summaries, and materials considered.

- Documents available to flexPATH but not considered by the flexPATH Committee, including relevant scorecards.

- Financial reports and relevant contracts and arrangements relative to the flexPATH TDFs, including the Declaration of Trust, Participation Agreement, Glidepath Agreement, Sub-Advisory Agreement, and Marketing Services Agreement.

- The Focus List used by the Plan's consultants and flexPATH that contains the funds in which they had the highest conviction and confidence.

- Testimony of expert witnesses who used the transactional data of the Plan and its participants to calculate the losses sustained by the Plan.

- The Molina Committee's meeting minutes and materials and witness testimony to establish the patterns and practices of the Molina Committee related to oversight of Plan investments and service providers.

- Expert testimony on the industry standard protocols for engaging and monitoring service providers, investment managers, and investments in the defined contribution plan context.

**Claim 3 (29 U.S.C. §1104(a)(1)(B) against Molina and the Molina Board):**

- The Molina Committee Charter and other documents reflecting the Molina Board's creation of the Molina Committee and any delegation of fiduciary responsibility for the Plan.

- Expert testimony to establish the industry standard process for delegating fiduciary duties and overseeing these fiduciaries.

- Documents and witness testimony reflecting presentations to or considerations by the Molina Board related to the Plan and the Molina Committee.

- The Molina Committee's meeting minutes and materials and witness testimony to establish the patterns and practices of the Molina Committee related to its oversight of the Plan and its reporting to the Molina Board.

- The Focus List used by the Plan's consultants and flexPATH that contains the funds in which they had the highest conviction and confidence.

- Testimony of expert witnesses who used the transactional data of the Plan and its participants to calculate the losses sustained by the Plan.

**Claim 4 (29 U.S.C. §1104(a)(1) against the Molina Committee):**

- The Molina Committee's fiduciary responsibility for the Plan's investments is not contested. Dkt. 153-1 at 21; Dkt. 155-5 at 3–4. To the extent necessary, the Charter for the Molina Committee and the Plan's IPS will be used to establish the Molina Committee's fiduciary status and scope of responsibilities.

- The Molina Committee's meeting minutes and materials and witness testimony will also be used to establish the committee's role and scope of fiduciary responsibilities.

- The Focus List used by the Plan's consultants and flexPATH that contains the funds in which they had the highest conviction and confidence.

- Testimony of expert witnesses who used the transactional data of the Plan

and its participants to calculate the losses sustained by the Plan.

**Claim 5 (29 U.S.C. §1106(a)(1) against the Molina Committee and flexPATH as Co-Fiduciary):**

- The Molina Committee's fiduciary responsibility for the Plan's investments is not contested. Dkt. 153-1 at 21; Dkt. 155-5 at 3–4. To the extent necessary, the Charter for the Molina Committee and the Plan's IPS will be used to establish the Molina Committee's fiduciary status and scope of responsibilities.

- The Molina Committee's meeting minutes and materials and witness testimony will also be used to establish the committee's role and scope of fiduciary responsibilities.

- The Investment Management Agreement with flexPATH.

- Documents reflecting the transfer of Plan assets to flexPATH TDFs, including the Letter of Direction and participant communications regarding the fund changes.

- The Participation Agreement signed by Molina, permitting the Plan to invest in the flexPATH TDFs.

- Expert testimony regarding the Plan's transactional data, reflecting the sale of Vanguard target date fund shares and the transfer of Plan assets to flexPATH TDFs.

**Claim 6 (29 U.S.C. §1106(a)(1)(D) against flexPATH and the Molina Committee as Co-Fiduciary):**

- Documents and witness testimony that establish flexPATH's role as a fiduciary based on its responsibilities relative to the flexPATH TDFs and/or the Plan, including the Investment Management Agreement, Sub-Advisory Agreement, the flexPATH Committee's IPS (which governed flexPATH's role relative to the flexPATH TDFs), and payments made by the Plan to flexPATH.

- Documents and witness testimony that establish the considerations and decisions of the flexPATH Committee, including meeting minutes, summaries, and materials considered.
- Expert testimony regarding the Plan's transactional data, reflecting the sale of Vanguard target date fund shares and the transfer of Plan assets to flexPATH TDFs.
- The Molina Committee's meeting minutes and materials and witness testimony to establish the patterns and practices of the Molina Committee related to the oversight of flexPATH and the flexPATH TDFs.
- The Investment Management Agreement with flexPATH.
- Documents reflecting the transfer of Plan assets to flexPATH TDFs, including the Letter of Direction and participant communications regarding the fund changes.
- The Participation Agreement signed by Molina, permitting the Plan to invest in the flexPATH TDFs.

**Claim 7 (29 U.S.C. §1106(b)(1)–(2) against flexPATH and the Molina Committee as Co-Fiduciary):**

- Documents and witness testimony that establish flexPATH's role as a fiduciary based on its responsibilities relative to the flexPATH TDFs and/or the Plan, including the Investment Management Agreement, Sub-Advisory Agreement, the flexPATH Committee's IPS (which governed flexPATH's role relative to the flexPATH TDFs), and payments made by the Plan to flexPATH.
- Documents and witness testimony that establish the considerations and decisions of the flexPATH Committee, including meeting minutes, summaries, and materials considered.
- Expert testimony regarding the Plan's transactional data, reflecting the sale of Vanguard target date fund shares and the transfer of Plan assets to

flexPATH TDFs.

- The Molina Committee's meeting minutes and materials and witness testimony to establish the patterns and practices of the Molina Committee related to the oversight of flexPATH and the flexPATH TDFs.

- The Investment Management Agreement with flexPATH.

- Documents reflecting the transfer of Plan assets to flexPATH TDFs, including the Letter of Direction and participant communications regarding the fund changes.

- The Participation Agreement signed by Molina, permitting the Plan to invest in the flexPATH TDFs.

**LR 16-4.1(d) Defendants' affirmative defenses**

Defendants collectively asserted 42 affirmative defenses in their answers. Dkt. 125 (23 affirmative defenses); Dkt. 126 (19 affirmative defenses). Defendants notified Plaintiffs that at trial they intend to assert the following two affirmative defenses:

**Affirmative Defense 1 (29 U.S.C. §1113):**

Plaintiffs' claims are barred by the applicable statute of limitations or repose under 29 U.S.C. §1113. (flexPATH's Fourth Affirmative Defense, the Molina Defendants' First Affirmative Defense).

**Affirmative Defense 2 (Unspecified):**

Plaintiffs' claims are barred in whole or in part because those transactions are subject to exemptions set forth in ERISA or granted by the Secretary of Labor thereunder. Dkt. 125 at 27−28; Dkt. 126 at 30. (flexPATH's Fifteenth Affirmative Defense, the Molina Defendants' Ninth Affirmative Defense).

**LR 16-4.1(e) Elements of Defendants' affirmative defenses**

The elements required to establish these affirmative defenses are the following:

**Affirmative Defense 1 (29 U.S.C. §1113):**

1.  Except in the case of fraud or concealment, the Action was commenced:

    a.  more than six years after (A) the date of the last action which constituted a breach or violation by the Defendant, or (B) in the case of an omission, the latest date on which the Defendant could have cured the breach or violation, or

    b.  more than three years after the earliest date on which Plaintiffs had actual knowledge of the breach or violation by the Defendant, whichever is earlier.

2.  In the case of fraud or concealment, the Action was commenced more than six years after the date of discovery by Plaintiffs of such breach or violation by the Defendant. 29 U.S.C. §1113.

**Affirmative Defense 2 (Unspecified):**

Defendants have only generically asserted that Plaintiffs' claims are "subject to exemptions" under ERISA or those granted by the Secretary of Labor. There are numerous prohibited transaction exemptions. *See* 29 U.S.C. §1108(a)–(b). Defendants have not identified the specific exemption they intend to rely upon at trial. Plaintiffs intend to respond in their forthcoming Trial Brief to the exemptions to be specified by Defendants in their Memoranda of Contentions of Fact and Law.

At summary judgment, Defendants raised the exemption under 29 U.S.C. §1108(b)(8). *See* Dkt. 153-1. The elements are:

1.  A transaction between the Plan and the flexPATH TDFs;

2.  The flexPATH TDFs were maintained by a bank or trust company supervised by a State or Federal Agency;

3.  The transaction is a sale or purchase of an interest in the flexPATH TDFs;

4.  The bank or trust company receives not more than reasonable compensation; and

5.  The transaction is expressly permitted by the instrument under which the

Plan is maintained, or by a fiduciary (other than the bank or trust company, or an affiliate thereof) who has the authority to manage and control the assets of the Plan.

**LR 16-4.1(f) Key evidence relied on in opposition to each affirmative defense**

   **Affirmative Defense 1 (29 U.S.C. §1113):**

   Plaintiffs will introduce the following categories of key evidence to demonstrate that the Action was commenced within the applicable statute of limitations under 29 U.S.C. §1113:

- The minutes, executive summaries, and materials prepared for meetings of the Molina Committee.
- The minutes, executive summaries and materials prepared for the flexPATH Investment Committee.
- Agreements related to the services rendered by flexPATH to the Plan.
- The Participation Agreement between the Molina Defendants and Wilmington Trust related to the flexPATH TDFs.
- The letter of direction the Molina Defendants sent to the Plan's recordkeeper on April 5, 2016, related to the flexPATH TDFs.
- Evidence reflecting disclosures made to Plan participants related to the addition or removal of the flexPATH TDFs in the Plan.
- Internal correspondence and attachments involving the Molina Defendants, NFP, and/or flexPATH related to the flexPATH TDFs, flexPATH, and the Plan.
- Account statements and participant transaction data reflecting participant holdings and investment activity in the Plan.
- Testimony of current and former employees of the Molina Defendants, NFP, and flexPATH.
- Testimony of the Named Plaintiffs.
- Testimony and supporting materials of Plaintiffs' expert witnesses.

**Affirmative Defense 2 (Unspecified):**

Plaintiffs reserve their right to identify evidence that would be used to rebut any later identified exemptions intended to be an affirmative defense. Plaintiffs will introduce the following categories of key evidence to demonstrate that the elements of the exemption under §1108(b)(8) are not met:

- Plan documents and other documents under which the Plan is maintained.
- Documents and witness testimony related to the services provided by flexPATH.
- Documents and witness testimony related to the fees charged to the flexPATH TDFs, including the compensation received by service providers.
- Documents and witness testimony related to the fiduciaries who had authority to manage and control the assets of the Plan, including agreements related to the flexPATH TDFs.
- Plan transactional data and similar account documents related to the sale or purchase of the flexPATH TDFs.
- Financial Statements and auditor's reports for the flexPATH TDFs.
- Expert testimony to establish the value or lack thereof of the services rendered by flexPATH.

**LR 16-4.1(h) Identification of anticipated evidentiary issues**

Plaintiffs intend to seek to exclude a trial exhibit identified by Defendants relating to a purported "fit analysis" performed by flexPATH on May 15, 2016 (TX0910). Defendants intend to seek to exclude certain opinions and testimony of two Plaintiffs' experts.

**LR 16-4.1(i) Identification of issues of law**

Other than those identified in Plaintiffs' Claims, Defendants' Affirmative Defenses, and those identified in the anticipated evidentiary issues referenced above: none.

### LR 16-4.3 Bifurcation of the issues

The Parties do not request bifurcation of any issues.

### LR 16-4.4 Jury Trial

The Court granted Defendants' motion to strike Plaintiffs' jury demand. Dkt. 123 at 29.

### LR 16-4.5 Plaintiffs' claim to attorney fees

The Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. §1132(g)(1). A plaintiff need only have achieved "some degree of success on the merits" to be entitled to an award. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245, 255 (2010); *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120–21 (9th Cir. 2010).

In deciding whether to award fees and costs, the Court must consider these five factors: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Simonia*, 608 F.3d 1118 at 1121 (quoting *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980)). No single factor is decisive. *Id.* at 1122. "The *Hummell* factors reflect a balancing" and the Court "need not find that each factor weighs in support of fees." *McElwaine v. US West, Inc.,* 176 F.3d 1167, 1173 (9th Cir. 1999).

The *Hummell* factors must be applied in light of the purposes of ERISA, which, "like the Civil Rights Acts of 1871 and 1964, and the Labor-Management Reporting and Disclosure Act, is remedial legislation which should be liberally construed in favor of protecting participants in employee benefits plans." *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1468 (9th Cir. 1995) (quoting *Smith v. CMTA-IAM Pension Trust,* 746 F.2d 587, 589 (9th Cir. 1984)). Section 1132(g)(1) "should be

read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under §1132 to enforce his rights under his plan, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* (quoting *Smith*, 746 F.2d at 589). "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Smith*, 746 F.2d at 589 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). That is because an "important aspect" of ERISA is "to afford [participants and beneficiaries] effective access to federal courts." *Kayes*, 51 F.3d at 1468 (quoting *Smith*, 746 F.2d at 589).

If Plaintiffs prevail on any of their claims, they should be awarded attorneys' fees under §1132(g)(1) because they will have shown that Defendants committed a prohibited transaction or breach of a fiduciary duty that is the highest known to the law, a fee award would deter other fiduciaries from committing similar breaches, Plaintiffs have acted as class representatives to protect the interests of all participants in the Plan, and the merits of Plaintiffs' claims were stronger than Defendants'.

The Court must apply the lodestar method to determine the amount of fees to award the Plaintiffs. This requires first a determination of the total number of hours reasonably expended in obtaining the successful judgment in this case and then a determination of the reasonable hourly rate to apply to those hours. *Schwarz v. Sec'y of HHS*, 73 F.3d 895, 901 (9th Cir. 1995) (quoting *Hensley*, 461 U.S. at 433).

An award of attorney fees under §1132(g)(1) should include an award of litigation expenses. *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). Non-taxable costs "can be awarded as part of a reasonable attorneys' fee since they are typically charged to paying clients by private attorneys." *Id.* at 580 (quoting *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)). Such costs include

"those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Grove*, 606 F.3d at 581 (quoting *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983)); *see also Davis v. Macon County*, 927 F.2d 1473, 1488 (9th Cir. 1991). Section 1132(g)(1) includes an award of taxable costs under 28 U.S.C. §1920 and LR 54-1. *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996).

**LR 16-4.6 Abandonment of Issues**

None.

DATED: October 6, 2023

Respectfully submitted,

By: */s/ Nathan D. Stump*
*Nathan D. Stump* (admitted *pro hac vice*)
SCHLICHTER BOGARD LLP

*Lead Counsel for Plaintiffs*