Nathan D. Stump (admitted *pro hac vice*)
nstump@uselaws.com
Jerome J. Schlichter (SBN 054513)
jschlichter@uselaws.com
Sean E. Soyars (admitted *pro hac vice*)
ssoyars@uselaws.com
Kurt C. Struckhoff (admitted *pro hac vice*)
kstruckhoff@uselaws.com
Troy A. Doles (admitted *pro hac vice*)
tdoles@uselaws.com
Heather Lea (admitted *pro hac vice*)
hlea@uselaws.com
SCHLICHTER BOGARD LLP
100 South Fourth Street, Suite 1200
St. Louis, MO 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934

*Counsel for Plaintiffs*

William H. Edmonson (SBN 243445)
will@whelawfirm.com
LAW OFFICE OF WILL EDMONSON
9157 Sunset Boulevard, Suite 213
West Hollywood, CA 90069
Telephone: (424) 248-9581

*Local Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (Western Division)

| | |
|---|---|
| MICHELLE MILLS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MOLINA HEALTHCARE, INC., et al.,<br><br>Defendants. | Case No. 2:22-cv-01813-SB-GJS<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br><br>**PLAINTIFFS' TRIAL BRIEF**<br><br>Pre-Trial Conference: October 27, 2023<br><br>Trial Date: TBD |

# Table of Contents

I.   Plaintiffs' prohibited transaction claims are not exempt under 29 U.S.C. § 1108(b)(8). ...................................................................................... 1

II.  Plaintiffs' claims are timely under 29 U.S.C. § 1113. ........................... 3

III. Plaintiffs' burden to prove a breach of duty and losses to the Plan .................. 5

     A.   The burden to disprove losses shifts to Defendants as the breaching fiduciaries. ............................................................... 5

     B.   Plaintiffs do not have the burden to prove that the flexPATH TDFs were objectively imprudent. ...................................... 6

     C.   Plaintiffs do not rely on hindsight to establish a breach of duty. ......... 7

     D.   ERISA does not require a damages model based on a range of investment options. ................................................................ 9

     E.   The Plan's losses should not be offset by the purported "value" of services provided to the Plan. ...................................... 11

IV. To the extent it was delegated authority as the Plan's § 3(38) investment manager, flexPATH ignores applicable standards to evaluate its conflicted actions. .............................................................................. 12

V.  The Molina Defendants' appointment of flexPATH as the Plan's § 3(38) investment manager did not break the causal chain. ......................... 14

VI. The scope of the Molina Committee's duty to monitor flexPATH and the flexPATH TDFs to the extent flexPATH was delegated authority ........... 15

VII. Plaintiffs should be allowed to pursue co-fiduciary liability under 29 U.S.C. § 1105(a) for their prohibited transaction claims ................................ 16

# Table of Authorities

**CASES**

*Acosta v. City Nat'l Corp.*,
  922 F.3d 880 (9th Cir. 2019) ................................................................. 1

*Anderson v. Intel Corp. Inv. Policy Comm.*,
  579 F. Supp. 3d 1133 (N.D. Cal. 2022) ............................................... 14

*Barboza v. Cal. Ass'n of Prof. Firefighters*,
  799 F.3d 1257 (9th Cir. 2015) ............................................................... 1

*Bedrick by & Through Humrickhouse v. Travelers Ins. Co.*,
  93 F.3d 149 (4th Cir. 1996) ................................................................. 14

*Brotherston v. Putnam Investments, LLC*,
  907 F.3d 17 (1st Cir. 2018) ....................................................... 5, 6, 10

*Cal. Ironworkers, Field Pension Trust v. Loomis Sayles & Co.*,
  259 F.3d 1036 (9th Cir. 2001) ............................................................... 9

*Dardaganis v. Grace Capital Inc.*,
  889 F.2d 1237 (2d Cir. 1989) .............................................................. 11

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007) ............................................................... 14

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985) ........................................ 8, 9, 10, 11, 13

*Donovan v. Mazzola*,
  716 F.2d 1226 (9th Cir. 1983) ......................................................... 7, 13

*Evans v. Akers*,
  534 F.3d 65 (1st Cir. 2008) ................................................................... 9

*Friend v. Sanwa Bank Cal.*,
  35 F.3d 466 (9th Cir. 1994) ................................................................. 14

*Fuller v. SunTrust Banks, Inc.*,
  2019 U.S. Dist. LEXIS 187098 (N.D. Ga. Oct. 3, 2019) .................... 12

*Gamino v. KPC Healthcare Holdings, Inc.*,
  No. 20-01126-SB, 2021 U.S. Dist. LEXIS 214984 (C.D. Cal. Nov.
  1, 2021) ................................................................................................ 17

*George v. Kraft Foods Global, Inc.*,
  641 F.3d 786 (7th Cir. 2011) ................................................................. 7

*Goldinger v. Datex-Ohmeda Cash Balance Plan*,
  701 F. Supp. 2d 1205 (W.D. Wash. 2010) ......................................... 16

*Graden v. Conexant Sys. Inc.*,
  496 F.3d 291 (3d Cir. 2007) ................................................................. 9

*Herzfeld v. Teva Pharm. USA, Inc.*,
  No. 18-09784-ODW, 2020 U.S. Dist. LEXIS 248158 (C.D. Cal.
  Dec. 14, 2020) ..................................................................................... 14

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996) ............................................................. 13

*Hughes v. Nw. Univ.*,
  142 S. Ct. 737 (2022) .......................................................................... 9

*In re Computer Scis. Corp. ERISA Litig.*,
  635 F. Supp. 2d 1128 (C.D. Cal. 2009) ............................................... 9

*Katsaros v. Cody*,
  744 F.2d 270 (2d Cir. 1984) ............................................................... 7

*Kim v. Fujikawa*,
  871 F.2d 1427 (9th Cir. 1989) ........................................................... 11

*Krueger v. Ameriprise Fin., Inc.*,
  No. 11-02781, 2012 U.S. Dist. LEXIS 166191 (D. Minn. Nov. 20,
  2012) ................................................................................................ 1, 2

*Lauderdale v. NFP Retirement, Inc.*,
  No. 21-301-JVS, 2022 U.S. Dist. LEXIS 214056 (C.D. Cal. Nov.
  17, 2022) ............................................................................................. 7

*Leigh v. Engle*,
  727 F.2d 113 (7th Cir. 1984) ............................................................. 13

*Leister v. Dovetail, Inc.*,
  546 F.3d 875 (7th Cir. 2008) ............................................................. 10

*McDonald v. Provident Indem. Life Ins. Co.*,
  60 F.3d 234 (5th Cir. 1995) ................................................................. 5

*Meiners v. Wells Fargo & Co.*,
  898 F.3d 820 (8th Cir. 2018) ............................................................... 8

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993) .......................................................................... 15

*Mrkonjic v. Delta Family-Care & Survivorship Plan*,
  No. 15-02255-JAK, 2016 U.S. Dist. LEXIS 197830 (C.D. Cal. Feb.
  9, 2016) .............................................................................................. 16

*Munro v. Univ. of S. Cal.*,
  No. 16-06191-VAP, 2019 U.S. Dist. LEXIS 167212 (C.D. Cal.
  Aug. 27, 2019) ................................................................................... 14

*Patelco Credit Union v. Sahni*,
  262 F.3d 897 (9th Cir. 2001) ............................................................... 1

*Pegram v. Herdrich*,
  530 U.S. 211 (2000) .......................................................................... 13

*Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v.
  Alerus Fin., N.A.*,
  858 F.3d 1324 (10th Cir. 2017) ........................................................... 5

*Pledger v. Reliance Tr. Co.*,
  No. 15-4444, 2019 U.S. Dist. LEXIS 233995 (N.D. Ga. Mar. 28,
  2019) ................................................................................................... 3

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
  74 F.4th 171 (4th Cir. 2023) ............................................................. 12

*Roth v. Sawyer-Cleator Lumber Co.*,
  16 F.3d 915 (8th Cir. 1994) ............................................................. 5, 7

*Sacerdote v. N.Y. Univ.*,
  9 F.4th 95 (2d Cir. 2021) ................................................................. 5, 6

*Schaffer ex rel. Schaffer v. Weast*,
  546 U.S. 49 (2005) ..................................................................... 6

*Skinner v. Northrop Grumman Ret. Plan B*,
  673 F.3d 1162 (9th Cir. 2012) ............................................... 8, 10

*Tatum v. RJR Pension Inv. Comm.*,
  761 F.3d 346 (4th Cir. 2014) ................................................... 5, 6

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015) ................................................................ 5, 6

*Tibble v. Edison Int'l*,
  843 F.3d 1187 (9th Cir. 2016) ............................................... 5, 11

*Turner v. Schneider Elec. Holdings, Inc.*,
  530 F. Supp. 3d 127 (D. Mass. 2021) ......................................... 3

*Tussey v. ABB, Inc.*,
  746 F.3d 327 (8th Cir. 2014) ..................................................... 4

*Tussey v. ABB, Inc.*,
  850 F.3d 951 (8th Cir. 2017) ..................................................... 6

*White v. Chevron Corp.*,
  752 F. App'x 453 (9th Cir. 2018) ............................................... 8

*Wildman v. Am. Century Servs., LLC*,
  362 F. Supp. 3d 685 (W.D. Mo. 2019) ...................................... 10

**STATUTES**

29 U.S.C. § 1105(a) ........................................................................ 17
29 U.S.C. § 1108(b)(8)(B) ................................................................ 2
29 U.S.C. § 1110(a) ........................................................................ 15
29 U.S.C. § 1113(1) ..................................................................... 3, 4

**REGULATIONS**

29 C.F.R. § 2509.75-8 ..................................................................... 16
29 C.F.R. § 2550.408b-2(a)(1) ......................................................... 1
29 C.F.R. § 2550.408b-2(e) .............................................................. 1
29 C.F.R. § 2550.408b-2(e)(2) ......................................................... 1

**OTHER AUTHORITIES**

DOL Adv. Op. 89-09A (June 13, 1989) .............................................. 1
H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974) ............................... 1, 2
Notice of Proposed Rulemaking, Participant Directed Individual
  Account Plans, 56 Fed. Reg. 10724 (Mar. 13, 1991) ...................... 1
RESTATEMENT (SECOND) OF TRUSTS § 205(c) (1959) .......................... 8

RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND
    EMOTIONAL HARM .............................................................................. 14
RESTATEMENT (THIRD) OF TRUSTS (2012) ............................................... 5, 16

In accordance with L.R. 16-10, Plaintiffs submit this Trial Brief to reply to the Memoranda of Contentions of Fact and Law filed by Defendants. Dkt. 193, 203.

## I. Plaintiffs' prohibited transaction claims are not exempt under 29 U.S.C. § 1108(b)(8).

There are no statutory exemptions available to flexPATH for Plaintiffs' § 1106(b) [ERISA § 406(b)] claims. Prohibited transaction exemptions do not apply to "prohibited self-dealing under 406(b)." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 886 (9th Cir. 2019) (citing *Barboza v. Cal. Ass'n of Prof. Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015), and *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910–11 (9th Cir. 2001)); *cf.* 29 C.F.R. § 2550.408b-2(a)(1) ("Section 408(b)(2) does not contain an exemption from acts described in section § 406(b)(1) of [ERISA] . . . . Such acts are separate transactions not described in 408(b)(2)."); 29 C.F.R. § 2550.408b-2(e) ("If the furnishing of . . . a service involves an act described in [§ 406(b) . . .] (relating to acts involving conflicts of interest by fiduciaries), such an act constitutes a separate transaction which is not exempt under [§] 408(b)(2)[.]"); DOL Adv. Op. 89-09A, at 5–6 (June 13, 1989). A fiduciary can avoid liability under § 1106(b) only by avoiding such transactions altogether. 29 C.F.R. § 2550.408b-2(e)(2).

Even if the § 1108(b)(8) exemption were available to flexPATH, that exemption is inapplicable.

*First,* the exemption's purpose is to allow "a company whose business is financial management" to invest its *own plan's* assets in its affiliated funds, because it would be "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor." *Krueger v. Ameriprise Fin., Inc.*, No. 11-02781, 2012 U.S. Dist. LEXIS 166191, at *41 (D. Minn. Nov. 20, 2012) (citing H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), and Notice of Proposed Rulemaking, Participant Directed Individual Account Plans, 56 Fed. Reg. 10724 (Mar. 13, 1991)). It does not authorize a third-

party fiduciary like flexPATH to place an unaffiliated client's plan in Wilmington Trust-sponsored collective investment trusts for its own benefit.

*Second,* the exemption does not apply to *flexPATH*'s compensation paid from Plan assets. The "reasonable compensation" prong of the exemption applies only to "*the bank, trust company, or insurance company*". 29 U.S.C. § 1108(b)(8)(B) (emphasis added); *Krueger,* 2012 U.S. Dist. LEXIS 166191, at *41 ("ERISA § 408(b)(8) was enacted to allow 'banks, trust companies and insurance companies' to continue their 'common practice' of investing their plans' assets in their pooled investment funds.") (citing H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974)). flexPATH is none of these entities. Accordingly, in its Memorandum of Contentions of Fact and Law, flexPATH incorrectly identifies element three of its § 1108(b)(8) affirmative defense: "(3) the *manager* 'receives not more than reasonable compensation." *See* Dkt. 203 at 19:17–19 (emphasis added).[1]

Even if flexPATH qualified for the exemption, its compensation was not reasonable. Plaintiffs will present evidence to establish that the Plan did not receive any legitimate services for flexPATH's fee. *See* Dkt. 209-1 ¶¶123–126, 130–133. This is confirmed by flexPATH's admission that it did nothing between the time that it signed the IMA and the time that the flexPATH Index TDFs became Plan investment options on May 16, 2016. Dkt. 190 at 36:13–37:5.

Plaintiffs dispute that flexPATH was paid *no compensation* in connection with the Plan's investment in the flexPATH TDFs. Dkt. 203 at 20. flexPATH was paid directly from the flexPATH TDFs in accordance with the Participation Agreement. *See* TX0015 at 5 (directing a 10 basis point fee to be paid to flexPATH from the flexPATH TDFs).

flexPATH's contention that Plaintiffs' prohibited transaction claims are limited to the Molina Defendants' engagement of flexPATH as the § 3(38) investment

---

[1] Plaintiffs dispute that flexPATH qualifies as a bank or trust company. *Contra* Dkt. 190 at 15:15–18 (flexPATH's counsel indicating that she believed there was no dispute). Dkt. page references are to the CM/ECF header page number.

manager is incorrect. Dkt. 203 at 20. In addition to the engagement of flexPATH, the prohibited transaction involves the addition of the flexPATH TDFs to the Plan. *See* Dkt. 194 at 5, 9–10.

flexPATH provides no authority that the fees paid to flexPATH are exempt under § 1108(b)(8) as a matter of law. *Turner v. Schneider Elec. Holdings, Inc*., 530 F. Supp. 3d 127, 140 (D. Mass. 2021) dismissed the plaintiffs' prohibited transaction claims at the pleadings stage based on their failure to allege sufficient facts to rebut the § 1108(b)(8) defense. That finding is contrary to the Court's dismissal order. Dkt. 123 at 25. And in *Pledger v. Reliance Tr. Co*., the delegated investment manager (Reliance Trust Company) was a *trust company* that held the assets invested in the manager's proprietary collective investment trusts. No. 15-4444, 2019 U.S. Dist. LEXIS 233995, at *6 (N.D. Ga. Mar. 28, 2019). Apart from satisfying that undisputed element, the court granted summary judgment after Reliance Trust met the requirement of the exemption by showing that the transaction was permitted under the plan's trust agreement in accordance with § 1108(b)(8)(C). *Id.* at 46–47. Those facts have not been established by flexPATH.

## II.     Plaintiffs' claims are timely under 29 U.S.C. § 1113.

The proper focus for determining whether Plaintiffs' claims are timely under 29 U.S.C. § 1113 is not the date of the initial action, but "the date of the *last* action which constituted a part of the breach or violation[.]" 29 U.S.C. § 1113(1) (emphasis added).

The Molina Defendants continue to rely on the date they "initially selected" the flexPATH TDFs. Dkt. 193 at 6. But the Molina Defendants took action within the repose period to add the flexPATH TDFs to the Plan. They executed the Participation Agreement on March 31, 2016, authorizing Wilmington Trust to invest Plan assets in the flexPATH TDFs (TX0015), executed the Investment Management Agreement (IMA) with flexPATH on April 1, 2016 (TX0016), and directed the Plan's recordkeeper to invest Plan assets in the flexPATH TDFs on

April 5, 2016 (TX0017). Moreover, the Molina Defendants' decision to select the flexPATH TDFs was not complete until Plan assets were transferred to the flexPATH TDFs on May 16, 2016.

flexPATH similarly relies on the decision to select the flexPATH TDFs as the Plan's QDIA, which it claims occurred no later than April 1, 2016. Dkt. 203 at 18. But there is "no precise date" that flexPATH made the decision. *See* Dkt. 189 at 10. To the extent that flexPATH was delegated discretion as the Plan's § 3(38) investment manager to select the flexPATH TDFs, it could have done so only after the IMA was executed on April 1, 2016. *Id.* Like the Molina Defendants, flexPATH's decision to initially select the flexPATH TDFs was not complete until May 16, 2016, when Plan assets were transferred to the flexPATH TDFs.

Furthermore, § 1113(1) (A) does not require that "the last action which constituted a part of the . . . violation" be an action *by* the defendant, although flexPATH's act of putting the funds in the Plan's investment lineup occurred within the limitations period. In contrast, § 1113(1)(B) specifically refers to "the latest date on which *the fiduciary* could have cured the breach," (emphasis added), which shows that the omission of "fiduciary" from (1)(A) was intentional. If the "last action" had to be one by the defendant, a fiduciary could immunize itself by instructing a trustee on May 13, 2016, to distribute the plan's assets to the fiduciary on May 14, 2022.

The Eighth Circuit addressed a similar issue in *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014). On appeal from a judgment against the plan sponsor (ABB) for imprudently replacing a plan investment option with a suite of target-date funds, ABB asserted that the claim was time-barred because the fiduciary committee *initially* "decided to remove the Wellington Fund and add the Freedom Funds" more than six years before suit was commenced, even though it *implemented* the decision within six years. *Id.* at 337. The Eighth Circuit was "unconvinced," because the "*last* fiduciary acts constituting the alleged breach—amending the trust

agreements, removing the Wellington Fund as an investment option, selecting the Freedom Funds, and mapping Plan assets to the Freedom Funds—all took place" within the relevant period. *Id.* (emphasis added).

### III.   Plaintiffs' burden to prove a breach of duty and losses to the Plan

#### A.   The burden to disprove losses shifts to Defendants as the breaching fiduciaries.

Because ERISA is derived from the common law of trusts, the Supreme Court has repeatedly emphasized "the importance of analogous trust law" in interpreting ERISA. *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016) (quoting *Tibble v. Edison Int'l*, 575 U.S. 523, 531 (2015)). A "long-recognized" and "well-established" principle of trust law states that "when a beneficiary has succeeded in proving that the trustee has committed a breach of trust and that a related loss has occurred, the burden shifts to the trustee to prove that the loss would have occurred in the absence of the breach." *Tatum v. RJR Pension Inv. Comm.,* 761 F.3d 346, 362–63 (4th Cir. 2014) (quoting RESTATEMENT (THIRD) OF TRUSTS § 100, cmt. f (2012)). The burden-shifting approach has been adopted by the First, Second, Fourth, Fifth, and Eighth Circuits. *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 113 (2d Cir. 2021); *Brotherston v. Putnam Investments, LLC*, 907 F.3d 17, 35–38 (1st Cir. 2018); *Tatum,* 761 F.3d at 363; *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994); *but see Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1343 (10th Cir. 2017) (rejecting burden-shifting approach).

Defendants are incorrect that the Ninth Circuit addressed the burden-shifting approach. *See* Dkt. 189 at 15 ("The Ninth's Circuit's decision in *Wright* did not directly address the burden-shifting question[.]"); *contra* Dkt. 193 at 7, Dkt. 203 at 24–25. flexPATH is also incorrect that the "ordinary default rule" is consistent with trust law. Burden-shifting is a "long recognized trust law principle." *Brotherston*,

907 F.3d at 35 (quoting *Tatum*, 761 F.3d at 363). This "approach is aligned with the Supreme Court's instruction to 'look to the law of trusts' for guidance in ERISA cases[.]" *Sacerdote*, 9 F.4th at 113 (quoting *Tibble*, 575 U.S. at 529). It also is consistent with the exception to the ordinary default rule recognized in *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49 (2005). "That exception recognizes that the burden may be allocated to the defendant when he possesses more knowledge relevant to the element at issue." *Brotherston*, 907 F.3d at 38 (citing *Schaffer,* 546 U.S. at 60).

### B.   Plaintiffs do not have the burden to prove that the flexPATH TDFs were objectively imprudent.

In determining what Defendants must prove to carry their burden once Plaintiffs have proved Defendants' breach and a prima facie loss, the relevant inquiry first begins with the particular duty that was breached—prudence or loyalty. For breaches of the duty of prudence, Defendants have the burden of proving "that despite its imprudent decision-making process, its ultimate investment decision was 'objectively prudent.'" *Tatum,* 761 F.3d at 363. "[A] decision is 'objectively prudent' if 'a hypothetical prudent fiduciary *would* have made the same decision anyway.'" *Id*. (citation omitted). Defendants satisfy that burden "by demonstrating that [they] would have reached the same decision had [they] undertaken a proper investigation." *Id.*

For breaches of the duty of loyalty, the "objective prudence" label is inapt. Rather, the relevant causation standard is whether a hypothetical loyal and non-conflicted fiduciary would have made the same decision. To carry that burden, flexPATH is required to prove by a preponderance of the evidence that it would have reached the same result if the financial incentive did not exist—if it had engaged in a loyal and non-conflicted decision-making process. *See Tussey v. ABB, Inc.*, 850 F.3d 951, 958 & n.5 (8th Cir. 2017) (noting that a conflicted fund replacement may not have been actionable if the defendants' "improper motives"

"truly did not change the result and thus did not cause any harm") (citing *Roth,* 16 F.3d at 919).

flexPATH relies on *Lauderdale v. NFP Retirement, Inc*., No. 21-301-JVS, 2022 U.S. Dist. LEXIS 214056 (C.D. Cal. Nov. 17, 2022) for the proposition that Plaintiffs must show that the flexPATH TDFs were "objectively imprudent, meaning that 'no prudent fiduciary would have made the same decision.'" Dkt. 203 at 26. However, Judge Selna found that the burden *would* shift to defendants at *trial*, but not at summary judgment. *Lauderdale,* 2022 U.S. Dist. LEXIS 214056, at *32–33 ("Assuming that Plaintiffs will be able to establish breach at trial and adopting the burden-shifting approach taken by a number of circuits, then the burden would shift to Defendants to disprove causation.").

### C. Plaintiffs do not rely on hindsight to establish a breach of duty.

Proving a breach requires an *ex ante* analysis of whether the fiduciary weighed the relevant factors and came to a reasoned decision for her action, *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 796 (7th Cir. 2011), in other words, whether the fiduciary "employed the appropriate methods" in discharging its fiduciary responsibilities, *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983). Determining whether a fiduciary breached its duty is "a test of how the fiduciary acted viewed from the perspective of the time of the challenged decision rather than from the vantage point of hindsight." *Roth*, 16 F.3d at 918 (cleaned up) (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)).

Consistent with the standards under ERISA for proving a breach of duty, Plaintiffs will present expert testimony from Dr. Gerald Buetow. Dr. Buetow applied reasonable and reliable methods for determining what prudent TDF alternatives to the flexPATH TDFs Defendants could have provided to Plan participants in 2016 had they performed their fiduciary duties. In forming his opinions, Dr. Buetow relied on *ex ante* data ending on September 30, 2015. Dkt. 209-1 ¶¶145–147. This data would have been available to Defendants when the

Molina Committee selected the flexPATH TDFs in November 2015. Because Dr. Buetow relied on *ex ante* data available to Plan fiduciaries at the time of the challenged investment decisions, Plaintiffs do not merely contend that the flexPATH TDFs were imprudent because they performed worse than prudent TDF alternatives in hindsight. *Contra* Dkt. 203 at 21.

There is a nonspeculative basis for the selection of each of the four prudent alternatives to the flexPATH TDFs. The Vanguard TDFs were the funds the flexPATH TDFs replaced, and thus, they provide a basis to show what would have occurred *but for* the breach of duty. *Donovan v. Bierwirth,* 754 F.2d 1049, 1054 (2d Cir. 1985) (proper remedy is to restore "the trust beneficiaries to the position they would have occupied but for the breach of trust") (citing RESTATEMENT (SECOND) OF TRUSTS § 205(c) (1959)); *accord Skinner v. Northrop Grumman Ret. Plan B,* 673 F.3d 1162, 1167 (9th Cir. 2012); *see also* Dkt. 189 at 16 ("[A] reasonable factfinder might conclude that Plaintiffs' evidence that the flexPATH TDFs underperformed the Vanguard TDFs they replaced provides a nonspeculative basis for calculating damages based on the profits the Plan would have obtained if Defendants had not switched to the flexPATH TDFs."). Both the Vanguard TDFs and the T. Rowe Price TDFs were placed on NFP's Focus List of "highest conviction asset managers." Dkt. 209-1 ¶¶18, 147. And all four of the replacement alternatives to the flexPATH TDFs were offered by well-established investment solution providers that had been consistently among the top performers in the marketplace at the time, among other factors. *Id.* ¶146.

flexPATH primarily relies on inapposite cases that granted *motions to dismiss* on the ground that underperformance allegations, standing alone, did not raise a plausible inference that a *breach* had occurred. *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018); *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822–23 (8th Cir. 2018) (underperformance allegation failed to raise an inference of "a breach of fiduciary duty"). *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp.

2d 1128, 1134 (C.D. Cal. 2009) is inapt because the decision addressed offering *company stock* under an inapplicable presumption of prudence standard.

### D. ERISA does not require a damages model based on a range of investment options.

flexPATH contends that a "one-on-one comparison" is inappropriate for establishing a loss. Dkt. 203 at 26. Measuring losses is based on a comparison between the performance of the imprudently selected options to the performance of "prudent investment alternatives" that the plan included or plausibly would have included but for the breach. *See Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) ("[T]he measure of damages is the amount that affected accounts would have earned if prudently invested.") (citing *Bierwirth,* 754 F.2d at 1056); *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008) (to assess what the plan would have earned, courts compare "the performance of the imprudent investments with the performance of a prudently invested portfolio"). To the extent "several alternative investment strategies were equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Bierwirth*, 754 F.2d at 1056; *see also Cal. Ironworkers, Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1048 (9th Cir. 2001) (adopting *Bierwith's* approach).

flexPATH appears to suggest that Plaintiffs are required to present a "range" of comparisons or the "average performance" of investment alternatives to establish a loss from Defendants' breach in using the flexPATH TDFs as the Plan's QDIA. Dkt. 203 at 26. The principle that "courts evaluating *prudence* 'must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise,'" is not relevant to assessing *loss*. *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). *Hughes* addressed the pleading standard for a claim of imprudence, not the measure of loss. *Id.*

It is illogical for flexPATH to assert that ERISA requires a damages model based on a "range" of prudent alternatives. Had Defendants not breached their

fiduciary duties in providing the flexPATH TDFs, the Plan would not have invested in a "range" of TDFs.

flexPATH contends that the Plan suffered no loss because the flexPATH TDFs outperformed the "median returns" of hand-selected TDF alternatives or "industry benchmarks." Dkt. 203 at 14. Again, the question is not whether the flexPATH TDFs did better or worse than some index. It is whether the Plan lost money compared to what it would have earned *but for the breach*. *Skinner*, 673 F.3d at 1167; *Brotherston*, 907 F.3d at 31; *Bierwirth*, 754 F.2d at 1056. But for the breach, it is reasonable to conclude that the Plan either would have retained the incumbent Vanguard TDFs or invested in one of the other prominent target-date suites cited by Plaintiffs. Moreover, flexPATH's indices or benchmarks are not investable products that fiduciaries could have selected as Plan investment options. Thus, they cannot possibly show "what the results would have been" in the absence of the breach. *Brotherston*, 907 F.3d at 31.

flexPATH's cases turned on specific facts, not a bright-line legal requirement to measure damages with a "range" of alternatives. *Wildman* involved trial findings that a damages model was flawed because it failed to refute expert evidence that the assets likely would have been spread among multiple funds *within the plan* at issue. *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 698–99, 710–11 (W.D. Mo. 2019). The court did not suggest that the model should have used "the full range of prudent investment alternatives available" in the market at large. In *Leister v. Dovetail, Inc.*, 546 F.3d 875 (7th Cir. 2008), because the individual plaintiff had in fact spread her investments among several options during the relevant period, the loss measure should have assumed that any additional assets would have been allocated in the same proportions, rather than invested solely in the best-performing option, as "determined ex post." *Leister*, 546 F.3d at 881. If anything, *Leister* supports Plaintiffs' loss measure, which incorporates an assumption that but for Defendants' breach, the assets invested in the prior Vanguard TDFs "would have

continued" to be allocated to those funds as they "had in the past." *Id.*

### E.   The Plan's losses should not be offset by the purported "value" of services provided to the Plan.

Plaintiffs will present evidence that the Plan's losses should be measured by the difference in investment returns between the flexPATH TDFs and the four prudent alternative TDFs. Dkt. 209-1 ¶152. These losses are based on the performance *net of fees* of the flexPATH TDFs, which account for the fees paid to flexPATH for services rendered to the Plan. Thus, there is no basis to reduce the Plan's losses based on any purported value assigned to flexPATH's services or rebates provided to Plan participants. *See* Dkt. 203 at 27.

To the extent flexPATH contends that a lower damages amount is more appropriate, Defendants have the burden to prove that amount. *See Dardaganis v. Grace Capital Inc.*, 889 F.2d 1237, 1244 (2d Cir. 1989) ("[T]he errant fiduciary bears the burden of proving that the fund would have earned less than this amount.") (citing *Bierwirth*, 754 F.2d at 1056). Where the amount of damages is uncertain, such uncertainties are resolved against the breaching fiduciary." *Kim v. Fujikawa*, 871 F.2d 1427, 1431 (9th Cir. 1989) ("uncertainties in fixing damages will be resolved against the wrongdoer") (quoting *Bierwirth*, 754 F.2d at 1056).

flexPATH ignores other measures of losses to the Plan from Defendants' breaches of duty and prohibited transactions. For instance, the Plan made substantial payments to flexPATH, purportedly for § 3(38) investment manager services, even though flexPATH provided no meaningful services to justify the fee. *See* Dkt. 209-1 ¶¶123–126, 130–133. These fees constitute further losses to the Plan in addition to the performance damages caused by the flexPATH Index TDFs. The Plan paid flexPATH a total of $543,348.59 in improper fees, which would be brought forward to account for lost investment opportunity. *Id.* ¶¶153, 249; *Tibble,* 843 F.3d at 1198.

**IV.** **To the extent it was delegated authority as the Plan's § 3(38) investment manager, flexPATH ignores applicable standards to evaluate its conflicted actions.**

flexPATH wrongly suggests that it derived no financial benefit from the Molina Committee's selection of the flexPATH TDFs. Dkt. 203 at 22. The decision to add the flexPATH TDFs resulted in substantial payments to flexPATH that would not have occurred *but for* the Molina Committee's—and to the extent flexPATH was delegated discretion, flexPATH's—decision to select the flexPATH TDFs. Dkt. 209-1 ¶153. Molina's Participation Agreement specifically directed Wilmington Trust to pay 10 basis points of Plan assets invested in the flexPATH TDFs to flexPATH. TX0015 at 5. Apart from the fees paid to flexPATH, flexPATH had a strong financial incentive to subordinate the participants' financial goals to its own goal of growing flexPATH's investment management business. Through the growth in assets under management in the flexPATH TDFs, flexPATH and its executives derived a financial benefit, such as through an increase in the value of flexPATH executives' ownership or profit interests in flexPATH and the incentive compensation paid to NFP investment advisors based on a percentage of assets invested in the flexPATH TDFs. Dkt. 209-1 ¶¶70–74, 127–129. Those facts simply were not present in *Reetz v. Aon Hewitt Inv. Consulting, Inc.,* 74 F.4th 171 (4th Cir. 2023).

flexPATH has not shown that Plaintiffs must prove that flexPATH *intended* to benefit itself as a matter of law to prevail on their loyalty and prohibited transaction claims. There is no intent requirement in the statutory text of § 1104(a)(1)(A). The Court made a similar finding when it rejected the argument that § 1106(a)(1)(D) incorporates "an intent requirement that is not in the text of the statute." Dkt. 123 at 24. flexPATH does not acknowledge the Court's prior ruling as it relates to § 1106.

flexPATH relies on *Fuller v. SunTrust Banks, Inc*., 2019 U.S. Dist. LEXIS 187098 (N.D. Ga. Oct. 3, 2019) in support of its position. However, that case

1    reinforces Plaintiffs' position that direct evidence of a fiduciary's intention is
2    unnecessary to prevail on a breach of the duty of loyalty claim. In *Fuller*, the court
3    rejected the defendants' assertion at summary judgment that the plaintiffs must
4    provide "direct evidence of disloyalty, or [d]efendants' subjective intent" when
5    there was "enough circumstantial evidence" as to whether the defendants breached
6    their duty of loyalty. *Id.* at 78.

7        flexPATH ignores its obligation that is triggered when it is possible to question
8    a fiduciary's loyalty. Given flexPATH's inherently conflicted position, it had an
9    obligation to "engage in an intensive and scrupulous independent investigation of
10   [its] options to insure that [it] act[s] in the best interests of the plan beneficiaries."
11   *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) (quoting *Leigh v. Engle*, 727
12   F.2d 113, 125–26 (7th Cir. 1984)). flexPATH conducted no such investigation, or
13   any meaningful investigation, after its appointment as the § 3(38) manager. *See*
14   Dkt. 189 at 10. Thus, flexPATH admittedly engaged in no investigation of its
15   options to ensure that the addition of the flexPATH Index TDFs was in the best
16   interest of participants, let alone the intensive and scrupulous investigation that
17   ERISA demands.

18       flexPATH suggests that it is common practice for fiduciaries with inherent
19   conflicts of interests to make investment decisions that may benefit themselves. *See*
20   Dkt. 203 at 22–23. But flexPATH's "duty of loyalty is exacting." *Leigh*, 727 F.2d
21   at 123. flexPATH must act with "complete loyalty to the interests of the beneficiary
22   and exclude all selfish interest and all consideration of the interests of third
23   persons." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (quotation omitted). It
24   must act with "an eye single to the interests of the participants and beneficiaries[.]"
25   *Leigh*, 727 F.2d at 123 (cleaned up); *see Mazzola*, 716 F.2d at 1238. Thus,
26   flexPATH was duty bound to "take every feasible precaution" to remove any
27   "taint" of a conflict of interest to ensure it acted in the best interest of Plan
28   participants. *Bierwirth*, 680 F.2d at 276.

Plaintiffs will present evidence to show that flexPATH placed its own interests ahead of those of Plan participants, thereby violating its obligation to discharge its duties with respect to the Plan "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses." 29 U.S.C. § 1104(a)(1)(A). flexPATH simply did not act as if it was "free of such conflict[.]" *Bedrick by & Through Humrickhouse v. Travelers Ins. Co.,* 93 F.3d 149, 154 (4th Cir. 1996).

Overall, Plaintiffs have alleged more than a "bare allegation of a conflict." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 422 (4th Cir. 2007); *see* Dkt. 209-1 ¶¶101–108. They have sufficiently alleged disloyal conduct, unlike decisions cited by flexPATH. *See, e.g., Munro v. Univ. of S. Cal.*, No. 16-06191-VAP, 2019 U.S. Dist. LEXIS 167212, at *8 (C.D. Cal. Aug. 27, 2019); *Herzfeld v. Teva Pharm. USA, Inc.*, No. 18-09784-ODW, 2020 U.S. Dist. LEXIS 248158, at *22 (C.D. Cal. Dec. 14, 2020); *Anderson v. Intel Corp. Inv. Policy Comm.*, 579 F. Supp. 3d 1133, 1156 (N.D. Cal. 2022). Moreover, Plaintiffs will establish a causal connection between the losses to the Plan and flexPATH's breach of its duty of loyalty, unlike in *Friend v. Sanwa Bank Cal.*, 35 F.3d 466, 469 (9th Cir. 1994).

## V.     The Molina Defendants' appointment of flexPATH as the Plan's § 3(38) investment manager did not break the causal chain.

The Molina Defendants' position that there can be only one ultimate cause of the Plan investing in the flexPATH Index TDFs is legally flawed. The term "proximate cause" should not be misunderstood as implying "that there is but one cause—the cause nearest in time or geography to the plaintiff's harm." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM, § 29, comment b. In fact, "multiple proximate causes are often present." *Id.* Indeed, "[t]he conduct of a defendant can lack reasonable care insofar as it foreseeably combines with or permits the improper conduct of . . . a third party." *Id.,* § 19.

The Molina Defendants' initial selection of the flexPATH Index TDFs for inclusion in the Plan in November 2015, as well as their subsequent actions in authorizing Wilmington Trust to invest Plan assets in the flexPATH Index TDFs, appointing flexPATH as an investment manager, and directing the Plan's recordkeeper to map assets to the flexPATH TDFs, were deliberate and separate actions that caused the inclusion of the flexPATH TDFs in the Plan lineup.

The Molina Defendants are not insulated from liability as a matter of law simply because the IMA purports to delegate "complete authority" to flexPATH. *See* Dkt. 193 at 8. It does not matter that the contract states what flexPATH was ostensibly supposed to do. What matters is "the realities of the decision-making process"— what the parties actually did. Dkt. 189 at 10. The focus on actual conduct rather than contractual labels is mandated by the Supreme Court's observation that in ERISA, Congress opted to define "'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

Ignoring the fiduciary functions that the Molina Defendants actually performed merely because flexPATH was formally designated as the Plan's § 3(38) investment manager would violate this principle and the text of ERISA's fiduciary definition, 29 U.S.C. § 1002(21)(A). The Molina Defendants' position also cannot be reconciled with ERISA's prohibition on exculpatory clauses. *See* 29 U.S.C. § 1110(a) ("Except as provided in sections 1105(b)(1) and 1105(d) of this title, any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.").

## VI.   The scope of the Molina Committee's duty to monitor flexPATH and the flexPATH TDFs to the extent flexPATH was delegated authority

A fiduciary who has appointed a delegee has a duty to monitor the performance of the delegee "at reasonable intervals" to ensure it has satisfied its fiduciary

obligations. 29 C.F.R. § 2509.75-8, Q&A FR-17. "[F]iduciary prudence must be exercised … in supervising or reviewing the agent's performance and compliance with the terms of the delegation, all in a manner appropriate to the circumstances and conditions of the delegation and the competence of both agent and trustee." RESTATEMENT (THIRD) OF TRUSTS, § 80 cmt. f(1).

The Molina Defendants appear to suggest that they had no duty to monitor the flexPATH TDFs to the extent they delegated authority to flexPATH as the Plan's § 3(38) investment manager. *See* Dkt. 193 at 7. However, to monitor the performance of flexPATH at reasonable intervals necessarily required the Molina Committee to monitor the performance of the flexPATH TDFs. Dkt. 209-1 ¶196. Plaintiffs will present evidence to show that the Molina Committee's monitoring of the performance of the flexPATH TDFs fell short of accepted industry standards. *Id.* ¶¶88–92.

**VII.   Plaintiffs should be allowed to pursue co-fiduciary liability under 29 U.S.C. § 1105(a) for their prohibited transaction claims.**

In their Memoranda of Contentions of Fact and Law, Defendants omit co-fiduciary liability from the elements of Plaintiffs' claims under 29 U.S.C. § 1106. They contend that Plaintiffs did not plead co-fiduciary liability for their § 1106 claims in the Second Amended Complaint.

The Court should allow Plaintiffs to pursue their theory of co-fiduciary liability against each Defendant concerning the other's prohibited transactions. Although the Second Amended Complaint does not expressly allege co-fiduciary liability under Count IV, a matter not expressly raised in the complaint can be addressed in the parties' trial briefs. *Mrkonjic v. Delta Family-Care & Survivorship Plan*, No. 15-02255-JAK, 2016 U.S. Dist. LEXIS 197830, at *17 (C.D. Cal. Feb. 9, 2016) (citing *Goldinger v. Datex-Ohmeda Cash Balance Plan*, 701 F. Supp. 2d 1205, 1207 (W.D. Wash. 2010)).

Plaintiffs have alleged that each Defendant is directly liable for prohibited

transactions caused by the Plan's investment in the flexPATH TDFs. Dkt. 79 ¶155 ("This Count is asserted against all Defendants."). Whether through direct liability or co-fiduciary liability, the end result is the same. Plaintiffs allege that each Defendant is responsible for the alleged prohibited transactions.

Defendants will suffer no prejudice from Plaintiffs asserting co-fiduciary liability under Count IV. Defendants are already defending direct claims of prohibited transactions and co-fiduciary liability claims for Plaintiffs' § 1104(a)(1) claims. The evidence that will be proffered in support of or in opposition to Plaintiffs' claims will be the same regardless of whether Defendants are subject to co-fiduciary liability for Plaintiffs' prohibited transaction claims.

Moreover, through the course of describing Plaintiffs' claims, Plaintiffs have adequately alleged that each Defendant: participated knowingly in an act or omission of such other fiduciary knowing that such act or omission was a breach; failed to comply with its fiduciary obligations under § 1104(a), thus enabling the other fiduciary to commit a breach; or had knowledge of the breach but failed to take reasonable efforts to remedy the breach. 29 U.S.C. § 1105(a); *see, e.g.,* Dkt. 79 ¶¶61, 64–65, 67–68, 71, 74, 82–83, 85, 87, 98, 157, 163–164. They also specifically alleged co-fiduciary liability stemming from each Defendant causing the Plan to include the flexPATH TDFs, which is connected to Plaintiffs' prohibited transaction claims. Dkt. 79 ¶¶132, 135; *cf. Gamino v. KPC Healthcare Holdings, Inc.*, No. 20-01126-SB, 2021 U.S. Dist. LEXIS 214984, at *19 (C.D. Cal. Nov. 1, 2021) (finding co-fiduciary liability sufficiently alleged based on description of claims in the complaint).

1

DATED: October 13, 2023

Respectfully submitted,

2

3

By: /s/ Nathan D. Stump
Nathan D. Stump (admitted *pro hac vice*)
SCHLICHTER BOGARD LLP

4

5

*Lead Counsel for Plaintiffs*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28